## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 21-cv-61032-RKA

FREDERIC BLOCK,

        Plaintiff,

v.

DAVID MATESIC, CANDYCE ABBATT and
JOSHUA GERSTIN, in their individual capacities,

        Defendants.

_____/

## DEFENDANTS' JOINT MOTION TO DISMISS COUNTS I - IV OF PLAINTIFF'S COMPLAINT AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT

Defendants, DAVID MATESIC ("Matesic"), CANDYCE ABBATT ("Abbatt"), and JOSHUA GERSTIN ("Gerstin") (collectively referred to as the "Defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(6), Local Rule 7.1, and this Court's Orders [D.E. 4, 16], hereby file this Joint Motion to Dismiss Counts I, II, III, and IV of Plaintiff's Complaint and Incorporated Memorandum of Law in Support, and state as follows:

### FACTUAL BACKGROUND

On May 17, 2021, Plaintiff, Honorable Judge Block ("Plaintiff"), filed a four-count Complaint alleging defamation *per se*, defamation *per quod*, defamation by implication, and conspiracy to defame against Defendants Matesic and Abbatt (collectively, the "Board Defendants"), as well as conspiracy to defame against Defendant Gerstin. The Board Defendants are Association members and board members of the Palms 2100 Tower One Condominium Association, Inc. ("Association"). D.E. 1 at ¶ 2. Plaintiff is also a member of the Association. D.E.

1

1 at ¶ 1. At all times material hereto, Defendant Gerstin was the attorney for the Association. Defendant Gerstin is not a member of the Association.

This matter arises from a letter (hereinafter "Letter") dated December 18, 2020 titled "Important Privacy and Construction Alert" that was emailed by the Association's board to its members. A true and correct copy of the Letter is attached hereto as ***Exhibit A***. The Letter was sent in response to an email "blast" correspondence, wherein Plaintiff emailed all members of the Association and the Association's property management regarding Plaintiff's concerns about an ongoing construction project within the Association. D.E. 1 at ¶ 1. Plaintiff alleges that the Letter was drafted without any regard for whether its contents where true. D.E. 1 at ¶ 5. For purposes of this Motion, Defendants do not dispute that Plaintiff is a prominent public figure with an ongoing distinguished legal and judicial career and that the Association is involved in ongoing construction.

In support of Plaintiff's claims, Plaintiff alleges that Defendants conspired to defame Plaintiff by agreeing to draft the Letter and drafting the Letter. D.E. 1 at ¶ 30. Moreover, Plaintiff alleges that the Letter contains false or reckless statements defaming him and falsely accuses him of having hacked into the Association's computer to gain access to his neighbors' email addresses by engaging in criminal conduct. D.E. 1 at ¶¶ 6, 34. Plaintiff asserts that the Letter caused reputational damage. D.E. 1 at ¶ 7.

As described in greater detail below, Counts I – IV are facially false and fail on multiple levels. The Letter is not capable of defamatory meaning. Nowhere in the Letter is there any statement accusing Plaintiff of engaging in any criminal conduct or that injures Plaintiff's profession. Further, Plaintiff fails to plead the statements at issue or allege any facts that are necessary to pierce the corporate veil in order to hold the Board Defendants liable. Moreover, the allegations against Defendant Gerstin are based on nothing more than routine legal services

rendered by Gerstin to his client(s) in the course of an attorney-client relationship. Under Florida law, barring a limited exception that is inapplicable in the instant action, an attorney cannot "conspire" with his/her client(s) as a matter of law.

As such, Defendants respectfully submit that this Honorable Court should dismiss Counts I, II, III, and IV of Plaintiff's Complaint, *with prejudice*.

## LEGAL STANDARD

Generally, "[a] pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "'[D]etailed factual allegations'" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, — 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). In considering a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a court limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *LaGrasta v. First Union Sec., Inc*., 358 F.3d 840, 845 (11th Cir.2004).

Lastly, if a case is in federal court based on diversity of citizenship, the forum state's law governs the substantive claims, but federal law governs the specificity with which to allege them. Although a forum state may apply a heightened pleading requirement, a federal court sitting in diversity, should, with limited exceptions, look instead to the federal rules governing pleadings.

## MEMORANDUM OF LAW

As an initial matter, an extrinsic document not physically attached to the complaint may be

incorporated into the complaint by reference if the document's contents are alleged in the complaint (*i.e.* central to the plaintiff's claim) and the document's authenticity is undisputed.  *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *One Call Property Services Inc. v. Security First Ins. Co.*, 165 So.3d 749, 752 (Fla. 4th DCA 2015) (holding that trial court properly determined that an insurance policy was impliedly incorporated where "[t]he complaint refers to the policy" and the suit was premised on an assignment of the policy). Presently, since the Complaint impliedly incorporates the contents of the December 18, 2020 Letter by reference, and the Letter is central to Plaintiff's claims, this Honorable Court may properly consider the terms of the Letter in determining the nature of the claims being alleged and in ruling on Defendants' Joint Motion to Dismiss. *See Exhibit A*.

