UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

------------------------------------------------------------X
FREDERIC BLOCK,                               :
                                              :
                          Plaintiff,    :    Civil Action No.: 21-cv-61032-RKA
                                              :
       v.                                      :
                                              :    **AMENDED COMPLAINT**
DAVID MATESIC, CANDYCE ABBATT and             :
JOSHUA GERSTIN, in their individual capacities, :
                                              :    **Jury Trial Demanded**
                         Defendants.   :
------------------------------------------------------------X

      Plaintiff Frederic Block, in his Complaint against Defendants David Matesic, Candyce Abbatt and Joshua Gerstin (together, "Defendants"), hereby alleges as follows:

## PRELIMINARY STATEMENT

      1.     On December 11, 2020, Plaintiff, a prominent member of the legal community and a unit owner of The Palms 2100 Tower One Condominium Association, Inc. ("Tower One" or the "Association") in Fort Lauderdale, Florida, sent a letter to Bruce Masia ("Masia") of KW Property Management & Consulting, the property manager of Tower One, copying his fellow Tower One residents, with well-founded concerns about a construction project that was wildly overbudget and significantly delayed.

      2.     Defendants David Matesic ("Matesic") and Candyce Abbatt ("Abbatt") were, at all relevant times, officers and directors of Tower One and members of the Association's five-member Board of Directors (the "Board"). They were thus responsible, at least in part, for managing (or mismanaging) the construction project. Matesic and Abbatt, who received the letter, did not respond to Plaintiff's well-founded concerns.

3. Rather, Matesic and Abbatt, conspiring with Defendant Joshua Gerstin ("Gerstin"), set out to destroy Plaintiff's reputation by falsely accusing him of computer hacking crimes under federal and Florida laws. They did so by drafting a letter laced with falsities.

4. Defendants' letter was drafted without the Board's authority. Defendants did not show the letter to, or otherwise involve, any of the other three Board members. That did not stop Defendants from signing the letter, "Sincerely, Board of Directors," even though no other member of the Board authorized the letter.

5. Most egregiously, Defendants drafted the letter, which Matesic and Abbatt subsequently published, without any regard for whether its contents were true (they were not). After the letter was published, the three other Board members, who could not have authorized the letter because they did not even know about it, steadfastly disavowed its contents.

6. On December 18, 2020, Matesic and Abbatt published the letter by email to the entire Tower One community. The letter was titled "Important Privacy and Construction Alert." In the letter, Defendants falsely accused Plaintiff of having breached the Association's security to gain access to his neighbors' email addresses, thus "causing serious privacy and security concerns for everyone." To emphasize their false accusation of criminal conduct, Defendants urged all the Tower One unit owners to "consider updating their computer[s'] privacy and security settings," again falsely suggesting that Plaintiff had unlawfully or wrongfully accessed—and would continue to unlawfully or wrongfully access—the unit owners' electronic devices and the Association's computers.

7. Plaintiff brings this defamation action under Florida law to repair the serious reputational damage Defendants have caused him.

## JURISDICTION AND VENUE

8. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there is a diversity of citizenship among the parties and this action involves an amount in controversy in excess of $75,000, excluding interests and costs. Plaintiff is a citizen of the state of New York. Defendant Matesic is a citizen of Pennsylvania, Defendant Abbatt is a citizen of Michigan and Defendant Gerstin is a citizen of Florida.

9. Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in the District.

## PARTIES

10. Plaintiff Frederic Block is a citizen of the state of New York.

11. Defendant David Matesic is a citizen of the state of Pennsylvania.

12. Defendant Candyce Abbatt is a citizen of the state of Michigan.

13. Defendant Joshua Gerstin is a citizen of the state of Florida.

## FACTUAL ALLEGATIONS

**I.     BACKGROUND**

14. Born in Brooklyn, New York, Plaintiff has led a long and illustrious career.

15. He received an *Artium Baccalaureus* from Indiana University in 1956 and a Bachelor of Laws from Cornell Law School in 1959.

16. After law school, Plaintiff clerked on the New York Supreme Court, Appellate Division, from 1959 to 1961.

17. Plaintiff then embarked on a distinguished career in private legal practice, handling civil and criminal cases at both the trial and appellate levels, including before the United States Supreme Court.