Lastly, it is well established that "[i]f an [incorporated] document to a complaint negates the pleader's cause of action or defense, the plain language of the document will control and may be the basis for a motion to dismiss." *Health Application Sys., Inc. v. Hartford Life & Acc. Ins. Co*., 381 So. 2d 294, 297 (Fla. 1st DCA 1980), citing Fla. R. Civ. Pro. 1.130(b). *See also Harry Pepper & Assocs. v. Lasseter,* 247 So, 2d 736, 737 (Fla. 5th DCA 1971) (ruling that inconsistent allegations in the pleading and the facts revealed by an exhibit "have the effect of neutralizing each allegation as against the other, thus rendering the pleading objectionable.").

## I.      Plaintiff fails to pierce the corporate veil.

Plaintiff's Complaint is entirely devoid of any factual allegations that could defeat the statutory immunity afforded community directors. *See* Fla Stat. § 617.0834. It is well established in Florida that absent fraud, self-dealing and betrayal of trust, corporate directors and officers are not personally liable for the decisions they make in their corporate capacity. *Id; Sonny Boy, LLC v. Asnani,* 879 So.2d 25, 27 (Fla. 5th DCA 2004). Importantly, directors of a community association

are entitled to immunity even if their actions were negligent and clearly wrong. *Munder v. Circle One Condominium, Inc.*, 596 So.2d 144 (Fla. 4th DCA 1992). This is true regardless of their motivations for taking such action in their corporation capacity. *Calusa Golf, Inc. v. Carlson*, 464 So.2d 1271, 1271 (Fla. 3d DCA). As such, the Court's inquiry is limited as to whether or not the Plaintiff can establish any fraud, self-dealing, unjust enrichment, or criminal activity on the part of the Board Defendants. *See Avila South Condominium Ass'n v. Kappa Corp.*, 347 So. 2d 599 (Fla. 1977).

In *Sonny Boy*, for instance, a condominium unit owner brought an action against the individual directors of the condominium's association. *Sonny Boy, LLC* at 25 (Fla. 5th DCA 2004). The court held that all of the directors, were afforded immunity from suit in their individual capacities, absent a showing of fraud, self-dealing, or criminal activity. *Id* at 28.

Similarly, here, the allegations asserted against the Board Defendants concern actions clearly taken in their capacity as board members of the Association. Importantly, the Plaintiff's Complaint fails to make any allegation of fraud, self-dealing, unjust enrichment, or criminal activity. As such, Plaintiff has failed to plead any facts sufficient to pierce the corporate veil in order to hold the Board Defendants liable. As such, Counts I - IV should be dismissed.

Likewise, "[u]nder the intracorporate conspiracy doctrine, a corporation's employees, acting as agents of the corporation, are deemed incapable of conspiring among themselves or with the corporation." *O'Boyle v. Sweetapple*, 2015 WL 13574304 at *6 (S.D. Fla. 2015). "[C]ourts have long held that a corporation cannot agree, combine, or conspire with its officers, employees, or agents" and this principle has been extended to both in-house and outside counsel employed by the corporation. *American Credit Card Telephone Co. v. National Pay Telephone Corp.*, 504 So. 2d 486, 488 (Fla. 1st DCA 1987) (holding that a defendant attorney cannot be found to have

conspired with the defendant corporation "unless it [is] shown that [the attorney] had a personal stake in the illegal activities separate and distinct from that of the corporation."). Here, Plaintiff does not allege that Defendant Gerstin had any "personal stake" or that he acted outside the scope of his representation. Accordingly, Defendant Gerstin, as the attorney for the Association, was incapable of conspiring with the Association and its board members. Therefore, Count IV of Plaintiff's Complaint should be dismissed.

II.   **Plaintiff fails to separately set forth his claims against each Defendant and fails to identify specific defamatory statements made.**

Plaintiff's Complaint's failure to differentiate his claims against each Defendant is a sufficient and independent reason for dismissal. Specifically, a plaintiff must "link a particular remark to a particular defendant," and blanket references to the defamatory activities of unrelated "defendants," with no specificity as to which defendant was involved in the purported defamatory activity violate Florida's standard pleading requirements. *See R.K./FL Mgmt. v. Chevaldina, No. 11-17842*, 2014 Fla. Cir. LEXIS 51295, at *4 (Fla. 11th Jud. Cir. Ct. Mar. 17, 2014) (dismissing complaint and instructing plaintiff to specifically attribute each particular remark to a particular defendant); *see also Jackson v. North Broward' Cnty. Hosp. Dist*., 766 So. 2d 256, 257 (Fla. 4th DCA 2000) (same); *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006) (remanding with instruction to order repleading where elements of claims were insufficiently linked to large fact section preceding counts, amounting to "a proverbial shotgun pleading" that "incorporate[d] every antecedent allegation by reference into each subsequent claim for relief").