18. In 1992, Plaintiff took a position as an adjunct professor at Touro Law School on Long Island, New York.

19. In 1994, Plaintiff was confirmed to a seat on the federal bench in the Eastern District of New York, where he continues to preside as a United States District Judge.

## II. THE CONSTRUCTION PROJECT

20. Plaintiff has been a Tower One unit owner for approximately five years.

21. In or around 2018, the Association commenced a construction project. The project's scope, initially meant to be a non-structural paint job, had morphed into a project requiring extensive structural work that had not been contemplated in the original agreement governing the project.

22. In addition, the project, originally slated to be completed in 15 months, was in its third year and was estimated to require an additional 18 months to complete. Finally, the project's cost, originally estimated at approximately $4 million had ballooned to over $12 million.

23. On December 11, 2020, Plaintiff sent a letter to Masia ("December 11 Letter"), the condominium's property manager, raising well-founded concerns regarding the construction project, which, by that time, was projected to be more than $8.3 million overbudget and over two years behind schedule.

24. In the spirit of transparency, Masia agreed at a prior Tower One Zoom meeting that Plaintiff's December 11 Letter would be circulated to all Tower One unit owners, together with answers to its important questions.

25. Plaintiff's letter dated December 11, 2020 (as well as prior letters he sent, dated August 15 and September 13, 2020, respectively) was professional, respectful and raised legitimate concerns about the project. *See* Exhibit A. Other residents of Tower One shared Plaintiff's concerns.

26. For example, Plaintiff questioned why the estimated cost of the project was already more than triple the original contract price and expected to increase in the future.

27. Plaintiff also asked, among other things, why the project, originally scheduled to be completed in 15 months, was already in its third year and was estimated, at a minimum, to take another 18 months to complete.

28. Plaintiff also inquired why the scope of the project had changed from a non-structural paint job to one that involved structural concrete work, which had not been contemplated in the original agreement. Plaintiff further inquired about who had been subcontracted to perform this new concrete work.

29. Plaintiff sent a copy of his letter to the email addresses of various unit owners in Tower One. Plaintiff lawfully had possession of these unit owners' email addresses.

### III.    DEFENDANTS' DEFAMATORY STATEMENTS

30. On or around December 14, 2020, Matesic and Abbatt sent Plaintiff's letter to Gerstin, a partner at the law firm Gerstin & Associates. After Defendants all possessed Plaintiff's letter, they colluded to defame Plaintiff by agreeing to draft, and then actually drafting, a response (the "December 18 Letter").

31. Matesic and Abbatt first sent Gerstin a draft of a proposed letter response. Gerstin subsequently re-drafted and revised significant portions of the letter. The final draft of the letter was co-authored in its entirety and in all respects by Defendants and approved by them for publication to the Tower One unit owners. All this was done without any other Board members' knowledge or authorization; in fact, they were never shown the letter by Matesic, Abbatt or Gerstin before it was emailed to all the Tower One unit owners. Defendants were, therefore, not acting in their capacity as board members.

32. Gerstin, for his part, is an attorney at a law firm that sometimes advises the Association. Gerstin, however, is not an employee of the Association and was not (and could not have been) acting in his capacity as the Association's attorney in drafting and approving the letter—knowing that it would be sent to all the Tower One unit owners—because the entire process was unauthorized by the Board.

33. On December 18, 2020, Matesic and Abbatt published the letter, sending an email blast to Tower One's unit owners. The letter made false and/or reckless statements defaming Plaintiff. *See* Exhibit B.

34. Although Defendants had no basis to believe that Plaintiff had accessed any unit owners' email addresses in any way that was unlawful or improper, that did not stop Defendants from accusing Plaintiff of unlawfully and wrongfully accessing the unit owners' email addresses—again, email addresses Plaintiff lawfully had in his possession.

35. The December 18 Letter was captioned—in bold, italics and underlined—"Important Privacy and Construction Alert."

36. The December 18 Letter referred to Plaintiff as a "disgruntled owner" who had "recently" sent emails about the construction project to Tower One unit owners. Since Plaintiff

had recently sent emails critical of the construction project, and because no other such emails had been sent recently, the recipients of Defendants' letter understood that these words referred to Plaintiff.