Here, Plaintiff improperly lumps together all factual and legal conclusions against the Defendants while failing to specifically identify the alleged defamatory remarks made. As such, Plaintiff's Complaint is an impermissible shotgun pleading and should be dismissed.

III.   **Count I, II, and III of Plaintiff's Complaint against the Board Defendants should be dismissed as Plaintiff fails to state a claim for defamation.**

Counts I, II, and III of Plaintiff's Complaint attempt to assert a cause of action for defamation against the Board Defendants. Defendant Gerstin is not referenced in Counts I, II, and III of Plaintiff's Complaint. Under Florida law, to establish a cause of action for defamation, a plaintiff must show: (1) publication; (2) falsity; (3) the actor acted with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) the statement is defamatory. *Klayman v. Judicial Watch, Inc.*, 22 F.Supp.3d 1240 (S.D. Fla. 2014). If the plaintiff bringing a defamation claim is a public figure, he or she must also demonstrate with clear and convincing evidence actual malice by the person publishing the statement. *Id.* Moreover, libel pertains to a defamatory written statement.

"Whether a statement is defamatory or not is a question of law." *IBP, Inc. v. Hady Enterprises*, 267 F. Supp. 2d 1148 (N.D. Fla. 2002).  As explained by the Fourth District Court of Appeals:

> We must employ three fundamental principles of libel law. First, a publication must be considered in its totality. "The court must consider all the words used, not merely a particular phrase or sentence.' Articles are to be considered with their illustrations; pictures are to be viewed with their captions; stories are to be read with their headlines. The second and third principles involve the trial court's 'prominent function,' in determining whether a libel case should be submitted to a jury. '**Where the court finds that a communication could not possibly have a defamatory or harmful effect, the court is justified in either dismissing the complaint for failure to state a cause of action or in granting a directed verdict at the proof stage.**' A correlative principle is that the trial court must evaluate the publication, not by 'extremes, *but as the common mind would naturally understand it.*' In other words, the statement should be considered in its natural sense without a forced or strained construction. (Emphasis added).

*Byrd v. Hustler Magazine*, 433 So. 2d 593 (Fla. 4th DCA 1983). Accordingly, as explained further

detail below, as a matter of law, the Letter at issue in this case is not defamatory.

      A.    **Plaintiff fails to state a claim for defamation *per se*.**

A published statement is libelous per se if: 1) it charges that a person has committed an infamous crime; 2) it charges a person with having an infectious disease; 3) it tends to subject one to hatred, distrust, ridicule, contempt, or disgrace, or 4) it tends to injure one in his trade or profession. *Id.* Although not entirely clear, Plaintiff appears to classify the Letter as charging Plaintiff with an infamous crime and that it tends to injure Plaintiff's trade and profession.

Importantly, per se defamatory statements are "so obviously defamatory" and "damaging to [one's] reputation" that they "give rise to an absolute presumption both of malice and damage." *Klayman*, 22 F. Supp. 3d at 1240 (quoting *Wolfson v. Kirk*, 273 So. 2d 774, 776 (Fla. 4th DCA 1973)); s*ee also Paulson v. Cosmetic Dermatology, Inc.*, No. 17-20094-Civ-Scola, 2017 WL 2484197, at *3 (S.D. Fla. June 8, 2017) ("In a per se action, the statements are 'so obviously defamatory' and 'damaging to reputation' that the injurious nature of the statement is apparent from the words in the statement itself and the court consequently takes notice of that fact.") (Citing *Alan v. Wells Fargo Bank, N.A*., 604 Fed.Appx. 863, 865 (11th Cir. 2015) and *Campbell v. Jacksonville Kennel Club Inc*., 66 So. 2d 495, 497 (Fla. 1953)). Additionally, statements that are actionable per se must be "injurious on their face", without "the aid of extrinsic proof", and "without innuendo." *MP, Inc. v. Hady, Enterprises, Inc*., 267 F. Supp. 2d 1148, 1163-64 N.D. (Fla. 2002) (citations omitted).

The Florida Supreme Court in *Cooper v. Miami Herald Publishing Co*., 159 Fla. 296, 300 (Fla. 1947) set forth the pleading standard for claims of libel per se:

> Innuendoes in the pleadings are ineffective for the purpose of fixing the character of an alleged libelous publication as being libelous per se. In determining whether or not a publication is libelous per se the language of the publication itself can alone be looked to, without the aid of innuendoes,

since the innuendo in libel cases is but a deduction of the pleader from the words used in the publication. Unless the pleader's deduction is supported by the language of the publication, the actionable quality of the publication is not legally disclosed.

*Id*. (citations omitted).

A publication is libelous per se if, *when considered alone without innuendo*, it tends to subject one to hatred, distrust, ridicule, contempt or disgrace, or tends to injure one in his trade or profession. *See Barry College v. Hull,* 353 So.2d 575 (Fla. 3d DCA 1977).