37. The operative part of the letter read as follows:

> Recently Tower One's members were subjected to at least two email blasts from a disgruntled owner disparaging the Association, its directors, the construction project, and its associated professionals with incorrect statements and facts. These unsolicited emails [sic] blasts to owners visibly listed each member's email address causing serious privacy and security concerns for everyone. Neither the Association nor its management was the source of our owners' email addresses and the method of obtainment by the owner remains unknown. The Association and management staff take your privacy and security seriously. We advise all members to check and consider updating their computer's security and privacy settings.

38. Defendants' letter accused Plaintiff of having unlawfully and/or wrongfully obtained unit owners' email addresses because, according to the Defendants, "[n]either the Association nor its management was the sources of [the] owners' email addresses and the method of obtainment . . . remains unknown. . . ." Defendants then warned the unit owners to "consider updating their computer[s'] privacy and security settings," falsely suggesting that Plaintiff had unlawfully or wrongfully accessed—and would continue to unlawfully or wrongfully access—the unit owners' electronic devices.

39. The letter thus implicitly accused Plaintiff of committing state and federal computer criminal hacking offenses, including under Fla. Stat. Ann. § 815.06 *et seq.* and the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.* and implicitly accused Plaintiff of obtaining the email addresses by wrongful means and in breach of the security and privacy of the unit owners.

40. Many Tower One members who received and read the Defendants' December 18 Letter reported to Plaintiff their belief that the letter accused the Plaintiff of accessing the Association's private email addresses without its authorization, illegally or in breach of the privacy and security of the members. These members included eight unit owners acquainted with Plaintiff, who approached him or contacted him at various times to express their revulsion at the December 18 Letter and who shared their belief that it had accused Plaintiff of unlawfulness or wrongdoing.

41. Although the December 18 Letter was never seen by the other members of the five-member Board, Defendants incredibly signed the letter, "Sincerely, Board of Directors" even though only Matesic, Abbatt and Gerstin had drafted, reviewed and approved of the letter, including its publication.

42. Rather than respond to Plaintiff's careful and urgent questions about the construction project gone awry, Defendants called Plaintiff a "disgruntled owner" and warned Plaintiff's neighbors to be wary of him because of, in Defendants' false telling, Plaintiff's purportedly criminal and dishonest behavior.

43. Upon information and belief, Defendants knew that Plaintiff maintained close acquaintances with many of the Tower One unit owners; knew that Plaintiff had communicated with many owners via email in the past (including the Defendants); and knew that Plaintiff had no need to resort to illegal or wrongful methods to obtain the unit owners' email addresses. Moreover, they made no attempt to discover how Plaintiff had obtained these email addresses, which they could have done with minimal effort.

44. Further, Defendants' December 18 Letter contained several other false or distorted statements speaking to the defamatory intent of Defendants. The letter falsely stated

that Plaintiff used "incorrect statements and facts" to disparage individuals and entities involved in the construction project. Moreover, to portray Plaintiff as, in the Defendants' words, a "disgruntled owner," the Defendants falsely stated that Plaintiff "never reviewed" information sent to him by the Association and "rebuffed" invitations to meet.

45. However, even a cursory review of Plaintiff's letters establishes beyond any doubt that he carefully and meticulously researched each of the statements that formed the basis for his—and numerous other unit owners'—questions about the construction project.

46. Plaintiff cited in excruciating detail each of his sources. By contrast, the Defendants' defamatory letter accused Plaintiff of making "inaccurate" and "misleading" statements but neither references any basis for this accusation nor cites even one example of a false statement by Plaintiff.

47. Indeed, because of Plaintiff's letter's thoroughness and accuracy, Defendants had a clear interest in discrediting the author who had thoroughly criticized and embarrassed their leadership, and resorted to defamation to do so.

48. On January 7, 2021, Plaintiff—through counsel—sent a letter to Matesic and Abbatt requesting that they withdraw the December 18 Letter.

49. Instead of doing the right thing and withdrawing their defamatory letter, Defendants doubled down. They continued (and continue to this day) to spread false rumors about Plaintiff and otherwise have sought to harm Plaintiff's reputation, all of which is further indication of their malicious conduct. Defendants obviously know and simply do not care (and never did) that their statements concerning Plaintiff are false.