In *Hull*, the court recognized that it could not "go beyond the four corners of the publication in determining whether or not there is libel per se." The plaintiff sued his ex-employer for posting a notice indicating that he resigned. The plaintiff argued that he was effectively fired and the "resignation" notice was libelous per se in that it "prevented him from getting a job in the academic world because it raised insurmountable implications that he had been fired for serious misconduct." *Id*. at 577. The court disagreed, holding, "[i]n order to find that [the plaintiff] was fired rather than having resigned, it was necessary to go out of the four corners of the notice and there was no libel per se." *Id*.; *See also Klayman*, 22 F. Supp. 3d at 1248 (noting that the publication requires "sufficient detail for a reader to conclude" the statement contains the defamatory fact alleged), citing *Scobie v. Taylor*, 2013 WL 3776270, at *4 (S.D. Fla. July 17, 2013) ("When context is considered and 'extrinsic facts and innuendo are needed to prove the defamatory nature of the words,' the statements are not defamatory per se."). Accordingly, as explained further below, Count I improperly relies on innuendo and should be dismissed.

### i.     The Letter cannot pertain to Plaintiff without innuendo.

As an initial matter, the Letter does not even mention Plaintiff by name. Therefore, without innuendo, it is entirely impossible to conclude that the Letter pertains to Plaintiff. *See **Exhibit A***. This alone is fatal to Count I.

    **ii.  The Letter does not charge Plaintiff with an infamous crime.**

For libel per se, only felonies may be considered an infamous crime. *Klayman*, 22 F.Supp. 3d at 1240.

As part of Plaintiff's claim under Count I, Plaintiff alleges that the Board Defendants' statements would allow a reader to conclude that "Plaintiff committed felonies under Florida and federal law." D.E. 1 at ¶ 53. Further, Plaintiff asserts that the Letter "accused Plaintiff of committing state and federal computer criminal hacking offenses, including under Fla. Stat. Ann. §815.06 *et seq*. and the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq*." D.E. 1 at ¶ 38. This is based on Plaintiff's belief that the Letter accused Plaintiff of "unlawfully obtaining unit owners' email addresses." *See* D.E. 1 at ¶ 36.

First, Plaintiff's Complaint is false on its face because the Letter contains no such statements or allegations. Contrary to Plaintiff's allegations, the Letter is devoid of any allegation suggesting or charging Plaintiff of illegally obtaining the email address in violation of any state or federal crimes. In fact, the Letter does not even state or allege that Plaintiff improperly obtained the email addresses. Instead, the Letter simply states that "neither the Association nor its management was the source of our owners' email addresses and the method of obtainment by the owner remains unknown." *See **Exhibit A***.

In other words, the Letter states that neither the Association nor its management provided Plaintiff with the email addresses and the Association was unaware how Plaintiff obtained same. It cannot reasonably be alleged that the Letter charges Plaintiff with any type of felonious crime when the Letter does not even allege improper conduct by Plaintiff.  Furthermore, in regard to the Letter's mention of privacy and security concerns, the Letter does not state the existence of privacy and security concerns based on Plaintiff's method of obtaining the email addresses, but because

the "email blasts to owners visibly listed each members [sic] email address causing serious privacy and security concerns." *Id.*

Count I relies entirely on innuendo and an implausible deduction. The Letter does not state that Plaintiff committed any felonious crime. To conclude the Letter accused Plaintiff of a felony would require multiple levels of inferences. As such, Count I fails to allege that the Letter charges Plaintiff with an infamous crime to establish defamation *per se*.

### iii. The Letter does not injure Plaintiff's reputation, trade or profession.

Plaintiff further contends that the Letter harmed his reputation and "professional code of ethics" as well as his office, occupation, business, and/or employment. D.E. 1 at ¶¶ 52, 54.

To qualify as defamation *per se*, Plaintiff must show that the defamatory statement imputes conduct that injures or is incompatible with his profession as a federal judge. *See Klayman*, 22 F.Supp. 3d at 1249.

Per se defamatory statements must impute conduct to plaintiff "incompatible with the essential functions of [his] respective job." *Scobie*, 2013 WL 3776270, at *3. The Court in *Klayman* acknowledged where courts have found conduct to be incompatible with one's profession, the conduct referred to in the defamatory statement went *directly to a person's ability to perform duties essential to his or her employment*, or was sufficiently related to skills required of the profession, noting cases where:

> [T]he plaintiff was accused of being drunk on the job and that accusation was repeated to his manager and other employees ...; patients were told that a doctor's work quality was poor and that his procedures required subsequent corrective work, which impugned the doctor's professional competence and fitness as a surgeon ...; a former supervisor told a prospective employer that an interviewee was "bad news," that she was prone to file frivolous sexual harassment charges, and that "you don't want her in your company," all of which suggested conduct incompatible with the proper exercise of her employment duties ...; a lawyer stated that "if you wanted to influence Judge Hoch, you should send men in tight shorts before him," thereby suggesting

11

that the judge's official duties could be improperly influenced and imputing to him conduct or a condition incompatible with the proper exercise of his judgeship....