## FIRST CAUSE OF ACTION
### (Defamation *Per Se*)
#### *Against Defendants Matesic, Abbatt and Gerstin*

50.  Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

51.  Defendants defamed Plaintiff by publishing false statements concerning Plaintiff in the December 18 Letter.

52.  Defendants defamatory statements are reasonably understood to implicate Plaintiff's moral character and professional code of ethics.

53.  A reasonable reader of Defendants' published false statements concerning Plaintiff would conclude that Plaintiff committed felonies under Florida and federal law.

54.  A reasonable reader of Defendants' statements would also come to distrust Plaintiff and hold him in ill repute, as the letter implied that Plaintiff had obtained private information about the readers by illicit or wrongful means.

55.  Defendants' false statements concerning Plaintiff injured him in his office, occupation, business and/or employment.

56.  Defendants' false statements concerning Plaintiff imputed to him conduct and characteristics incompatible with Plaintiff's lawful exercise of his occupation.

57.  Defendants' false statements concerning Plaintiff caused serious injury to Plaintiff's professional and personal reputations.

58.  Defendants' defamatory statements were so obviously defamatory and damaging to Plaintiff's reputation that they give rise to an absolute presumption of both malice and damages.  As a direct and proximate result of Defendants' defamatory statements, Plaintiff has suffered and continues to suffer reputational harm for which he is entitled to an award of

damages to the greatest extent permitted under law, including but not limited to punitive damages.

## SECOND CAUSE OF ACTION
### (Defamation *Per Quod*)
*Against Defendants Matesic, Abbatt and Gerstin*

59. Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

60. Defendants defamed Plaintiff by publishing false statements concerning Plaintiff in the December 18 Letter.

61. Defendants knew their published statements concerning Plaintiff were false. Alternatively, Defendants recklessly disregarded the falsity of their published statements concerning Plaintiff.

62. In making these statements concerning Plaintiff, Defendants acted with actual malice.

63. As a direct and proximate result of Defendants' defamatory statements, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of damages to the greatest extent permitted under law, including but not limited to punitive damages.

## THIRD CAUSE OF ACTION
### (Defamation by Implication)
*Against Defendants Matesic, Abbatt and Gerstin*

64. Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

65. Defendants' published statements concerning Plaintiff created false suggestions, impressions and/or implications about him.

66. Defendants' published statements concerning Plaintiff juxtaposed a series of facts that implied a defamatory connection between them.

67. Defendants further created a defamatory implication by omitting certain facts.

68. As a direct and proximate result of Defendants' defamatory conduct, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of damages to the greatest extent permitted under law, including but not limited to punitive damages.

### FOURTH CAUSE OF ACTION
**(Conspiracy to Defame)**
*Against All Defendants*

69. Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

70. Defendants together shared a common purpose and agreed to defame Plaintiff.

71. Defendants took action against Plaintiff for the purpose of accomplishing the underlying tort of defamation with the desire and intention that the information be published to third parties.

72. Defendants' conspiracy caused Plaintiff to be defamed.

73. As a direct and proximate result of Defendants' defamatory conspiracy and conduct, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of damages to the greatest extent permitted under law, including but not limited to punitive damages.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court enter judgment in his favor and against Defendants, containing the following relief:

A. An award of punitive damages;

   B.  A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the State of Florida;

   C.  An injunction and order permanently restraining Defendants and any and all persons acting in concert with them from engaging in any such further unlawful conduct;

   D.  An award of monetary damages for reputational harm;

   E.  Prejudgment interest on all amounts due;

   F.  An award of Plaintiff's reasonable attorneys' fees and costs; and

   G.  Such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: July 15, 2021
      Fort Lauderdale, Florida

Respectfully submitted,

**THE LAW OFFICES OF
JOSEPH R. FAZIO, P.A.**

By:   /s/ Joseph R. Fazio, III
       Joseph R. Fazio, III
       (Bar No. 0005983)

633 South Andrews Avenue
Fort Lauderdale, FL 33301
Telephone: (954) 463-0585
Facsimile: (954) 767-9461
jfazio@jfaziolaw.com

**WIGDOR LLP**

    Douglas H. Wigdor
    (admitted *pro hac vice*)
    Valdi Licul
    (admitted *pro hac vice*)
    John S. Crain
    (admitted *pro hac vice*)

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
dwigdor@wigdorlaw.com
vlicul@wigdorlaw.com
jcrain@wigdorlaw.com

*Counsel for Plaintiff Frederic Block*