*Klayman*, 22 F.Supp. 3d at 1249.

Thus, to establish defamation per se under the allegation that Plaintiff's reputation or profession has been harmed, a court must first determine whether the statement is capable of a defamatory meaning. *Id.* Moreover, *per se* defamatory statements based on injury to trade or profession must impute conduct to a plaintiff that is incompatible with the essential functions of his respective job. *Id.*

Here, an individual reading the Letter cannot reasonably understand the contents of the letter to imply that Plaintiff's moral character is in question. In the same way, the Letter contains absolutely no allegation that implies conduct of the Plaintiff is incompatible with the essential functions of being a federal judge. Significantly, the Letter is entirely devoid of a single allegation questioning Plaintiff's moral character and fails to allege any conduct by Plaintiff that suggests that Plaintiff was involved in any wrongdoing.

In sum, the Letter, on its face, is incapable of any defamatory meaning, fails to accuse Plaintiff of being convicted of or committing any crime, and fails to make any allegation that attacks Plaintiff's character that is incompatible with the essential function of Plaintiff's profession. Accordingly, the Letter fails to rise to the level of "so obviously defamatory" as required under Florida law for *per se* defamation and Count I should be dismissed, *with prejudice*.

### iv.    Plaintiff fails to plead actual malice.

Public figures and public officials must plead and prove actual malice. *See, e.g., New York Times Co. v. Sulli*van, 376 U.S. 254, 279-280 (1964) ("a public figure must "prove[] that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless

disregard of whether it was false or not"); *Mile Marker, Inc. v. Petersen Publ'g, Inc*., 811 So.2d 841, 845 (Fla. 4th DCA 2002) ("a public figure plaintiff must establish that the disseminator of the information either knew the alleged defamatory statements were false, or published them with a reckless disregard despite awareness of their probable falsity"). This heightened pleading standard under the First Amendment requires a showing of "clear and convincing" evidence that a defamation defendant published a statement with knowledge of its falsity or a high degree of awareness of probable falsity. *See Garrison v. Louisiana*, 379 U.S. 64, 74 (1969); *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 701-702 (11th Cir. 2016) (holding that a Florida public-figure plaintiff must allege plausible facts supporting a finding of actual malice).

Here, Plaintiff alleges, and Defendants do not dispute, that Plaintiff is a prominent figure in the legal community and a distinguished United States District Judge. D.E. 1 ¶¶ 17-19. These attributes establish that Plaintiff is a public figure who must plead and prove actual malice to sustain a cause of action for defamation. *See Hoch v. Rissman, Weisberg, Barrett*, 742 So.2d 451 (Fla. 5th DCA 1999) (judge, as public official, was required to prove actual malice).

Despite asserting public-figure status, Plaintiff's Complaint makes only conclusory statements as to actual malice. Plaintiff's Complaint provides no facts to support his claim of actual malice. Plaintiff's conclusory allegations, still devoid of any factual foundation, fall far short of adequately alleging clear and convincing evidence of actual malice.

This is because in order to plead actual malice, a plaintiff must allege concrete facts that the defendant knowingly published a false and defamatory statement (told a knowing lie) or published the statement with reckless disregard for its truth and falsity. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 279-280 (1964). Reckless disregard for the truth means that the defendant in fact entertained serious doubts as to the truth of the publication. *See St. Amant v.*

*Thompson*, 390 U.S. 727,731 (1968). Reckless disregard is not measured by whether a reasonably prudent person would have published this statement. The plaintiff must show the defendant in fact entertained serious doubts as to the truth of the publication. (Emphasis added). *Demby v. English*, 667 So.2d 350, 354 (Fla. 1st DCA 1995) (quoting *St. Amant*). Actual malice has been found only where the author publishes a defamatory falsehood in the face of "red flags flying." *Cape Publications, Inc. v. Adams*, 336 So.2d 1197 (Fla. 4th DCA 1976). Plaintiff must plead sufficient facts showing a reckless disregard or serious doubts of the truth by the Board Defendants. Thus, Plaintiff has failed to meet his burden of pleading actual malice.

### B.    Plaintiff fails to state a claim for defamation *per quod*.

Even with the aid of extrinsic facts and innuendo, Plaintiff still fails to state a claim for defamation *per quod*.

### i.    Plaintiff fails to plead special damages.

For libel *per quod*, plaintiff must allege special damages. *Barry College*, 353 So. 2d at 578 ("for libel per quod, actual malice and special damages must be proved").

"Special damages, that is specific monetary losses (which exclude injuries to a plaintiff's reputation or feelings not resulting in quantifiable monetary loss), must be pled and proved in a defamatory per quod case." *See Piver v. Hoberman*, 220 So. 2d 408, 408-09 (Fla. 3d DCA 1969) ("An allegation of special damages is an indispensable element of a complaint if the cause of action alleged is libel per quod") (affirming dismissal of defamation complaint) (citing *Campbell v. Jacksonville Kennel Club*, 66 So. 2d 495, 498 (Fla. 1953)).

In other words, Plaintiff must plead damages, aside from injured reputation, which establish that Plaintiff has suffered an identifiable monetary loss or actual injury. To properly plead special damages, a plaintiff must "establish a pecuniary loss that has been realized or liquidated,

as in the case of specific lost sales." *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 388 (Fla. 4th DCA 1999) (describing the pleading requirement for special damages in the analogous cause of action for injurious falsehood or slander of title). Plaintiff's Complaint is entirely devoid of any facts which allege that the Letter caused him to incur any special damages. In fact, Plaintiff even fails to state that he suffered any special damages. Instead, Plaintiff only alleges, without proof, that he suffered damages to his reputation. D.E. 1 at ¶ 7.  As such, Count II fails as a matter of law and must be dismissed. *See Tip Top Grocery Co. v. Wellner,* 135 Fla. 518, 186 So. 219 (1938) (special damages constitute the sole basis for recovery under per quod, a complaint that fails to allege special damages is defective).

### ii.     The Letter is incapable of defamatory meaning.

Unlike defamation *per se*, "*per quod*" requires additional explanation of the words to show that they have defamatory meaning or that the person defamed is the plaintiff. However, even relying on extrinsic facts or innuendo, Count II still fails in that Plaintiff fails to establish that any defamatory statement was made by the Board Defendants.

Plaintiff cannot suggest that statements can be defamatory simply because they are alleged to be false. *United Auto. Ins. Co. v. Freidin*, 36 Media L. Rep. 1399, 1401 (Fla. 11th Cir. Ct. Dec. 3, 2007) ("a statement is not defamatory simply because it is allegedly inaccurate"), app. dism., Case No. 3D08-309, 2008 Fla. App. LEXIS 1978, *1 (Nov. 3, 2008). To the contrary, statements are considered defamatory only if they naturally and proximately expose a person to "distrust, hatred, contempt or ridicule" in the context in which the statement was made. *Thomas v. Jacksonville Television, Inc*., 699 So. 2d 800 (Fla. 1st DCA 1997). Thus, the Court must analyze each challenged statement as a whole, and in its natural sense without forced or strained construction, and then decide as a matter of law whether the statement is reasonably capable of

defamatory meaning. *See Byrd*, 433 So.2d at 595.

As previously discussed, there is not a single statement in the Letter that disparages or attacks Plaintiff's character or otherwise exposes Plaintiff to distrust, hatred, contempt, or ridicule. The Letter only refers to a disgruntled unit owner and attempts to correct certain statements and facts. Further the Letter states that the Association is unaware of how the unit owner obtained the email addresses of Association members. Moreover, the Letter goes on to provide facts surrounding the current state of construction repairs. Certainly, factually stating the status of construction repairs is not defamatory as a matter of law. Further, stating that the Association is unaware of how the unit owner obtained the email addresses of the members or that members should take precautions to avoid privacy and security concerns is not capable of defamatory meaning. As such, Count II fails in that Plaintiff cannot establish any defamatory statement made.

### iii.    Plaintiff cannot establish publication to a third party.

"A defamatory statement does not become actionable ... until it is published or communicated to a third person; statements made to the person alleging the defamation do not qualify." *American Airlines, Inc. v. Geddes*, 960 So. 2d 830 (Fla. 3d DCA 2007). Moreover, Florida law clearly holds that a "communication made in good faith on any subject matter by one having an interest therein, or in reference to which he had a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which would otherwise be actionable, and though the duty is not a legal one but only a moral or social obligation." *Id*; *see also Razner v. Wellington Reg'l Med. Ctr., Inc*., 837 So. 2d 437 (Fla. 4th DCA 2002).

Here, the Letter cannot be defamatory for at least two reasons. First, as described in the Complaint, the Letter was drafted by Association members and published to other Association members, all of whom have an interest in the contents of Plaintiff's initial email blast as well as

16

the status of the construction repairs. Additionally, as the Letter was made by board members acting in their corporate capacity to other members of the Association, the Letter was published by the Association to itself, and therefore there is no publication to a third party.

      **C.**    **Plaintiff fails to state a claim for defamation by implication.**

      To state a claim for defamation by implication, Plaintiff must allege (and prove) that a defendant either (1) juxtaposes a series of facts so as to simply imply a defamatory connection between them, or (2) creates a defamatory implication by omitting facts. *See Turner v. Wells*, 879 F.3d 1254 (11th Cir. 2018) (applying Florida law). Defamation claims based on a false juxtaposition of facts must rely on more than a tortured and extreme reading of select facts, and must depend on a reasonable person's perception of the entirety of a publication and not merely on individual statements. *Id.* A court's inquiry as to whether a defendant's statements constitute defamation by implication turns on whether the "gist" of the publication is false. *Id.* In other words, defamation by implication applies in circumstances where literally true statements are conveyed in such a way as to create a false impression. *See Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098 (Fla. 2008).

            **i.**    **Plaintiff fails to establish publication to a third party.**

      Plaintiff must meet the publication requirement for his defamation by implication claim, just as he would with any other defamation claim. *Id.* ("[D]efamation by implication is a well-recognized species of defamation that is subsumed within the tort of defamation. All of the protections of defamation law that are afforded to the media and private defendants are therefore extended to the tort of defamation by implication.") (citations omitted). Here, as stated above, Plaintiff cannot establish publication to any third party in that all of the recipients of the Letter have a material interest in the contents of Plaintiff's initial email blast as well as the status of the

construction repairs. Additionally, as the Letter was sent by board members acting in their corporate capacity to other members of the Association, the Letter was published by the Association to itself, and therefore there is no publication to a third party.

### ii. Plaintiff fails to allege any facts that imply a false or defamatory statement of fact.

In Count III, Plaintiff fails to provide a shred of facts alleging any "false impression" or series of facts that create a defamatory implication. Plaintiff must do more than provide conclusory allegations. Accordingly, as Plaintiff has failed to provide any facts describing which statements concerning Plaintiff create false suggestions and what the defamatory implications are, Plaintiff has failed to comply with minimum pleading requirements.

Moreover, like in Counts I and II, a trial court is obliged to dismiss a libel claim at the outset, where, the publication is not reasonably capable of the defamatory meaning or implication that Plaintiff alleges. See *Vanmoor v. Fox News Network*, 34 Media L. Rep. at 2024 (dismissing libel claim because "statements simply do not carry the defamatory implication plaintiff alleges"). Because the Letter is not capable of defamatory meaning or implication, Count III fails.

### IV. <u>Count IV of Plaintiff's Complaint against Defendants should be dismissed because Plaintiff fails to state a claim for conspiracy to defame.</u>

In Count IV, Plaintiff asserts a claim for "conspiracy to defame," alleging that the Defendants "conspired" to defame Plaintiff. However, Plaintiff's claims fail for the following two reasons.

First, for an actionable conspiracy claim to be made, there must be an actionable underlying tort against the alleged conspirators. *See Beck v. Prupis*, 162 F.3d 1090, 1099 n. 18 (11th Cir. 1998). The underlying tort on which this Count is based is defamation. However, as previously stated, no actionable defamation claim has been stated. Plaintiff has not established an actionable

defamation claim and without same, Plaintiff cannot maintain a claim for conspiracy to defame. *See Fridovich v. Fridovich*, 756 So.2d 140 ("The conspiracy to defame claim cannot stand where, as here, the defamation action fails. There being no defamation, the gist of the defamation conspiracy, there can be no conspiracy claim."); *see also Palm Beach County Health Care Dist. v. Prof'l Med. Educ., Inc.*, 13 So.3d 1090, 1096 (Fla. 4th DCA 2009) ("Since the counts regarding the goals of the conspiracy—defamation and tortious interference—fail, so too the conspiracy count must fail.").

Second, Plaintiff's claim for conspiracy against Defendant Gerstin fails as a matter of law, because a lawyer cannot be held liable for conspiracy under Florida law based on nothing more than counseling his/her client(s). This fundamental principle is akin to the rule that a doctor is not liable for battery on a patient, even if he is negligent in rendering care, absent extraordinary circumstances. The law simply will not pierce the attorney-client relationship and sanction a lawyer for engaging in the very service s/he is licensed and sworn to render, absent specific allegations of self-serving, bad acts beyond the scope of representation.

Florida courts have consistently extended and analogized the intra-corporate conspiracy doctrine – the long-standing principle that "a corporation cannot agree, combine, or conspire with its officer, employees, or agents" – to the attorney-client relationship between both in-house and outside counsel and a client corporation. *American Credit Card Telephone Co. v. National Pay Telephone Corp.*, 504 So. 2d 486, 488 (Fla. 1st DCA 1987); *O'Boyle v. Sweetapple*, 2015 WL 13574304 at *6 (S.D. Fla. 2015). As such, it is well settled, that with respect to a cause of action for conspiracy, that "neither an agent nor an employee can conspire with his or her corporation principal or employer." *Richard Bertram, Inc. v. Sterling Bank & Trust*, 820 So. 2d 963, 966 (*citing Lipsig v. Ramlawi*, 760 So. 2d 170, 181 (Fla. 3d DCA 2000) (holding that a directed verdict should

19

have been entered in favor of the defendant attorney on the conspiracy claim, as the attorney acted within his scope of his agency as his clients' attorney and on behalf of and at the direction of his clients, who had an unquestionable right to seek and obtain their attorney's legal advice)). Likewise, it is equally well settled that "an attorney serves as an agent for his or her client. As such, the attorney's acts are the acts of the principal, the client . . ." *Richard Bertram, Inc*, 820 So. 2d at 965 (affirming the trial court's entry of summary judgment in favor of the defendant attorney on the grounds that the attorney, as an agent for the principal and acting within the scope of his representation, could not be individually liable for conspiracy).

Here, the Board Defendants had an unquestionable right to seek their attorney's legal advice in the drafting of the Letter and the well-pled facts show nothing more than that Defendant Gerstin counseled his client(s). Under Florida law, as an agent acting within the scope of his representation of the Association[1] and on behalf of and at the direction of his client(s), Defendant Gerstin cannot be held liable for "conspiring" with his client(s). Regardless of the Plaintiff's perception of any alleged wrongdoing, Defendant Gerstin was free to advise his client(s) as an attorney/agent. Therefore, as there can be no good faith allegation that Defendant Gerstin acted outside the scope of his agency or employment, Count IV of the Complaint should be dismissed.

Likewise, it is well-established under Florida law that an attorney cannot conspire with his/her client in the absence of evidence that the attorney acted illegally or beyond the scope of his/her employment to secure an unconscionable advantage against the plaintiff. *Pickard v. Maritime Holding Corp.*, 161 So. 2d 239, 241 (Fla. 3d DCA 1964) ("It is recognized that an

---

[1] It is immaterial whether Defendant Gerstin was acting as the attorney for the Association, its board members, or for the Board Defendants, individually, as Defendant Gerstin was consulted in his capacity as counsel. Under Florida law, an attorney cannot conspire with his/her clients, whoever those clients may be.

attorney acting under employment, at the direction of his client and in legal manner is not liable for the consequences of his client's actions."). In *Pickard*, the Third District Court of Appeals found that even though the defendant attorney's actions were "both unfortunate and ill-advised," they were, nonetheless, with the scope of his representation and were not illegal, and accordingly reversed the judgment entered against the defendant attorney on the count of conspiracy. *Id.* at 240-41.

In fact, this Court has also acknowledged the principle of Florida law that "an actionable conspiracy is not present where the attorney's action 'is for the benefit of his client rather than for the attorney's sole personal benefit.'" *O'Boyle*, 2015 WL 13574304 at *7. In other words, so long as an attorney's actions are "motivated not by personal concerns but by concerns for their clients, attorneys do not form 'conspiracies' with their clients." *Id.* at *8 (dismissing the plaintiff's conspiracy count against the defendant attorney for failure to allege an actionable conspiracy, because even though the attorney's actions may have been "unethical," they were nonetheless "part of his attorney-client relationship with [his client] if motivated by concern for his client's interest" rather than for his "own personal benefit"); *see also American Credit Card Telephone Co.*, 504 So. 2d at 489 (holding that the defendant attorneys "could not be found to have conspired with [the co-defendant corporation] unless it was shown that they had a personal stake in the illegal activities separate and distinct from that of the corporation").

In the instant action, Plaintiff has not alleged, nor can he allege in good faith, that Defendant Gerstin acted illegally, beyond the scope of his representation, or for his own personal benefit. At all times material hereto, Defendant Gerstin acted at the direction of and for the benefit of his client(s). Therefore, as a matter of law, Defendant Gerstin could not have formed a "conspiracy" with his client(s).

Accordingly, Plaintiff cannot sufficiently state a plausible claim for conspiracy to defame and Count IV should be dismissed, *with prejudice.*

## CONCLUSION

For the foregoing reasons, Defendants respectfully requests that this Honorable Court dismiss Counts I - IV of Plaintiff's Complaint, *with prejudice*, and provide any further relief this Court deems just and proper.

Respectfully submitted this 1st day of July 2021.

**KAUFMAN DOLOWICH & VOLUCK, LLP**
100 SE 3rd Avenue, Suite 1500
Fort Lauderdale, Florida 33394
Telephone: (954) 302-2360
Facsimile: (888) 464-7982
*Attorneys for Defendants- David Matesic and Candyce Abbatt*

*/s/ Mark Fereg, Esq.*
**Avery A. Dial, Esq.**
Florida Bar No.: 732036
adial@kdvlaw.com
**Mark Fereg, Esq.**
Florida Bar No.: 1008822
mfereg@kdvlaw.com

**KAPLAN ZEENA LLP**
2 South Biscayne Boulevard
Suite 3050
Miami, Florida 33131
Telephone: (305) 530-0800
Facsimile: (305) 530-0801
*Attorneys for Defendant Joshua Gerstin*

By:    */s/ James M. Kaplan*
        JAMES M. KAPLAN
        Florida Bar No.:921040
        james.kaplan@kaplanzeena.com
        elizabeth.salom@kaplanzeena.com
        service@kaplanzeena.com
        MARIA KIMIJIMA
        Florida Bar No.: 115504
        maria.kimijima@kaplanzeena.com
        marlen.cabo@kaplanzeena.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed through CM/ECF this 1st day of July 2021, and thereby was served upon counsel of record.

*/s/ Mark Fereg*
Mark Fereg