UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

FORT LAUDERDALE DIVISION

CASE NO. 21-61032-CIV-RKA


FREDERIC BLOCK,                      .
                                     . Fort Lauderdale, Florida
            Plaintiff,               .
                                     . October 26, 2021
            v.                       . 2:01 p.m.
                                     .
DAVID MATESIC, ET AL.,               .
                                     .
            Defendants.              .
. . . . . . . . . . . . . .

- - - - -

Transcript of Zoom Motion Hearing had

before the Honorable Roy K. Altman,

United States District Judge.

- - - - -


Proceedings recorded by mechanical stenography, transcript
produced by computer.

```
APPEARANCES:

For the Plaintiff:      Valdi Licul, Esq.
                        Wigdor LLP, P.A.
                        85 Fifth Avenue
                        New York, NY  10003

For the Defendants      Avery A. Dial, Esq.
Matesic and Abbatt:     Kaufman Dolowich & Voluck, LLP
                        100 SE 3rd Avenue
                        Suite 1500
                        Fort Lauderdale, Florida  33394

For the Defendant       James M. Kaplan, Esq.
Gerstin:                Kaplan Zeena LLP
                        Two South Biscayne Boulevard
                        Suite 3050
                        Miami, Florida  33131

Court Reporter:         Francine C. Salopek, RMR, CRR
                        Official Court Reporter
                        United States District Court
                        299 E. Broward Blvd., Room 205
                        Fort Lauderdale, Florida 33301
                        (954)769-5686

                  -  -  -  -  -
```

<u>TUESDAY, OCTOBER 26, 2021, 2:01 P.M.</u>

*(The Judge entered the courtroom)*

**THE COURT:**  All right, folks.  Good afternoon.  Who's here for the plaintiff?

**MR. LICUL:**  Good afternoon, your Honor.  Valdi Licul from *Wigdor LLP* for the Plaintiff Frederic Block.

**THE COURT:**  Good afternoon.

And who's here for the defense?

**MR. DIAL:**  Good afternoon, your Honor.  Avery Dial on behalf of Defendants Abbatt and Matesic.

**THE COURT:**  All right.  And who else?

**MR. KAPLAN:**  Jim Kaplan on behalf of the Defendant Gerstin.

**THE COURT:**  Good afternoon.

**MR. KAPLAN:**  Good afternoon, your Honor.

**THE COURT:**  Okay.  We're here on the defendants' motion to dismiss.  Mr. Kaplan has been before me -- I don't know about the rest of you.  You probably know that I have read everything you've submitted.  I've read all the cases you cited and a bunch you failed to cite.  And I'm prepared to rule unless there are any arguments that were, for whatever reason, not included in your papers that you'd like to add here today.

Mr. Dial?

**MR. DIAL:**  Judge, there are arguments that were included in the papers, but I do have some slides that I would

4

1   like to present to the Court as just a matter of emphasis, if

2   you would allow me to share my screen.

3           **THE COURT:**  Go ahead.

4           **MR. DIAL:**  Thank you, your Honor.

5           *(Pause)*

6           **MR. DIAL:**  Okay.  Do you guys see the slide that says

7   "Points of Emphasis Regarding the Letter," your Honor?

8           **THE COURT:**  I can see it.

9           **MR. DIAL:**  Okay.  So, the -- despite all of the

10  detailed arguments that we've made, that we noted that you've

11  read in detail, I want to draw this back to a basic premise.

12  The basic premise is that the letter, itself, is simply not

13  defamatory and that that *Dun & Bradstreet vs. Miller* case,

14  which was cited by the plaintiff, says the words that clearly

15  are not defamatory cannot have their natural meaning changed by

16  innuendo.  So, just in summary form, some points regarding this

17  letter.

18          **THE COURT REPORTER:**  Mr. Dial, could you get closer to

19  your microphone, please?

20          **MR. DIAL:**  I'm sorry, can you hear me now?

21          **THE COURT REPORTER:**  I can hear you, but it's a little

22  bit distorted.

23          **MR. DIAL:**  I apologize.  I can actually switch from

24  the headphones to the speaker.  Hold on.

25          *(Pause)*

1          **MR. DIAL:**  Is this better?

2          **THE COURT REPORTER:**  It sounds about the same to me.

3          **MR. DIAL:**  What about now?

4          **THE COURT REPORTER:**  It's the same.  It's the same.

5          **MR. DIAL:**  Well, can you hear me now?

6          **THE COURT REPORTER:**  Yes.

7          **MR. DIAL:**  Okay.

8          Okay.  So the points of emphasis regarding this

9     letter.  Okay.  No false statements.  It definitely requires

10    extrinsic factors to prove that this letter is referencing the

11    plaintiff.

12          **THE COURT:**  Hold on.  Hold on.  He alleges that some

13    of the statements were false and he specifically describes the

14    ones that he says were false, right?

15          **MR. DIAL:**  Judge, the fact that there's a differing

16    opinion on the progress of the construction project or the

17    interpretation there is not necessarily defamatory.  It's a

18    statement of --

19          **THE COURT:**  We're here on a motion to dismiss.  If

20    this were a bench trial, then you might be able to convince me

21    that your side has the better side of the argument.  But we're

22    not at a trial, we're not at summary judgment; we are on a

23    motion to dismiss.  We have to take all of the allegations as

24    true unless they're contradicted by something that I'm allowed

25    to consider within the four corners of the complaint or a

1    document attached to the complaint, and he's saying that some

2    of these statements in here were false.

3          For example, he says that where it says "associated

4    professionals with incorrect statements and facts," he's saying

5    that his statements were not incorrect and that his facts were

6    not incorrect.  Since those other statements and facts are

7    outside of our record, I have to just assume that he's telling

8    the truth about that.  That's what a motion to dismiss is all

9    about.

10          So, point number one of emphasis we can reject off the

11    bat.

12          Let's go to point number two.

13          **MR. DIAL:**  Okay.  Requires extrinsic factors to prove

14    that the letter is referencing the plaintiff.

15          **THE COURT:**  All, all defamatory statements require an

16    extrinsic factor.  Right?  So if I were to say to a group of

17    people at my Shabbat dinner this Friday night that a man named

18    Avery Dial said something that was untrue, no one at my Shabbat

19    dinner would have any idea who you are and they'd need an

20    extrinsic fact knowing you to be able to tie the defamation to

21    you.

22          If I were to say the tallest person in our condo

23    association is a liar and a criminal, and there are ten people

24    in the condo association, all nine may well know that I'm

25    talking about the tallest person, whoever he is -- let's call

```
 1  him "John Smith" -- but in order to understand that, they need
 2  to have an extrinsic fact.  They need to have seen Mr. Smith
 3  and have adjudged him to be the tallest of the ten.  So, all
 4  defamatory statements requirement an extrinsic factor, so we
 5  can reject number two.
 6          What's number three?
 7          MR. DIAL:  Well, there's a reason why number two is
 8  important, is in the context of defamation per se, which --
 9          THE COURT:  I understand the point.
10          MR. DIAL:  -- where the statement -- sorry, your
11  Honor.
12          THE COURT:  Let's move on to number three.
13          MR. DIAL:  Okay.  It doesn't make an allegation or
14  implied the plaintiff committed the crime or violated state or
15  federal or computer criminal hacking offenses.  It just simply
16  said, he obtained these email addresses, we don't know how he
17  obtained them, we didn't give them to him.
18          I think it's a stretch to say that the letter accuses
19  him of hacking.  And it's also a stretch to say that -- even a
20  bigger stretch to say that it accuses him of specific violation
21  of specific Florida and federal statutes regarding hacking.
22  That requires the stacking of inferences.  And drawing that
23  conclusion, based on this letter, is just not appropriate on
24  the face of the letter.
25          THE COURT:  Is the third point relating to the
```

1   definition of defamation per se as including:  One, a charge

2   that the person has committed an infamous crime; two, that

3   tends to subject the person to hatred, distrust, ridicule

4   contempt, or disgrace; or, three, that tends to injure one in

5   his trade or profession?  Is that what number three is geared

6   towards?

7            **MR. DIAL:**  Correct, your Honor.

8            **THE COURT:**  Right.  But, see, this is another fatal

9   flaw in your motion.  You talk a lot about how there was no

10  allegation that he committed a crime -- and that may or may not

11  be true.  Fortunately, we don't need to get there, because you

12  make no argument about the second factor, which is that it

13  tends to subject one to hatred, distrust, ridicule, contempt,

14  or disgrace.  You never even mention that factor and, as a

15  result, have waived any argument -- at least for the purposes

16  of the motion to dismiss -- that that factor doesn't apply

17  here.

18           So, I could take number three and grant you that.  I'm

19  not saying it's right.  One day we'll have to decide that

20  question.  Although hopefully you all will settle this case

21  before then, long before then.  But it's kind of neither here

22  nor there, is what I'm saying.

23           **MR. DIAL:**  Thank you, your Honor.

24           But in a per se context, if we have a series of

25  truthful statements:  One, that the association doesn't know

1  how the email addresses were obtained; and, two, that the email

2  addresses were published in the CC line on this email --

3      **THE COURT:**  Let me ask you a question.  Let me ask you

4  a question.  I know you're the lawyer here, so you got to say

5  the things that your client wants you to say.

6      When you look at that letter, you're telling me

7  there's no connection between the "we don't know how these

8  emails were revealed, we didn't do it, this disgruntled owner

9  somehow has them, this is a serious security breach and you

10 should go and get your passwords changed right away," you're

11 telling me that it's not a fair inference at all that the one,

12 the disgruntled owner who has the information, engaged or had

13 someone engage in the procurement of that information, such

14 that the association now thinks it's a dangerous enough

15 situation that it wants everyone to change their passwords?

16 You're telling me you don't think that's a fair inference, a

17 connection at all.

18      **MR. DIAL:**  No, your Honor.

19      **THE COURT:**  Okay.  How important -- how many more of

20 these pages are we going to have to go through?

21      **MR. DIAL:**  Well, Judge, there was -- I think there

22 were two more slides.  But we can, we can forego those and I

23 can allow Mr. Kaplan to address the Court for his client's

24 specific issues.

25      **THE COURT:**  Mr. Kaplan?

```
1          MR. KAPLAN:  Your Honor, if the screen share could be

2     taken down.  I don't know if it's --

3          MR. DIAL:  I'm working on that.  Hold on one second.

4          MR. KAPLAN:  Thanks, Avery.

5          THE COURT:  That's a very nice view.  Where is that?

6          MR. KAPLAN:  It looks like the Keys --

7          MR. DIAL:  Is that my --

8          MR. KAPLAN:  -- screen saver.

9          MR. DIAL:  Oh, gotcha.  That's just one of the stock

10     screen savers.

11          MR. KAPLAN:  Oh.  Thank you, your Honor.  I'll be very

12     direct.

13          My client's found some, a different position -- and

14     that's Candyce Abbatt -- and those are the remarks that I want

15     to prepare and limit the poor text.

16          To begin, this complaint, regardless of the view one

17     takes on elements or the inferences, this complaint stands to

18     be dismissed because it is a classic shotgun pleading.

19          THE COURT:  I agree with you.  And it's going to be

20     dismissed.  You need to say no further on that ground.

21          MR. KAPLAN:  Thank you, your Honor.

22          Then my final point is that, in view of every one's

23     acknowledgment at one point or another that my client's a

24     practicing attorney who is consulted by his clients, if the

25     corporate doctrine bars any claim for conspiracy because there
```

1   has been no allegation, no allegation of any special interest

2   other than delivering legal services.  And for the purposes of

3   the argument, it doesn't matter whether the board authorized or

4   didn't, whether Gerstin represented the entire board or only

5   Candyce Abbatt, he was only a lawyer representing a client, he

6   doesn't have a dog in the fight.  And that applies to the

7   conspiracy count only and that's why that count should be

8   dismissed.

9          **THE COURT:**  And I'll address that in a moment.  But we

10  know that that's not correct.  A lawyer can always conspire

11  with his or her client.  And many lawyers, unfortunately, have

12  gone to prison for doing so.  And we know that, that's true in

13  the criminal context and the civil context.  And I'll explain

14  my view of why the intracorporate doctrine doesn't apply to

15  your client in a moment.

16         Anything else, Mr. Kaplan?

17         **MR. KAPLAN:**  No, your Honor.

18         **THE COURT:**  Anything else from the plaintiff's

19  attorney?

20         **MR. LICUL:**  No, your Honor.  Just on the issue of the

21  shotgun complaint, to the extent the Court is concerned with

22  the incorporation language, that is certainly something we can

23  easily amend.

24         **THE COURT:**  Absolutely.  And you're going to get a

25  chance to amend.

1     **MR. LICUL:** Yes.  That's all, your Honor.  That's all

2   we have to say.

3     **THE COURT:** All right.

4     Okay.  This is a defamation case between -- you guys

5   should get comfy, because this one's a long one -- this is a

6   defamation case between members of a condominium association.

7     Mr. Block, a federal judge, sitting in the Eastern

8   District of New York, is member of the Tower One Condominium

9   association in Fort Lauderdale.

10    On December 11, 2020, Mr. Block sent a letter to the

11  property manager of Tower One raising concerns about a

12  construction project that, according to Block, was delayed and

13  had gone over budget.  That's complaint paragraphs 22.  It's

14  also Block's letter, ECF Number 24-1.

15    The property manager had agreed to circulate the

16  letter to all Tower One unit owners.  That's amended complaint,

17  paragraphs 23 to 24.

18    When the property manager did not do this, Block

19  circulated his letter to a handful of unit owners whose email

20  addresses he had in his possession.  That's complaint 29.

21    There are three defendants in the case:  Matesic, a

22  member of the association's board of directors; Abbatt, another

23  member of the association's board of directors; and Gerstin,

24  the association's lawyer, complaint at 2 to 3.

25    Block alleges that the defendants were responsible for

1    mismanaging the construction project and that they "resorted to

2    defamation" to "discredit the author" -- "to discredit the

3    author who had thoroughly criticized and embarrassed their

4    leadership."  That's amended complaint paragraphs 2 and 47.

5            To that end, on December 18, 2020, after drafting

6    together a response to Block's letter, the defendants sent an

7    email to all Tower One unit owners.  That's complaint

8    paragraphs 31 and 33.

9            I won't read the email, because you all know it very

10   well.  But the email -- excuse me -- the letter is at ECF

11   Number 24-2.

12           In its complaint, Block maintains that several

13   statements in the defendants' letter were false and

14   intentionally so.

15           First, he says the letter falsely suggests that he

16   unlawfully or wrongfully hacked the unit owners' devices to

17   obtain their emails.  That's complaint 38 to 39.

18           Second, he avers that the letter falsely accused him

19   of "using incorrect statements and facts to disparage those

20   involved in the construction project."  That's complaint 44.

21           Third, he alleges that the email falsely states that

22   he "rebuffed" invitations to meet and that he "never reviewed"

23   information that was provided to him.  That's at complaint

24   paragraph 44.

25           And, fourth, he explains that the email was signed

1    "sincerely, Board of Directors."

2             *(Dog barked)*

3        **THE COURT:**  Someone's got their dog chirping in the

4    background.

5             That's complaint 41.

6             Block brings four counts against the three defendants:

7    Defamation per se, defamation per quod, defamation by

8    implication, and conspiracy to defame.

9             The defendants have now moved to dismiss all counts

10   raising nine arguments.  I'll address each argument in turn.

11            Argument number one:  Director immunity.  The

12   defendants' first argument is that directors of condo

13   associations, like Matesic and Abbatt, are immune from personal

14   liability under Florida law.  I will deny this aspect of the

15   motion and I'll explain why.

16            First the statute.  Florida's personal immunity law,

17   Florida Statutes Section 617.0834 says, and I quote, "An

18   officer or director of a condo association is not personally

19   liable for monetary damages to any person for any statement,

20   vote, decision, or failure to take an action regarding

21   organizational management or policy by an officer or director

22   unless:  A, the officer or director breached or failed to

23   perform his or her duties as an officer or director; and, B,

24   the officer's or director's breach of, or failure to perform

25   his or her duties constitutes recklessness or an act or

1    omission that was committed in bad faith or with malicious
2    purpose or in a manner exhibiting wanton and willful disregard
3    of human rights safety and property.  The statute just doesn't
4    apply here.
5         Block makes three arguments for why the statute
6    doesn't immunize the directors from suit in this case.
7         First he says that the directors did not make any
8    statements regarding organizational, management, or policy.
9         Second he argues the directors were not acting in
10   their official capacities when they made the statements that he
11   says are defamatory.
12        Third, he contends that this case falls within the
13   exception delineated in 617.0834 for recklessness or bad faith
14   or malicious purpose.
15        I won't address the first two arguments, which I will
16   tell you, as a hint to everyone, I think are much closer calls.
17   Because I think Block plainly wins on the third.
18        As I said, directors of a condominium association,
19   like Matesic and Abbatt, are immune from liability under the
20   statute, unless:  One, the director breached his or her duties
21   as an officer and director; and, two, that breach was committed
22   recklessly, in bad faith, or with malicious purpose.
23        As to the first prong, the defendants never even argue
24   in their motion to dismiss that Block fails to meet this
25   element, that is, the element that they breached their duties

1    as officers or directors of the board.  The defendants raise

2    this argument only for the first time in their reply.  And, of

3    course, as we know, arguments raised only for the first time in

4    reply are deemed waived.  See *In Re: Egidi*, E-G-I-D-I,

5    571 F.3d 1156, at 1163, Eleventh Circuit, 2009, "Arguments not

6    properly presented in a party's initial brief or raised for the

7    first time in the reply brief are deemed waived."

8            Of course the defendants will be allowed to reraise

9    this argument, perhaps in a subsequent motion to dismiss or at

10   summary judgment, and they can address at that time whether a

11   defamation claim qualifies as a "breach of one's duties as an

12   officer or director."  But for now, they waived that argument

13   and so I'll move on to the second prong of the exception.

14           On the second prong, Block plainly alleged

15   recklessness, bad faith, and malicious purpose and it's hard to

16   see any argument that he didn't.  For example, he alleges in

17   paragraph three of his complaint that the defendants "set out

18   to destroy plaintiff's reputation by falsely accusing him of

19   computer hacking."

20           He alleges in paragraph five that the defendants sent

21   out their letter "without any regard for whether its contents

22   were true or not true."

23           Third, he says in paragraph 33 that the letter made

24   "reckless statements defaming the plaintiff."

25           He says in paragraph 34 that "although the defendants

1    had no basis to believe that plaintiff had accessed any unit

2    owner's email addresses in any way that was unlawful or

3    improper, that did not stop defendants from accusing plaintiff

4    of unlawfully and wrongfully accessing the unit owner's email

5    addresses."

6         He says in paragraph 43 that the defendants "knew that

7    the plaintiff had no need to resort to illegal or wrongful

8    methods to obtain the unit owners' email addresses and that

9    they made no attempt to discover how the plaintiff obtained

10   these email addresses, which they could have easily done with

11   minimal effort."

12        He alleges in paragraph 47 that the defendants "had a

13   clear interest in discrediting the author who had thoroughly

14   criticized and embarrassed their leadership and resorted to

15   defamation to do so."

16        He alleges in paragraph 49 that the defendants "have

17   sought to harm plaintiff's reputation, all of which is further

18   indication of their malicious conduct."

19        Time and again, in other words, Block alleged that the

20   defendants were reckless in accusing him of computer hacking,

21   that they attempted to discredit him in bad faith, and that

22   they maliciously attacked him after Block, and because Block

23   criticized and embarrassed their leadership.  That's more than

24   enough to satisfy the second prong of the exception.  For all

25   those reasons, the motion to dismiss argument one is denied.

```
1        Argument 2 -- Mr. Kaplan's favorite -- the
2   intracorporate conspiracy doctrine.  The defendants' second
3   arguments is that all claims against Gerstin, the association's
4   lawyer, must be dismissed under the intracorporate conspiracy
5   doctrine.
6        Let's start with the doctrine.  "The intracorporate
7   conspiracy doctrine holds that acts of corporate agents are
8   attributed to the corporation, itself, thereby negating the
9   multiplicity of actors necessary for the formation of a
10   conspiracy."  That's from *McAndrew vs. Lockheed Martin*
11   *Corporation*, 206 F.3d 1031, at 1035, an Eleventh Circuit case
12   en banc from 2000.
13        The intracorporate conspiracy doctrine, strictly
14   speaking, is not applicable where the contention is that an
15   attorney cannot commit conspiracy with his or her client.
16   That's from *Farese*, F-A-R-E-S-E, *vs. Scherer*, S-C-H-E-R-E-R,
17   342 F.3d 1223, 1231, footnote 8, an Eleventh Circuit case from
18   2003.  "Because the plaintiff alleges a conspiracy between
19   Dude" -- and just as an aside, I love that case -- "because the
20   plaintiff alleges a conspiracy between Dude and his attorneys,
21   this appeal does not implicate the intracorporate conspiracy
22   doctrine."
23        Nonetheless, the Eleventh Circuit has applied
24   something akin to the intracorporate conspiracy doctrine in the
25   context of attorney-client conspiracies.  Specifically the
```

1    Court has held that "as long as an attorney's conduct falls

2    within the scope of his representation, the attorney is immune

3    from allegations of... conspiratorial conduct."  And that again

4    is from *Farese*, at page 1231, Note 8.

5            Attorneys will in general be immune from a conspiracy

6    claim where "the actions and advocacy of the attorneys appear

7    to have been for the sole benefit of the client rather than for

8    their personal benefit."  Again, that's from footnote eight of

9    *Farese*.

10           At the same time, the Eleventh Circuit has counseled

11   that "it is axiomatic that if the challenged conduct occurs

12   outside the scope of representation, no reason for immunity

13   exists and the attorney and the client, as individuals, can

14   form a conspiracy."  And that's from *Farese*, Footnote 8,

15   quoting *Hefferman*, H-E-F-F-E-R-M-A-N *v. Hunter*, 189 F.3d 405,

16   Third Circuit, 1999.

17           So, where does that all leave us?  Applying those

18   principles here, I think Gerstin's no conspiracy argument is

19   unpersuasive, at least at the motion to dismiss phase.

20           First, as an initial matter, Gerstin attempts to

21   dismiss all counts on the basis of this doctrine.  But every

22   case we've identified -- and every case Gerstin cites --

23   involves the dismissal only of conspiracy claims on the basis

24   that a lawyer cannot be held liable for conspiring with his

25   client.  So, as an initial matter, Gerstin's attempt to dismiss

1   the first three counts, one, two, and three -- none of which

2   are conspiracy counts -- must fail.

3        Second, an attorney escapes liability for conspiracy

4   under the doctrine only where the attorney acts "within the

5   scope of his representation" and where the lawyer is acting

6   "for the sole benefit of his client rather than for his own

7   personal benefit."

8        But, here, Block has alleged the following:  "Gerstin,

9   for his part is an attorney at a law firm that sometimes

10   advises the association.

11        Gerstin, however, is not an employee of the

12   association and was not, and could not have been, acting in his

13   capacity as the association's attorney in drafting and

14   approving the letter -- knowing that it would be sent to all

15   the Tower One unit owners -- because the entire process was

16   unauthorized by the board.  Paragraph 32 of the complaint,

17   emphasis added in my intonation.

18        Thus, viewed in the light most favorable to Block,

19   Gerstin wasn't acting for his client, the association, when he

20   helped draft the letter, because he wasn't working on his

21   clients' behalf when he drafted the letter.  Gerstin's only

22   argument to the contrary appears in a one-sentence accusation

23   in the motion to dismiss that Block "does not allege that

24   Defendant Gerstin acted outside the scope of his employment" --

25   that's page six of the motion -- but that's exactly what Block

1   has alleged:  That Gerstin's work was "unauthorized" outside of

2   his "capacity" as the association's lawyer.

3          Of course, it may be, Mr. Kaplan, that none of this is

4   true.  Maybe Gerstin was authorized to assist these individual

5   directors in this case, and maybe he acting only on behalf of

6   his lawyer, but at this early phase of the case, of course, we

7   have to take Block's allegations as true.  Doing so, the

8   defendants' argument as to attorney-client conspiracies is

9   denied.

10          Argument 3:  Linking the remarks to the defendants.

11   The defendants' third argument is that Block failed to "link a

12   particular remark to a particular defendant, and specifically

13   identify the persons to whom the allegedly defamatory comments

14   were made, as well as provide a time frame when such statements

15   were made."  Motion to dismiss, pages 6 and 7.

16          I find this argument equally unpersuasive because

17   Block plainly did all of those things.  First, as I already

18   pointed out, Block has specifically identified several

19   defamatory remarks -- including the hacking accusation -- in

20   his complaint at paragraphs 38 to 39, 41 and 44.  He also

21   linked those remarks to the defendants in our case:  Matesic,

22   Abbatt, and Gerstin.  To that end, Block alleged that the

23   defamatory letter was "coauthored in its entirety and in all

24   respects by the defendants and approved by all of them for

25   publication."  That's paragraphs 38 to 39.  He says it again in

1   41 and 44.  Because Block alleges that the defendants wrote

2   this letter together, Block didn't need to do anything else to

3   link the statements to the speakers.

4          Second, Block did specifically identify those people

5   who received the defamatory comments.  He says "All the Tower

6   One unit owners" received them.  That's a discrete subset of

7   the general population.  That's in amended complaint, paragraph

8   31.

9          To the extent the defendants think Block should have

10  individually named each and every unit owner, they certainly

11  provide no support for that proposition, and, in any event, I

12  find that requirement needlessly burdensome and implausible.

13         Third, Block does provide a precise time frame for

14  when the statements were made.  In fact, Block starts from the

15  beginning, alleging that Matesic and Abbatt first sent a draft

16  of the letter to Gerstin on December 14, 2020, and that they

17  published the letter to the unit owners on December 18, 2020,

18  by "sending an email blast" to all unit owners.  That's in

19  paragraphs 30 and 33.  I don't know how much more precise we

20  want him to be.  I suppose he could have told us the eastern

21  standard time.

22         So, I'll deny this third argument of the motion to

23  dismiss.

24         The fourth argument -- and this one's a winner -- for

25  the defense lawyers, get perked up for this one -- shotgun

```
1   pleading.  The defendants' fourth argument is that Block's
2   complaint is a shotgun pleading because:  One, it lumps
3   together all factual and legal conclusions against the
4   defendants; and, two, improperly adopts the allegations of all
5   preceding counts into each successive count causing the last
6   count to be a combination of the entire complaint."  I agree
7   with the second proposition.  I don't agree with the first.
8        As the Eleventh Circuit has explained, a complaint is
9   a shotgun pleading if it:  One, contains multiple counts where
10  each count adopts the allegations of all preceding counts; two,
11  is replete with conclusory, vague, and immaterial facts not
12  obviously connected to any particular cause of action; three,
13  fails to separate into a different count each cause of action;
14  or, four, asserts multiple claims against multiple defendants
15  without specifying which defendant is responsible for which
16  act.
17       That's from Embree, E-M-B-R-E-E, vs. Windham Worldwide
18  Corporation, 779 F. Appx., 658, at 662, Eleventh Circuit, 2019,
19  citing Weiland, W-E-I-L-A-N-D, v. Palm Beach County Sheriff's
20  Office, 792 F.3d 1313, 1322 to '23, Eleventh Circuit, 2015.
21       "The unifying characteristic of all shotgun pleadings
22  is that they fail to give the defendants adequate notice of the
23  claims against them and the grounds upon which each claim
24  rests, and that they do not adequately specify which
25  allegations of fact are intended to support which claims for
```

1    relief."  That's from *Frank vs. Schulson*, S-C-H-U-L-S-O-N,

2    782 F.Appx. 917, 919, Eleventh Circuit, 2019.  Let's apply that

3    doctrine here.

4         First, I don't agree that the complaint lumps all the

5    defendants together.  Block carefully describes what each

6    defendant did and what each defendant's role was.  See For

7    example, amended complaint, paragraphs 30 to 33, where he

8    describes the role each defendant played in crafting and

9    approving and sending the letter.

10        Of course, in some cases, Block talks about what the

11   defendants did together.  But there's nothing wrong with

12   describing what they did together as a group.  See, for

13   example, *Kyle K vs. Chapman*, 208 F.3d 940, at 944, an Eleventh

14   Circuit case from 2000.  The fact that defendant -- "the fact

15   that defendants are accused collectively does not render the

16   complaint deficient; the complaint can be fairly read to aver

17   that all defendants are responsible for the alleged conduct."

18        If defendants one, two, and three went into the bank

19   to commit a robbery, I don't have to in my complaint 50 times

20   name them as defendants one, two, and three.  I can just say

21   the defendants went into the bank and did X, Y and Z.

22        The second argument, though, is a winner.  The

23   defendants are right when they say that the complaint contains

24   multiple counts where each count adopts the allegations of all

25   preceding counts.  See, for example, amended complaint,

1    paragraph 50:  "Plaintiff hereby repeats and re-alleges each

2    and every allegation in the preceding paragraphs as if set

3    forth fully herein."

4           Same thing happens on paragraph 59, 64 and 69.  The

5    complaint is therefore straightforwardly a shotgun pleading

6    under this Circuit's precedent.  See, for example, *Phillips vs.*

7    *Cook, Inc.*, 2021 WL 3209860, at page one, a Middle District of

8    Florida case from July 29th, 2021, dismissing a complaint

9    because it "Rolled all preceding allegations into each count".

10          So I'll dismiss the complaint as a shotgun pleading

11   without prejudice and with leave to amend.

12          Argument 5:  Defamation per se.  The defendants' fifth

13   contention is that for various reasons, Block fails to state a

14   defamation per se claim.  In particular, the defendants argue:

15   One, Block's defamation claim relies only on innuendo; two, the

16   letter does not charge Block with a federal crime or injure him

17   in his profession; and, three, Block failed to plead actual

18   malice.  All three arguments are unavailing, at least at this

19   stage.

20          To state a claim of defamation, the plaintiff must

21   allege, that:  One, the defendant published a false statement;

22   two, about the plaintiff; three, to a third-party; and, four,

23   that the falsity of the statement caused injury to the

24   plaintiff."  That's from *Valencia vs. Citibank International,*

25   728 So.2d 330, at page 330, Florida Third DCA, 1999.

1      A statement rises to the level of being defamatory

2  per se "If, when considered alone and without innuendo, it,

3  one, charges that a person has committed an infamous crime;

4  two, tends to subject one to hatred, distrust, ridicule,

5  contempt, or disgrace; or, three, tends to injure one in his

6  trade or profession.  That's from *Alan*, A-L-A-N, *vs. Wells*

7  *Fargo*, 604 F.Appx. 863, at 865, Eleventh Circuit, 2015.

8      "The significance of the classification of a

9  communication as actionable per se lies in the fact that its

10  victim need not plead or prove malice... or special damage

11  because malice and the occurrence of damage are both presumed

12  from the nature of the defamation."  *Wolfson v. Kirk*,

13  273 So.2d 774, at 777, Florida Fourth DCA, 1973.

14      In construing the statement, "the language used will

15  be given neither a mild nor a harsh construction, but the words

16  will be construed in that sense in which they may be understood

17  and in which they appear to have been used and according to the

18  ideas which they were adopted to convey to those who hear them,

19  or to whom they are addressed."  That's *from Adams vs. News J*

20  *Corp.*, 84 So.2d 549, at 551, Florida Supreme Court case from

21  1955.

22      In determining whether a statement is defamatory

23  per se, a Court may not rely on innuendo.  This means that the

24  Court "may consider only the four corners of the publication"

25  and should construe the statement "As the common mind would

1    naturally understand it."  That's from *Ortega Trujillo v. Banco*

2    *Cent. Del Ecuador*, 17 F.Supp.2d 1334, at 1339, a Southern

3    District of Florida case from 1998 by Judge James Lawrence

4    King, my favorite.  "Unless the pleader's deduction is

5    support" -- Fran, let's send Judge King a copy of this

6    transcript, please -- "unless the pleader's deduction is

7    supported by the language of the publication, the per se

8    quality of the publication is not legally disclosed."

9    *Cooper v. Miami Herald Publishing Company*, 31 So. 2d 382, at

10   384, Florida Supreme Court, 1947.

11        Argument 1:  Innuendo.  The defendants argue that

12   their letter "cannot pertain to Block without innuendo" because

13   the letter "does not even mention Block by name."  That's from

14   the motion to dismiss, page 11.

15        But Florida courts have widely rejected this very

16   proposition -- namely, that a publication must designate a

17   person by name in order to be defamatory per se.  Those courts

18   have held that "it is not essential that the person defamed be

19   named in the publication if... the publication contains...

20   reference to facts and circumstances from which others may

21   understand that he is the person referred to, or if he is

22   pointed out by extraneous circumstances so that persons knowing

23   him can and do understand that he is the person referred to;

24   and it is sufficient if those who know the plaintiff can make

25   out that he is the person meant."  *Harwood v. Bush*,

1    223 So.2d 359, at 362, Florida Fourth DCA, 1969.

2         In our case, although the letter did not call Block

3    out by name, it did reference "a disgruntled owner" who

4    "recently" sent an "email blast disparaging the construction

5    project."  That's from the defendants' letter, ECF Number 24-2.

6         Block alleged that he was the only person who had

7    recently sent emails critical of the construction project.

8    That's amended complaint 36.

9         It's therefor clear that the recipients of that

10   letter -- without receiving any additional external

11   information -- could reasonably have deduced based on the

12   language of the letter itself, that the defendants were

13   referring to the only other person who had sent such emails and

14   that was, he alleges, Block.

15        Again, none of those things may be true, I have no

16   idea.  Thankfully, I don't live in this building.  But at the

17   motion to dismiss stage, I've got to accept those allegations

18   as true.

19        So, in fact, Block has alleged that this is exactly

20   how several recipients of the letter understood the letter.

21   And that's at amended complaint, paragraphs 36 and 40, when he

22   says that a bunch of his fellow condo owners came over to him

23   and couldn't believe that they had singled him out as part of

24   that email blast, which suggests that those people in their

25   everyday understanding of the situation construed the letter as

1   referring directly and only to Mr. Block.

2          In similar circumstances, courts have consistently

3   found a plausible claim of defamation per se.  For example, in

4   *Horsley*, H-O-R-S-L-E-Y, *v. Feldt,* F-E-L-D-T, 304 F.3d 1125, at

5   1137, Eleventh Circuit, 2002, the Eleventh Circuit found that

6   although the publications in that case "did not explicitly name

7   the plaintiff, that does not stop them from being reasonably

8   susceptible of a defamatory reading."  There the Court noted

9   that the publications "specifically mentioned" the plaintiff's

10  website, thereby making his identity "readily ascertainable."

11  Similarly in our case, the letter made Block "readily

12  ascertainable," because he was the only one to send the kind of

13  email described in the letter.

14         In *Harwood vs. Bush* -- this is also one of my favorite

15  cases, by the way -- 223 So.2d 359, at 362, a Florida Fourth

16  DCA case from 1969, the Court likewise rejected the argument

17  that there could be no defamation per se because the article --

18  which told an allegorical tale of someone named "Harwood the

19  Rat" -- failed to name the plaintiff specifically.  The Court

20  explained:  "Although the article fails to identify the

21  plaintiff directly as 'Harwood the Rat,' the plaintiff, whose

22  name was Harwood, has sufficiently alleged that the article was

23  meant to refer to him and that many persons reading the article

24  so understood it."  As I've explained, the same is true here.

25         Similarly, in *Wolfson vs. Kirk*, which I've cited

1  already, 273 So.2d 774, at 779, a Fourth DCA case from 1973,

2  the Court again rejected the contention that "the comment did

3  not sufficiently identify the plaintiff as its subject,"

4  recognizing that the "defamed person need not be named in the

5  defamatory words if the communication as a whole contains

6  sufficient facts or references from which the injured person

7  may be determined by the persons receiving the communication."

8         In our case, the letter contained sufficient facts

9  from which those receiving the letter -- the unit owners --

10  could, and apparently did, easily deduced that the letter

11  referred only to one man and that man was Block.

12         Finally, in *O'Neal*, O-'-N-E-A-L, *vs. Tribune Company,*

13  176 So.2d 535, at 547 to '48, a Fla. 2d DCA case from 1965, the

14  second DCA affirmed a finding of defamation per se where an

15  article accused a nursery owner of beating children.  The

16  article did not name the owner or even the owner's school, but

17  it did name certain children at the school and "several

18  witnesses received no information prior to reading one or both

19  of the news stories, some of whom were patrons of the nursery,

20  knew from the names of the children and their parents that the

21  articles concerned Mrs. O'Neal and her nursery."  A similar

22  thing happened here.  Those who received the defendants' letter

23  without receiving any additional information knew that the

24  letter referred to Block.

25         I'll add three final thoughts about this issue.  First

1    of all, I'd say it's true that interpreting the word

2    "disgruntled owner" to mean Block did require some prior

3    external knowledge -- Mr. Dial, we've talked about this

4    already.  But that's true of all the other cases we've just

5    discussed.  Every single one of them required knowing who the

6    website owner was or who the nursery owner was or who the

7    children were in that nursery or who their parents were.  What

8    seems to matter isn't whether there's an external fact,

9    according to these decisions, it's that the recipient didn't

10   require some further information -- beyond what they already

11   knew externally -- to divine the defamatory meaning.  That's

12   true in our case.  The witnesses already knew about the

13   "disgruntled owner" who had sent these angry missives.  When

14   they got the letter, they didn't need to do any further

15   investigation to find out who that person was, because they

16   already knew it.

17          Second, I'll also note that it makes little sense to

18   say that using a name, in particular, is some sort of magic

19   potion to a defamation claim.  As an initial matter, even using

20   a name requires readers to rely on context and outside

21   knowledge to know that the publication is referring to whoever

22   the particular named subject happens to be.  It's not like a

23   person's name is a unique one-to-one genetic marker in our

24   society.  In fact, in some cases, a description like the one

25   contained in this letter may be more precise than the name.

1         For instance, imagine that there were three guys named
2  Frederic Block living in that building at the time.  In that
3  case, the defendants' description in their letter of Frederic
4  Block as being the person they were referring to would only
5  give you a one out of three chance of divining who they were
6  talking about; whereas the actual description that was given of
7  the "disgruntled owner" who was the last person to email about
8  this specific subject matter would be much more precise than
9  using a name and thus far more defamatory.
10         Finally, the defendants, instead of specifically
11 pointing to a "disgruntled owner" who recently had sent emails,
12 could have simply said, "We have reason to believe that your
13 emails have been compromised.  Please check your computer's
14 security and privacy settings."  In that case, they have a much
15 better defense.  But here they clearly and reasonably described
16 Block and, in doing so, have made it possible to presume malice
17 and damages.
18         So, I'll reject the defendants' argument that Block
19 has no claim simply because the letter doesn't identify him by
20 name.
21         The second argument has to do with federal crime or
22 injury to Block's profession -- Mr. Dial raised this point
23 before.  We all know where this is going.  The defendants' next
24 argument is that "the letter does not charge Block with an
25 infamous crime and is not incompatible with his profession as a

1    federal judge."  Thank God for that.  Motion to dismiss at
2    paragraphs -- as pages 12 to 14.
3            As I've said, a statement is defamatory per se when
4    considered alone and without innuendo it:  One, charges that
5    person has committed an infamous crime; two, tends to subject
6    one to hatred, distrust, ridicule, contempt, or disgrace; or,
7    three, tends to injure one in his trade or profession.  That's
8    from *Alan vs. Wells Fargo*.
9            On top of that, Florida courts have held "that where a
10   communication is ambiguous and reasonably susceptible of a
11   defamatory meaning, it is for the trier of fact to decide
12   whether the communication was understood in the defamatory
13   sense."  That's from *Perry vs. Cosgrove*, 464 So.2d 664, at 666,
14   Fla. 2d DCA, 1985.
15           As a preliminary matter, it appears that the
16   defendants only argued that Block can't meet the first and
17   third grounds for infamous crime or injuries to one's trade or
18   profession.  Since they didn't address the second prong -- that
19   their letter subjected Block to hatred, distrust, ridicule,
20   contempt, or disgrace -- they've waived any argument that Block
21   failed to meet that prong, and so the defendants' motion on
22   this argument must be denied on this basis alone.  I'll cite
23   *In re:  Egidi*, again, for that waiver proposition.
24           But even if we were to reach the merits of this claim,
25   I think Block has plausibly alleged that the letter did in fact

1    subject him at the very least to distrust.  The letter in

2    effect said that "neither the association, nor its management

3    was the source of our owners' email addresses," that "the

4    method of obtainment by the owner remains unknown" -- remember,

5    the owner is clearly Block -- and that, as a result, the

6    association "advises all members to check and consider updating

7    their computers' security and privacy settings."  That's the

8    defendants' letter, 24-2.

9         A reasonable inference from these remarks, I think, is

10    that Block, or someone at his employ, must have obtained the

11    emails through some nefarious means like hacking the unit

12    owners' computers.

13         Of course that's not the only reasonable

14    interpretation.  The defendants have pointed to a separate

15    reasonable interpretation having to do with the security

16    concerns arising only from the presence, the visible presence

17    of the email addresses in the copy folder -- in the copy line

18    of the email.

19         But that's totally beside the point.  Where a

20    statement is ambiguous and where there are multiple reasonable

21    interpretations, it's for the jury to decide, not me, whether

22    the communication had a defamatory meaning.  Again,

23    *Ford vs. Rowland*, R-O-W-L-A-N-D, 562 So.2d 731, 734, Fla. 5th

24    DCA, 1990, reversing the dismissal of a liable per se claim

25    where it was unclear whether the article referred to the

1   plaintiff or to some other person as a "hooker" and holding

2   that "if an allegedly defamatory publication is reasonably

3   susceptible of two meanings, one of which is defamatory and one

4   of which is not, it is for the trier of fact to determine the

5   meaning understood by the average reader."

6       Which brings us to the third argument the defendants

7   have made with respect to the defamation per se claim and that

8   is that Block has "failed to plead actual malice," pages 14 to

9   15 of the motion.

10      The law is clear.  As a matter of constitutional law,

11  "defamation is unprotected by the First Amendment when the

12  speaker committed the tort with actual malice." *Echols*,

13  E-C-H-O-L-S, *vs. Lawton*, 913 F.3d 1313, 1321 to '22, Eleventh

14  Circuit, 2019.

15      At the motion-to-dismiss stage, that means that the

16  plaintiff "must allege facts sufficient to give rise to a

17  reasonable inference that the false statement was made with

18  knowledge, that it was false or with reckless disregard of

19  whether it was false or not."  That's from *Michel*, M-I-C-H-E-L,

20  *vs. NYP Holdings, Inc.*, 816 F.3d 686, at 702, Eleventh Circuit,

21  2016, quoting *New York Times vs. Sullivan*.

22      Block has alleged that the defendants "knew that he

23  had communicated with many owners via email in the past,

24  including the defendants," paragraph 43; that the defendants

25  "knew that plaintiff had no need to resort to illegal or

1    wrongful methods to obtain the unit owners' email addresses,"

2    that's paragraph 43; that the defendants "had no basis to

3    believe that plaintiff had accessed any unit owners' email

4    addresses in any way that was unlawful or improper," that's

5    paragraph 34; that the defendants "resorted to defamation to

6    discredit him," that's paragraph 47; and that the defendants

7    "obviously know and simply do not care that their statements

8    concerning the plaintiff are false," that's paragraph 49.

9           On these allegations, I think Block has plausibly

10   alleged that the defendants either knew their accusations were

11   false or else that they acted with reckless disregard of

12   whether they were false or not -- all in a purposeful and

13   intentional effort to discredit and embarrass Block as he

14   alleges.  Indeed on its face, let's face it, it seems rather

15   implausible to believe that a 80-something-year-old federal

16   judge hacked into his neighbors' emails addresses for the

17   purpose of complaining about a construction project.  And while

18   it may ultimately be the case that none of Block's accusations

19   is true, it may be the case, for example, that the defendant

20   didn't know he had access to other owners' emails addresses of

21   his own social right, or that they didn't intend to discredit

22   him, or that in fact he is a hacking genius -- we have to take

23   Block's allegations as true at this early stage of the case.

24   So, for all these reasons, I will not dismiss Block's

25   defamation per se claim.

```
 1              Which brings us to argument six, the defamation per
 2    quod claim.  The defendants' sixth argument is that Block's
 3    defamation per quod claim must be dismissed because:  One,
 4    Block failed to allege special damages; two, the letter is not
 5    capable of defamatory meaning; and, three, Block cannot
 6    establish that the letter was published to a third party.
 7              I agree with the defendants that Block has failed to
 8    allege special damages, and so I'll dismiss the defamation per
 9    quod claim without prejudice on that basis.
10              In defamation per se cases, as we discussed, "the
11    injurious character of the statement is a matter of common
12    knowledge and so general damages need not be pleaded or proved,
13    and special damages need not be shown to sustain the action."
14    That's from Barry College v. Hull, 353 So.2d 575, at 578,
15    Fla. 3d DCA, 1977.
16              In defamation per quod cases, by contrast, "special
17    damages must be proved."  The same case, Barry
18    College vs. Hull, see also Commander vs.  Pedersen,
19    P-E-D-E-R-S-E-N, 156 So. 337, 340, Florida Supreme Court,
20    1934 -- I'm reaching way back for these citations -- noting
21    that for an action to be "actionable per quod, the publication
22    must result in special damage to the party complaining; special
23    damages must be alleged and proved."
24              Special damages "are actual out-of-pocket losses,
25    which must be proven by specific evidence as to the time, cause
```

1   and amount; whereas, general damages encompass the more

2   customary harms inflicted by a defamatory falsehood, such as

3   impairment of reputation and standing in the community."  That

4   *Falic*, F-A-L-I-C, *vs. Legg*, L-E-G-G, *Mason Wood Walker*,

5   347 F.Supp. 2d 1260, 1268, Southern District of Florida, 2004,

6   written by a guy I've never met, Judge Ryskamp.

7            Where does this all leave us?  In this case, the only

8   injury identified in the complaint as Block concedes is "damage

9   to his personal reputation," motion to dismiss response at 16.

10  That's just not enough for two reasons.

11           First, Florida law is fairly clear that special

12  damages require actual out-of-pocket losses, not generalized

13  allegations of reputational harm.  That's from Judge Ryskamp's

14  opinion in *Legg Mason*.  This view by Judge Ryskamp finds ample

15  support in the case law.  See, for example, *Salit*,

16  S-A-L-I-T, *vs. Ruden*, R-U-D-E-N, *McClosky, Smith, Schuster &*

17  *Russell, PA*, 742 So.2d 381, 388, Fla. 4th DCA, from 1999, "the

18  special damage rule requires the plaintiff to establish

19  pecuniary loss that has been realized or liquidated, as in the

20  case of specific loss sales."

21           *Anderson vs. Smith*, 2020 WL 10058207, page three,

22  Middle District of Florida, March 24th, 2020, "special damages,

23  that is, actual economic damage, must be proven to state a

24  claim under the defamation per quod theory."

25           *Leavitt*, L-E-A-V-I-T-T, *vs. Cole*, 291 F.Supp. 2d 1338,

1  at 1344, Middle District of Florida, 2003.  Noting that special

2  damage in the case of slander per quod requires "actual

3  economic loss."

4       *Daniels vs. HSN, Inc.*, 2020 WL 533927, at page six, a

5  Middle District of Florida case from February 3rd, 2020,

6  rejecting the claim that a plaintiff can prove special damages

7  through expert testimony, about how much it would cost to

8  repair his reputation and recognizing "that the chief

9  characteristic of special damages is a realized or liquidated

10 loss."

11      There's also support for the same proposition across

12 various treatises -- you all didn't think I could read

13 treatises -- *53 Corpus Juris Secundum Liable and Slander*,

14 Section 217.  "If the charge is not actionable per se, the

15 plaintiff must allege special damages beyond an injury to

16 reputation with particularity and general loss of reputation

17 may not be pleaded as an item of special damage."

18      And then there's *1 Stein on Personal Injury Damages

19 Treatise*, Section 5:39, Third Edition, "Special damages in

20 defamation consists of pecuniary injury sustained by the

21 plaintiff because of actions taken by third parties in response

22 to the publication of the slander.  Such special damages or

23 harm would usually consist of the plaintiff's loss of

24 customers, loss of employment, loss of a business opportunity,

25 or loss of a contractual benefit or the like."

1          Second, Block argues that despite everything I just

2    said, he actually isn't required to allege pecuniary damages

3    and that reputational harm somehow is enough.

4          For starters, Block does nothing to distinguish all

5    the cases or explain away any of the authority we just cited.

6          Furthermore, the cases he cites for his proposition --

7    that is, that he needn't show pecuniary damage -- all miss the

8    mark.

9          For example, in *Pearson*, P-E-A-R-S-O-N, *vs. Orlando*

10   *Regional Healthcare Systems*, 619 F.Supp. 2d 1260, at 1284, a

11   Middle District of Florida case from 2009, the plaintiff did

12   plead economic loss.

13         In *PharmaSpritz*, P-H-A-R-M-A-S-P-R-I-T-Z,

14   *Corporation vs. Foglia*, F-O-G-L-I-A, a 2006 case, Westlaw

15   8433432, at page two, from the Southern District of Florida,

16   Judge Middlebrooks -- a very smart judge -- the Court gave

17   little attention to the special damages issue and, in any

18   event, in that case the plaintiff was a corporation that had

19   alleged harm to its "business reputation," which rendered

20   economic losses plausible.

21         And in *Dibble*, D-I-B-B-L-E, *vs. Avrich*, A-V-R-I-C-H,

22   2014 WL 6632629, page three, a Southern District of Florida

23   case by Judge Bloom, November 21, 2014, Judge Bloom simply

24   found that the Court had subject-matter jurisdiction over the

25   case because the plaintiff had adequately pleaded the

1    amount-in-controversy requirement.  It never discussed and

2    never held that the plaintiff actually stated a plausible claim

3    on its special damages claim.

4          And all of the other cases Block cites discuss actual

5    damages, not special damages, and so are totally irrelevant

6    here.  That includes *Santarsiero*, S-A-N-T-A-R-S-I-E-R-O,

7    *vs. Martin*, 2021 WL 2856622, Middle District of Florida case

8    from 2021, and *Klayman* -- whoa -- *Klayman*,

9    K-L-A-Y-M-A-N, *vs. Judicial Watch, Inc.*, 22 F.Supp. 3d 1240,

10   1253, Southern District of Florida, 2014, by our Chief Judge

11   Cecilia Altonaga.

12         But here's the point.  Even if Block were right on the

13   law, which as I've said I highly doubt, his conclusory

14   allegation that he suffered a reputational injury is simply

15   implausible, especially since -- according to his own

16   allegations -- the recipients of the letter approached him to

17   express "revulsion" at what the defendants did, not about what

18   he did.  And that's in complaint paragraph 40, suggesting he

19   didn't suffer any reputational injury even if that were

20   sufficient.  Because Block hasn't plausibly alleged special

21   damages, his defamation per quod claim is dismissed.

22         Now, Mr. Licul, let me tell you, I'm going to dismiss

23   it without prejudice because it's your first bite at the apple.

24   But you're an officer of the Court.  I don't want to see this

25   claim looking the way it does now back in your amended

```
 1   complaint.  You go back with your client, you decide whether
 2   you want to raise it, you advance it at your own peril.  If I
 3   dismiss it again, I dismiss it with prejudice, always under the
 4   strictures of your obligations under Rule 11.  Understood?
 5            MR. LICUL:  Understood, your Honor.
 6            THE COURT:  The seventh argument deals with the claim
 7   of defamation by implication.  The argument is that Block fails
 8   to state a defamation by implication claim, because, one, he
 9   failed to establish that the letter was published to a third
10   party, and, two, the letter doesn't imply a false statement of
11   fact.  Neither argument is persuasive.
12            To start, "defamation by implication arises, not from
13   what is stated, but from what is implied when a defendant:
14   One, juxtaposes a series of facts so as to imply a defamatory
15   connection between them; or, two, creates a defamatory
16   implication by omitting facts, such that he may be held
17   responsible for the defamatory implication." That's from *Jews*
18   *For Jesus vs. Rapp*, R-A-P-P, 997 So.2d 1098, at 1106, Florida
19   Supreme Court, 2008.
20            As is the case with any defamation claim, one element
21   of a defamation-by-implication cause of action is publication
22   to a third party.
23            Turning to the parties' arguments, the defendants
24   claim that Block hasn't adequately alleged publication for two
25   reasons.  First, the defendants say that "The letter was
```

```
 1   published by the association to itself."  That's motion to
 2   dismiss at 17 to 18.  I don't agree.
 3        In limited circumstances, it's true, Florida courts
 4   have "recognized that certain communications, even though
 5   apparently made to third persons, are not published for the
 6   purpose of stating a defamation cause of action."  That's from
 7   Hoch v. Loren, L-O-R-E-N, Hoch is H-O-C-H, 273 So. 3d 56, at
 8   57, Fla. 4th DCA, 2019.
 9        By the way, we can all agree that I'm not a very good
10   judge, but at least I'm good to my court reporter.  I spell all
11   the case names and go slowly.
12        That conclusion relies on "the legal fiction that the
13   party hearing or seeing the purported defamation is so closely
14   connected with the potential defamation plaintiff or defendant
15   that they merge into a single entity, so there's no publication
16   to a third person necessary to the cause of action."  And that
17   is from Hoch at page 57.
18        As far as I can tell, this doctrine has been applied
19   only in the three limited circumstances set out in Hoch.  One,
20   the first is where the defendant is a corporation and the
21   statement was "made to corporate executive or managerial
22   employees of that entity."  In such a case, the statements "Are
23   in effect being made to the corporation, itself, and thus lack
24   the essential elements of publication."  That's from Hoch at
25   page 57, quoting American Airlines vs. Geddes, G-E-D-D-E-S,
```

1    960 So.2d 830, at page 833, Fla. 3d DCA, 2007.

2         The second is where the plaintiff is a corporation and

3    the statement was made "to an executive or managerial employee

4    of the plaintiff corporation."  In such a case, the

5    "corporation, as plaintiff, cannot maintain a cause of action

6    for defamation because the only communication was to the

7    corporation, itself -- there was no publication to the

8    requisite third person."  Again, *Hoch*, page 57.

9         The third situation is where "the defamatory statement

10   is made to the plaintiff's attorney."  That's *Hoch* 57.  Because

11   that's the equivalent of making a statement to the defamed

12   person himself, there's no third party.

13        Our case -- a defamatory statement by a condominium

14   association's directors to all unit owners -- doesn't seem to

15   fall into any of these three categories.  And it doesn't appear

16   that a condo association's directors are so closely related to

17   the other unit owners that their communication should be

18   considered a single entity talking to itself.  And,

19   unsurprisingly, the defendants haven't cited any case applying

20   this doctrine in any situation resembling our own, so I don't

21   find this argument at all persuasive.  See, for example,

22   *Walter vs. Jet Aviation Flight Services*, 2016 WL 7116641, page

23   one, Southern District of Florida, December 7th, 2016, Judge

24   Rosenberg, rejecting a motion to dismiss where, as here,

25   "neither of the plaintiff's claims involved communications

1   between corporate managers or corporate officers or lawyers."

2          Second, the defendants claim their communication was

3   privileged because it was sent to "association members, all of

4   whom have an interest in the contents of the plaintiff's

5   initial email."  That's pages 17 to 18 of the motion.

6          Even though this privilege doesn't really have

7   anything to do with "publication to a third party," I'll

8   address it now.

9          The law on this is that it's true that Florida law

10  affords citizens a qualified common-law privilege "to speak to

11  another about matters of mutual and public interest."  That's

12  from *Hurchalla*, H-U-R-C-H-A-L-L-A, vs. *Lake Point Phase I*, 278

13  So. 3d 58, at 63, 4th DCA, 2019.

14          "The essential elements of a qualified privilege are:

15  one, good faith; two, an interest in the subject by the speaker

16  or a subject in which the speaker has a duty to speak; three, a

17  corresponding interest or duty in the listener or reader; four,

18  a proper occasion; and, five, publication in a proper manner."

19  That's from *American Ideal Management, Inc. vs. Dale*

20  *Village, Inc.*, 567 So.2d 497, at 499, 4th DCA, 1990.

21          "The qualified privilege vanishes, however, when the

22  defamatory statement is made with express malice."  And that's

23  likewise from *American Ideal Managemen*t," page 499.  In other

24  words, "where a person speaks upon a privileged occasion, but

25  the speaker is motivated more by a desire to harm the person

1   defamed than by a purpose to protect the personal or social

2   interest giving rise to the privilege, then it can be said that

3   there was express malice and the privilege is destroyed."

4   That's from *Nodar*, N-O-D-A-R, *vs. Galbreath*, G-A-L-B-R-E-A-T-H,

5   462 So.2d 803, at 811, Florida Supreme Court, 1984.

6           "The question of whether a privilege exists or has

7   been exceeded in some manner creates a mixed question of law

8   and fact which normally should be determined by the trier of

9   fact." *Florida Fern Growers Association, Inc. vs. Concerned*

10  *Citizens of Putnam County,* 616 So.2d 562, 570, 5th DCA, 1993.

11          The doctrine of express malice under Florida common

12  law serves a somewhat similar purpose as the federal standard

13  of actual malice.

14          Here, the defendants probably have a decent claim that

15  they are entitled to the qualified privilege because they were

16  commenting on a matter of mutual and public interest:  Whether

17  the recipients' computer security was compromised.

18          However, Block has adequately alleged in his complaint

19  that the defendants published their letter with "express

20  malice."  That's because, according to the complaint, the

21  defendants knew that their accusations were false and yet they

22  simply set out to discredit Block by making false and malicious

23  allegations about him.  That's in paragraphs 43, 47, and 61.

24  He's thus alleged that their primary motive was not to protect

25  unit owners from a security issue, but to injure and defame

1    Block.  Again, no idea whether that's true, but we're at a

2    motion to dismiss and we have to accept his allegations as

3    true.

4          And courts routinely decline to dismiss claims of this

5    nature on similar facts.  See, for example, Judge Rosenberg's

6    case in *Walter v. Jet Aviation Flight Services*, at page seven,

7    noting that whether the defendants' primary motive and

8    reporting concerns about Walter's flying was an intention to

9    injure Walter... was a question of fact for the jury."

10          And *Londono*, L-O-N-D-O-N-O, *vs. Turkey Creek, Inc.*,

11    609 So.2d 14, pages 18 to 19, Florida Supreme Court, 1992. "In

12    the instant case, the complaint alleges that the homeowners

13    intentionally and maliciously made numerous false statements to

14    third parties and the local government officials for the

15    purpose of harming Turkey Creek's economic interests.

16    Accepting those allegations as true and in a light most

17    favorable to Turkey Creek, we find that the complaint makes a

18    facially sufficient claim that the homeowners abused their

19    privilege."

20          The second argument relating to this count is that the

21    defamation by -- let me just have some water.

22          The second argument is that the letter, itself, did

23    not imply that the defendant had engaged in any misconduct and

24    therefore did not constitute a defamatory-by-implication

25    statement.  I agree with Block, however, that by juxtaposing:

1    One, a statement claiming the defendants did not know how the

2    plaintiff obtained the unit owners' email addresses with; two,

3    a warning that the unit owners' privacy had been breached; and,

4    three, by urging the unit owners to then go and change their

5    security settings, a reasonable juror could find that the

6    defendants had implied that the plaintiff had obtained their

7    emails by some wrongful means and that it had caused security

8    concerns.  That's sufficient to state a claim for our purposes

9    here today, so I'll deny the motion to dismiss as to the

10   defamation by implication claim.

11          Argument 8:  Publications.  The defendants' eighth

12   argument is that Counts 1, 2 and 3 must be dismissed as to

13   Gerstin because he did not "publish" the letter.  For support,

14   the defendants contend that the letter "was not issued on

15   Gerstin's letterhead, was not signed by Gerstin, was not sent

16   by Gerstin, was not sent on Gerstin's behalf, and does not even

17   mention Gerstin."  That's motion to dismiss, pages 20 to 21.

18          I'll reject this claim but at least only for now.

19   Here's why.

20          First, Block repeatedly alleges that "all defendants

21   defamed the plaintiff by publishing false statements about

22   him."  That's amended complaint, paragraphs 51, 60, and 66.

23   Again, at this stage, we must accept these allegations as true.

24          Second, the defendants haven't pointed to any

25   authority that a defendant who drafts and approves of a

1   defamatory letter -- knowing that it will be published and sent

2   to third parties -- has not published the letter for purposes

3   of defamation law.

4          And, intuitively, the defendants' position doesn't

5   make a whole lot of sense.  For instance, imagine that a ghost

6   writer writes up all these defamatory articles and that they

7   are then published under someone else's name.  It seems odd to

8   say that the ghost writer isn't liable for his defamatory

9   articles just because the article wasn't published by him or

10  didn't mention him.

11         Or what about when a author sends in a letter to

12  something like the New York Times and then the New York Times

13  selects it for publication.  Is the mere fact, as Block puts

14  it, that the author wasn't the one to click "send" making the

15  letter go out enough to find that the author didn't publish the

16  letter?  Again, that seems odd.

17         Nevertheless, because I'm dismissing the complaint

18  with leave to amend, the defendants can reraise this argument

19  in a subsequent motion to dismiss or motion for summary

20  judgment if they can find any support for the proposition.

21         The ninth and final argument is that Block's

22  conspiracy count must be dismissed because, one, Block has

23  failed to adequately allege an underlying act of defamation

24  and, two, Gerstin cannot be deemed to have conspired under the

25  intracorporate conspiracy doctrine.  Because I've already

```
 1   rejected both of those contentions, I'll reject this ninth
 2   argument, as well.
 3           Therefore, the motion to dismiss is granted in part
 4   and denied in part as set out in today's hearing.
 5           Mr. Licul, how much time do you think you need to
 6   amend?
 7           MR. LICUL:  Your Honor, we can do this quickly.
 8           I just want to make sure that we get the transcript so
 9   we can again review your ruling.  I would ask for two weeks and
10   we'll order the transcript expeditiously.
11           THE COURT:  All right.  Any objection to that,
12   Mr. Dial?
13           MR. DIAL:  No objection.
14           THE COURT:  Mr. Kaplan?
15           MR. KAPLAN:  No, your Honor.
16           THE COURT:  All right.  Now, what about resolving this
17   case, folks?  This is not exactly Marbury vs. Madison.  Despite
18   the presence of a federal judge, we cannot, we cannot think
19   that it's good for anybody to let this case proceed in the
20   federal courts any longer.
21           Any discussion about trying to resolve this thing,
22   Mr. Licul?
23           MR. LICUL:  We have not had specific discussions.  We
24   have a mediation scheduled in early January, but certainly we
25   are ready, willing, and able to have those discussions directly
```

1   and much sooner than January.

2          **THE COURT:**  I'm thinking you guys have this discussion

3   this week.  Does that work for you?

4          **MR. LICUL:**  It does, your Honor.

5          **THE COURT:**  Mr. Dial?

6          **MR. DIAL:**  Yes, your Honor, that works.

7          **THE COURT:**  Mr. Kaplan?

8          **MR. KAPLAN:**  Yes, of course.

9          **THE COURT:**  All right.  So I think that what we should

10  do is, Mr. Licul, I'm going to give you three weeks to amend

11  your complaint.  That will give you -- I'll give you one week

12  to engage in an informal settlement conference with the

13  defendants.  The informal settlement conference won't have my

14  magistrate judge there, won't have a mediator.  You can all

15  yell at each other.

16          You can have your clients there, if you think that

17  makes sense.  I'll leave it to you.  Sometimes the lawyers know

18  their clients best and it doesn't make sense to have the

19  clients there.  What I do require is that the clients be at

20  least a phone call away so that in case the lawyers get close

21  enough to settle the case, they can call the clients and bridge

22  that authorization gap.

23          The settlement conference must last at least one hour.

24  Now, that doesn't mean that you have to awkwardly stare at each

25  other for sixty minutes, but it does mean that the entire

1  conference, including time spent offline speaking to your

2  client, strategizing what the next figure will be, et cetera,

3  icing the kicker, if you will, must last a total of sixty

4  minutes.

5        The reason I do that is because then you can't just be

6  mean to each other within one minute and walk away; you have to

7  actually treat each other with respect and engage each others'

8  arguments early on knowing that you'll be there for a full

9  sixty minutes.

10       At the end of the day, one week from now, which is --

11 let me look at my calendar -- today is the 26th, Tuesday.  I'll

12 give you till -- how about I give you until next Friday,

13 November the 5th.  By the end of the day, November 5th, the

14 parties will have engaged in that one-hour settlement

15 conference and the parties will file a joint -- that means

16 together -- notice with me telling me that you complied with my

17 order, you had the settlement conference, and, second, whether

18 you've settled or not.

19       Now, that second prong is actually three

20 possibilities.  One is you didn't settle.  And if you didn't

21 settle, that's fine.  You let me know.  And, Mr. Licul, you'll

22 file your amended complaint and we'll proceed.

23       On the other hand, if you did settle, there's two

24 options:  One, you settled the whole case, including the

25 question of the plaintiff's lawyers fees.  In which case you

```
1    just tell me how much time you need for a stipulation of
2    dismissal, for the signing of any settlement documents -- 14,
3    30 days, whatever it is -- and I'll give that to you.
4         If there's an outstanding question, however, about the
5    entitlement to the plaintiff's lawyer to fees and costs, and
6    you can't agree on that, I think you still settled the case.
7    Remember, there's no reason for the plaintiff's claim to be
8    hijacked by the collateral question of fees and costs.  If
9    there's an amount of money that the defendant is willing to pay
10   to make the plaintiff go away, if that amount of money happens
11   to coincide with an amount of money that the plaintiff is
12   willing to take to go home and go away, then the parties have
13   settled the case, and you all can litigate the separate
14   question of attorneys' fees in front of my magistrate judge.
15        Does that all make sense, Mr. Licul?
16        MR. LICUL:  It does, your Honor.
17        THE COURT:  So your deadline for filing the amended
18   complaint will be three weeks from today, which is November the
19   16th.  Does that work?
20        MR. LICUL:  Yes.
21        THE COURT:  All right.
22        Anything else then from the plaintiffs?
23        MR. LICUL:  No, your Honor.
24        THE COURT:  Anything else, Mr. Dial?
25        MR. DIAL:  No, your Honor.
```

```
 1            THE COURT:  Mr. Kaplan?

 2            MR. KAPLAN:  No, your Honor.

 3            THE COURT:  Nice to see you all.  I hope you all have

 4   a good day.  Take care of yourselves.

 5            MR. KAPLAN:  Thank you, your Honor.

 6            MR. LICUL:  Thank you, your Honor.

 7            THE COURT:  Bye-bye, Fran.

 8            THE COURT REPORTER:  Bye-bye, Judge.

 9            (The Judge exited the courtroom)

10            (Proceedings concluded at 3:20 p.m.)

11                         -  -  -  -  -

12

13

14

15

16

17

18                    C E R T I F I C A T E

19       I hereby certify that pursuant to Section 753,

20   Title 28, United States Code, the foregoing is a true and

21   correct transcript from the record of proceedings in the

22   above-entitled matter.

23       ___/s/Francine C. Salopek_____     __11-4-2021__
     Francine C. Salopek, RMR-CRR              Date
24   Official Court Reporter

25
```

MR. DIAL: [26]
MR. KAPLAN: [13]
MR. LICUL: [11]
THE COURT REPORTER: [6]  4/18
4/21 5/2 5/4 5/6 54/8
THE COURT: [38]

'

'22 [1]  35/13
'23 [1]  23/20
'48 [1]  30/13
'Harwood [1]  29/21

/

/s/Francine [1]  54/23

1

100 [1]  2/5
10003 [1]  2/3
10058207 [1]  38/21
1031 [1]  18/11
1035 [1]  18/11
1098 [1]  42/18
11 [3]  12/10 27/14 42/4
11-4-2021 [1]  54/23
1106 [1]  42/18
1125 [1]  29/4
1137 [1]  29/5
1156 [1]  16/5
1163 [1]  16/5
12 [1]  33/2
1223 [1]  18/17
1231 [2]  18/17 19/4
1240 [1]  41/9
1253 [1]  41/10
1260 [2]  38/5 40/10
1268 [1]  38/5
1284 [1]  40/10
1313 [2]  23/20 35/13
1321 [1]  35/13
1322 [1]  23/20
1334 [1]  27/2
1338 [1]  38/25
1339 [1]  27/2
1344 [1]  39/1
14 [5]  22/16 33/2 35/8 47/11 53/2
15 [1]  35/9
1500 [1]  2/6
156 [1]  37/19
16 [1]  38/9
16th [1]  53/19
17 [2]  43/2 45/5
17 F.Supp.2d [1]  27/2
176 So.2d 535 [1]  30/13
18 [5]  13/5 22/17 43/2 45/5 47/11
189 F.3d 405 [1]  19/15
19 [1]  47/11
1934 [1]  37/20
1947 [1]  27/10
1955 [1]  26/21
1965 [1]  30/13
1969 [2]  28/1 29/16
1973 [2]  26/13 30/1

1977 [1]  37/15
1984 [1]  46/5
1985 [1]  33/14
1990 [2]  34/24 45/20
1992 [1]  47/11
1993 [1]  46/10
1998 [1]  27/3
1999 [3]  19/16 25/25 38/17

2

20 [1]  48/17
2000 [2]  18/12 24/14
2002 [1]  29/5
2003 [2]  18/18 39/1
2004 [1]  38/5
2006 [1]  40/14
2007 [1]  44/1
2008 [1]  42/19
2009 [2]  16/5 40/11
2014 [3]  40/22 40/23 41/10
2015 [2]  23/20 26/7
2016 [3]  35/21 44/22 44/23
2019 [5]  23/18 24/2 35/14 43/8 45/13
2020 [7]  12/10 13/5 22/16 22/17
 38/21 38/22 39/5
2020 WL 533927 [1]  39/4
2021 [5]  1/8 3/1 25/8 41/8 54/23
2021 WL [2]  25/7 41/7
205 [1]  2/12
206 F.3d 1031 [1]  18/11
208 F.3d 940 [1]  24/13
21 [2]  40/23 48/17
21-61032-CIV-RKA [1]  1/4
217 [1]  39/14
22 [2]  12/13 41/9
223 So.2d 359 [2]  28/1 29/15
23 [1]  12/17
24 [1]  12/17
24-2 [1]  34/8
24th [1]  38/22
26 [2]  1/8 3/1
26th [1]  52/11
273 So. 3d [1]  43/7
273 So.2d 774 [2]  26/13 30/1
278 [1]  45/12
28 [1]  54/20
2856622 [1]  41/7
29 [1]  12/20
291 F.Supp. 2d 1338 [1]  38/25
299 [1]  2/12
29th [1]  25/8
2:01 [2]  1/9 3/1
2d [3]  27/9 30/13 33/14

3

30 [3]  22/19 24/7 53/3
304 F.3d 1125 [1]  29/4
3050 [1]  2/9
31 [3]  13/8 22/8 27/9
32 [1]  20/16
3209860 [1]  25/7
33 [4]  13/8 16/23 22/19 24/7
330 [2]  25/25 25/25
33131 [1]  2/9
33301 [1]  2/12

33394 [1]  2/6
337 [1]  37/19
34 [2]  16/25 36/5
340 [1]  37/19
342 F.3d 1223 [1]  18/17
347 F.Supp. 2d 1260 [1]  38/5
353 So.2d 575 [1]  37/14
359 [2]  28/1 29/15
36 [2]  28/8 28/21
362 [2]  28/1 29/15
38 [3]  13/17 21/20 21/25
381 [1]  38/17
382 [1]  27/9
384 [1]  27/10
388 [1]  38/17
39 [3]  13/17 21/20 21/25
3:20 [1]  54/10
3d [3]  41/9 43/7 45/13
3rd [2]  2/5 39/5

4

40 [2]  28/21 41/18
405 [1]  19/15
41 [3]  14/5 21/20 22/1
43 [4]  17/6 35/24 36/2 46/23
44 [4]  13/20 13/24 21/20 22/1
462 So.2d 803 [1]  46/5
464 So.2d 664 [1]  33/13
47 [4]  13/4 17/12 36/6 46/23
49 [2]  17/16 36/8
497 [1]  45/20
499 [2]  45/20 45/23
4th [1]  45/13
4th DCA [1]  45/20

5

50 [2]  24/19 25/1
51 [1]  48/22
53 [1]  39/13
533927 [1]  39/4
535 [1]  30/13
547 [1]  30/13
549 [1]  26/20
551 [1]  26/20
56 [1]  43/7
562 [1]  46/10
562 So.2d 731 [1]  34/23
567 So.2d 497 [1]  45/20
5686 [1]  2/13
57 [5]  43/8 43/17 43/25 44/8 44/10
570 [1]  46/10
571 F.3d 1156 [1]  16/5
575 [1]  37/14
578 [1]  37/14
58 [1]  45/13
59 [1]  25/4
5:39 [1]  39/19
5th [3]  34/23 52/13 52/13
5th DCA [1]  46/10

6

60 [1]  48/22
604 F.Appx. 863 [1]  26/7
609 So.2d 14 [1]  47/11
61 [1]  46/23

**6**

616 So.2d 562 [1]  46/10
617.0834 [2]  14/17 15/13
619 F.Supp. 2d 1260 [1]  40/10
63 [1]  45/13
64 [1]  25/4
658 [1]  23/18
66 [1]  48/22
662 [1]  23/18
6632629 [1]  40/22
664 [1]  33/13
666 [1]  33/13
686 [1]  35/20
69 [1]  25/4

**7**

702 [1]  35/20
7116641 [1]  44/22
728 So.2d 330 [1]  25/25
731 [1]  34/23
734 [1]  34/23
742 So.2d [1]  38/17
753 [1]  54/19
769-5686 [1]  2/13
774 [2]  26/13 30/1
777 [1]  26/13
779 [2]  23/18 30/1
782 F.Appx. 917 [1]  24/2
792 F.3d 1313 [1]  23/20
7th [1]  44/23

**8**

80-something-year-old [1]  36/15
803 [1]  46/5
811 [1]  46/5
816 [1]  35/20
830 [1]  44/1
833 [1]  44/1
84 So.2d 549 [1]  26/20
8433432 [1]  40/15
85 [1]  2/3
863 [1]  26/7
865 [1]  26/7

**9**

913 F.3d 1313 [1]  35/13
917 [1]  24/2
919 [1]  24/2
940 [1]  24/13
944 [1]  24/13
954 [1]  2/13
960 So.2d 830 [1]  44/1
997 So.2d 1098 [1]  42/18

**A**

Abbatt [9]  2/5 3/10 10/14 11/5 12/22
 14/13 15/19 21/22 22/15
above [1]  54/22
above-entitled [1]  54/22
Absolutely [1]  11/24
abused [1]  47/18
accept [3]  28/17 47/2 48/23
Accepting [1]  47/16
access [1]  36/20

accessed [2]  17/1 36/3
accessing [1]  17/4
according [5]  12/12 26/17 31/9 41/15
 46/20
accusation [2]  20/22 21/19
accusations [3]  36/10 36/18 46/21
accused [3]  13/18 24/15 30/15
accuses [2]  7/18 7/20
accusing [3]  16/18 17/3 17/20
acknowledgment [1]  10/23
across [1]  39/11
act [3]  14/25 23/16 49/23
acted [2]  20/24 36/11
acting [5]  15/9 20/5 20/12 20/19 21/5
action [9]  14/20 23/12 23/13 37/13
 37/21 42/21 43/6 43/16 44/5
actionable [3]  26/9 37/21 39/14
actions [2]  19/6 39/21
actors [1]  18/9
acts [2]  18/7 20/4
Adams [1]  26/19
Adams vs. News [1]  26/19
add [2]  3/22 30/25
added [1]  20/17
address [7]  9/23 11/9 14/10 15/15
 16/10 33/18 45/8
addressed [1]  26/19
addresses [15]
adequate [1]  23/22
adequately [5]  23/24 40/25 42/24
 46/18 49/23
adjudged [1]  7/3
adopted [1]  26/18
adopts [3]  23/4 23/10 24/24
advance [1]  42/2
advises [2]  20/10 34/6
advocacy [1]  19/6
affirmed [1]  30/14
affords [1]  45/10
afternoon [6]  3/3 3/5 3/7 3/9 3/14 3/15
agents [1]  18/7
agree [9]  10/19 23/6 23/7 24/4 37/7
 43/2 43/9 47/25 53/6
Airlines [1]  43/25
Airlines vs. Geddes [1]  43/25
akin [1]  18/24
AL [1]  1/10
Alan [2]  26/6 33/8
Alan vs. Wells [1]  33/8
allegation [6]  7/13 8/10 11/1 11/1 25/2
 41/14
allegations [17]
allege [8]  20/23 25/21 35/16 37/4 37/8
 39/15 40/2 49/23
alleged [18]
allegedly [2]  21/13 35/2
alleges [15]
alleging [1]  22/15
allegorical [1]  29/18
allow [2]  4/2 9/23
allowed [2]  5/24 16/8
alone [3]  26/2 33/4 33/22
although [5]  8/20 16/25 28/2 29/6
 29/20
Altman [1]  1/17

Altonaga [1]  41/11
ambiguous [1]  33/10 34/20
amend [6]  11/23 11/25 25/11 49/18
 50/6 51/10
amended [11]
Amendment [1]  35/11
American [1]  43/25 45/19 45/23
amount [5]  38/1 41/1 53/9 53/10
 53/11
amount-in-controversy [1]  41/1
ample [1]  38/14
Anderson [1]  38/21
Anderson vs. Smith [1]  38/21
angry [1]  31/13
apologize [1]  4/23
appeal [1]  18/21
APPEARANCES [1]  2/1
apple [1]  41/23
applicable [1]  18/14
applied [2]  18/23 43/18
applies [1]  11/6
apply [4]  8/16 11/14 15/4 24/2
applying [2]  19/17 44/19
approached [1]  41/16
approved [1]  21/24
approves [1]  48/25
approving [2]  20/14 24/9
Appx [1]  23/18
argue [3]  15/23 25/14 27/11
argued [1]  33/16
argues [2]  15/9 40/1
argument [45]
arguments [12]
arises [1]  42/12
arising [1]  34/16
article [8]  29/17 29/20 29/22 29/23
 30/15 30/16 34/25 49/9
articles [3]  30/21 49/6 49/9
ascertainable [2]  29/10 29/12
aspect [1]  14/14
asserts [1]  23/14
assist [1]  21/4
associated [1]  6/3
association [15]
association's [8]  12/22 12/23 12/24
 18/3 20/13 21/2 44/14 44/16
Association, [1]  46/9
Association, Inc. vs. Concerned [1]
 46/9
associations [1]  14/13
assume [1]  6/7
attached [1]  6/1
attacked [1]  17/22
attempt [2]  17/9 19/25
attempted [1]  17/21
attempts [1]  19/20
attorney [12]
attorney's [1]  19/1
attorney-client [2]  18/25 21/8
attorneys [3]  18/20 19/5 19/6
attorneys' [1]  53/14
attributed [1]  18/8
author [6]  13/2 13/3 17/13 49/11
 49/14 49/15
authority [2]  40/5 48/25

**A**

authorization [1]  51/22
authorized [2]  11/3 21/4
Avenue [2]  2/3 2/5
aver [1]  24/16
average [1]  35/5
avers [1]  13/18
Avery [4]  2/4 3/9 6/18 10/4
Aviation [2]  44/22 47/6
Avrich [1]  40/21
awkwardly [1]  51/24
axiomatic [1]  19/11

**B**

background [1]  14/4
banc [1]  18/12
Banco [1]  27/1
bank [2]  24/18 24/21
barked [1]  14/2
Barry [2]  37/14 37/17
bars [1]  10/25
basic [2]  4/11 4/12
basis [6]  17/1 19/21 19/23 33/22 36/2
 37/9
bat [1]  6/11
Beach [1]  23/19
beating [1]  30/15
begin [1]  10/16
beginning [1]  22/15
believe [5]  17/1 28/23 32/12 36/3
 36/15
bench [1]  5/20
benefit [5]  19/7 19/8 20/6 20/7 39/25
beyond [2]  31/10 39/15
bigger [1]  7/20
Biscayne [1]  2/8
bite [1]  41/23
blast [3]  22/18 28/4 28/24
BLOCK [79]
Block's [11]
Bloom [2]  40/23 40/23
Blvd [1]  2/12
board [7]  11/3 11/4 12/22 12/23 14/1
 16/1 20/16
Boulevard [1]  2/8
Bradstreet [1]  4/13
Bradstreet vs. Miller [1]  4/13
breach [4]  9/9 14/24 15/21 16/11
breached [4]  14/22 15/20 15/25 48/3
bridge [1]  51/21
brief [2]  16/6 16/7
Broward [1]  2/12
budget [1]  12/13
building [2]  28/16 32/2
bunch [2]  3/20 28/22
burdensome [1]  22/12
Bush [2]  27/25 29/14
business [2]  39/24 40/19
bye [4]  54/7 54/7 54/8 54/8
Bye-bye [2]  54/7 54/8

**C**

calendar [1]  52/11
call [4]  6/25 28/2 51/20 51/21

calls [1]  15/16
Candyce [2]  10/14 11/5
capable [1]  37/5
capacities [1]  15/10
capacity [2]  20/13 21/2
carefully [1]  24/5
categories [1]  44/15
cause [7]  23/12 23/13 37/25 42/21
 43/6 43/16 44/5
caused [2]  25/23 48/7
causing [1]  23/5
CC [1]  9/2
Cecilia [1]  41/11
Cent [1]  27/2
certify [1]  54/19
cetera [1]  52/2
challenged [1]  19/11
chance [2]  11/25 32/5
Chapman [1]  24/13
character [1]  37/11
characteristic [2]  23/21 39/9
charge [4]  8/1 25/16 32/24 39/14
charges [2]  26/3 33/4
check [2]  32/13 34/6
chief [2]  39/8 41/10
children [4]  30/15 30/17 30/20 31/7
chirping [1]  14/3
Circuit [16]
Circuit's [1]  25/6
circulate [1]  12/15
circulated [1]  12/19
circumstances [5]  27/20 27/22 29/2
 43/3 43/19
citations [1]  37/20
cite [2]  3/20 33/22
cited [5]  3/19 4/14 29/25 40/5 44/19
cites [3]  19/22 40/6 41/4
Citibank [1]  25/24
citing [1]  23/19
citizens [2]  45/10 46/10
CIV [1]  1/4
civil [1]  11/13
claim [34]
claiming [1]  48/1
claims [7]  18/3 19/23 23/14 23/23
 23/25 44/25 47/4
classic [1]  10/18
classification [1]  26/8
clear [4]  17/13 28/9 35/10 38/11
click [1]  49/14
client [14]
client's [3]  9/23 10/13 10/23
clients [6]  10/24 51/16 51/18 51/19
 51/19 51/21
clients' [1]  20/21
close [1]  51/20
closely [2]  43/13 44/16
closer [2]  4/18 15/16
coauthored [1]  21/23
Code [1]  54/20
coincide [1]  53/11
Cole [1]  38/25
collateral [1]  53/8
collectively [1]  24/15
College [2]  37/14 37/18

College v. Hull [1]  37/14
College vs. Hull [1]  37/18
combination [1]  23/6
comfy [1]  12/5
Commander [1]  37/18
Commander vs [1]  37/18
comment [1]  30/2
commenting [1]  46/16
comments [2]  21/13 22/5
commit [2]  18/15 24/19
committed [8]  7/14 8/2 8/10 15/1
 15/21 26/3 33/5 35/12
common [4]  26/25 37/11 45/10 46/11
common-law [1]  45/10
communicated [1]  35/23
communication [9]  26/9 30/5 30/7
 33/10 33/12 34/22 44/6 44/17 45/2
communications [2]  43/4 44/25
community [1]  38/3
Company [2]  27/9 30/12
complaining [2]  36/17 37/22
complaint [47]
complied [1]  52/16
compromised [2]  32/13 46/17
computer [5]  1/25 7/15 16/19 17/20
 46/17
computer's [1]  32/13
computers [1]  34/12
computers' [1]  34/7
concedes [1]  38/8
concerned [3]  11/21 30/21 46/9
concerning [1]  36/8
concerns [4]  12/11 34/16 47/8 48/8
concluded [1]  54/10
conclusion [2]  7/23 43/12
conclusions [1]  23/3
conclusory [2]  23/11 41/13
condo [6]  6/22 6/24 14/12 14/18
 28/22 44/16
condominium [4]  12/6 12/8 15/18
 44/13
conduct [5]  17/18 19/1 19/3 19/11
 24/17
conference [6]  51/12 51/13 51/23
 52/1 52/15 52/17
connected [2]  23/12 43/14
connection [3]  9/7 9/17 42/15
consist [1]  39/23
consistently [1]  29/2
consists [1]  39/20
conspiracies [2]  18/25 21/8
conspiracy [21]
conspiratorial [1]  19/3
conspire [1]  11/10
conspired [1]  49/24
conspiring [1]  19/24
constitute [1]  47/24
constitutes [1]  14/25
constitutional [1]  35/10
construction [8]  5/16 12/12 13/1 13/20
 26/15 28/4 28/7 36/17
construe [1]  26/25
construed [2]  26/16 28/25
construing [1]  26/14
consulted [1]  10/24

**C**

contained [2]  30/8 31/25
contains [4]  23/9 24/23 27/19 30/5
contempt [5]  8/4 8/13 26/5 33/6 33/20
contend [1]  48/14
contends [1]  15/12
contention [3]  18/14 25/13 30/2
contentions [1]  50/1
contents [2]  16/21 45/4
context [6]  7/8 8/24 11/13 11/13 18/25
  31/20
contractual [1]  39/25
contradicted [1]  5/24
contrary [1]  20/22
contrast [1]  37/16
controversy [1]  41/1
convey [1]  26/18
convince [1]  5/20
Cook, [1]  25/7
Cook, Inc [1]  25/7
Cooper [1]  27/9
Cooper v. Miami [1]  27/9
copy [3]  27/5 34/17 34/17
corners [2]  5/25 26/24
Corp [1]  26/20
corporate [5]  10/25 18/7 43/21 45/1
  45/1
corporation [11]
Corporation vs. Foglia [1]  40/14
Corpus [1]  39/13
corresponding [1]  45/17
Cosgrove [1]  33/13
counseled [1]  19/10
count [10]  11/7 11/7 23/5 23/6 23/10
  23/13 24/24 25/9 47/20 49/22
counts [11]
County [2]  23/19 46/10
court [25]
courtroom [2]  3/2 54/9
courts [7]  27/15 27/17 29/2 33/9 43/3
  47/4 50/20
crafting [1]  24/8
creates [2]  42/15 46/7
Creek [1]  47/17
Creek's [1]  47/15
Creek, [1]  47/10
Creek, Inc [1]  47/10
crime [9]  7/14 8/2 8/10 25/16 26/3
  32/21 32/25 33/5 33/17
criminal [3]  6/23 7/15 11/13
critical [1]  28/7
criticized [3]  13/3 17/14 17/23
CRR [2]  2/10 54/24
customary [1]  38/2
customers [1]  39/24

**D**

D-I-B-B-L-E [1]  40/21
Dale [1]  45/19
damage [9]  26/10 26/11 37/22 38/8
  38/18 38/23 39/2 39/17 40/7
damages [24]
dangerous [1]  9/14
Daniels [1]  39/4

Daniels vs. HSN, Inc [1]  39/4
Date [1]  54/24
DAVID [1]  1/10
DCA [16]
deadline [1]  53/17
December [5]  12/10 13/5 22/16 22/17
  44/23
decent [1]  46/14
decide [4]  8/19 33/11 34/21 42/1
decision [1]  14/20
decisions [1]  31/9
decline [1]  47/4
deduced [2]  28/11 30/10
deduction [2]  27/4 27/6
deemed [3]  16/4 16/7 49/24
defamation [45]
defamatory [35]
defame [2]  14/8 46/25
defamed [5]  27/18 30/4 44/11 46/1
  48/21
defaming [1]  16/24
defendant [16]
defendant's [1]  24/6
defendants [65]
defendants' [19]
defense [3]  3/8 22/25 32/15
deficient [1]  24/16
definition [1]  8/1
Del [1]  27/2
delayed [1]  12/12
delineated [1]  15/13
denied [4]  17/25 21/9 33/22 50/4
deny [3]  14/14 22/22 48/9
described [2]  29/13 32/15
describes [3]  5/13 24/5 24/8
describing [1]  24/12
description [3]  31/24 32/3 32/6
designate [1]  27/16
desire [1]  45/25
despite [3]  4/9 40/1 50/17
destroy [1]  16/18
destroyed [1]  46/3
detail [1]  4/11
detailed [1]  4/10
determine [1]  35/4
determined [2]  30/7 46/8
determining [1]  26/22
devices [1]  13/16
Dial [10]  2/4 3/9 3/23 4/18 6/18 31/3
  32/22 50/12 51/5 53/24
Dibble [1]  40/21
dinner [2]  6/17 6/19
direct [1]  10/12
directly [3]  29/1 29/21 50/25
director [8]  14/11 14/18 14/21 14/22
  14/23 15/20 15/21 16/12
director's [1]  14/24
directors [12]
disclosed [1]  27/8
discover [1]  17/9
discredit [7]  13/2 13/2 17/21 36/6
  36/13 36/21 46/22
discrediting [1]  17/13
discrete [1]  22/6
discuss [1]  41/4

discussed [3]  31/5 37/10 41/1
discussion [2]  50/21 51/2
discussions [2]  50/23 50/25
disgrace [5]  8/4 8/14 26/5 33/6 33/20
disgruntled [7]  9/8 9/12 28/3 31/2
  31/13 32/7 32/11
dismiss [34]
dismissal [3]  19/23 34/24 53/2
dismissed [8]  10/18 10/20 11/8 18/4
  37/3 41/21 48/12 49/22
dismissing [2]  25/8 49/17
disparage [1]  13/19
disparaging [1]  28/4
disregard [3]  15/2 35/18 36/11
distinguish [1]  40/4
distorted [1]  4/22
DISTRICT [17]
distrust [6]  8/3 8/13 26/4 33/6 33/19
  34/1
divine [1]  31/11
divining [1]  32/5
DIVISION [1]  1/3
doctrine [16]
document [1]  6/1
documents [1]  53/2
dog [3]  11/6 14/2 14/3
Dolowich [1]  2/5
doubt [1]  41/13
draft [2]  20/20 22/15
drafted [1]  20/21
drafting [2]  13/5 20/13
drafts [1]  48/25
draw [1]  4/11
drawing [1]  7/22
Dude [2]  18/19 18/20
Dun [1]  4/13
duties [5]  14/23 14/25 15/20 15/25
  16/11
duty [2]  45/16 45/17

**E**

E-C-H-O-L-S, vs. Lawton [1]  35/13
E-G-I-D-I [1]  16/4
E-M-B-R-E-E [1]  23/17
early [4]  21/6 36/23 50/24 52/8
easily [3]  11/23 17/10 30/10
eastern [2]  12/7 22/20
ECF [3]  12/14 13/10 28/5
Echols [1]  35/12
economic [5]  38/23 39/3 40/12 40/20
  47/15
Ecuador [1]  27/2
Edition [1]  39/19
effect [2]  34/2 43/23
effort [2]  17/11 36/13
Egidi [2]  16/4 33/23
eight [1]  19/8
eighth [1]  48/11
element [3]  15/25 15/25 42/20
elements [3]  10/17 43/24 45/14
Eleventh [15]
else's [1]  49/7
email [27]
emails [10]  9/8 13/17 28/7 28/13
  32/11 32/13 34/11 36/16 36/20 48/7

## E

embarrass [1]  36/13
embarrassed [3]  13/3 17/14 17/23
Embree [1]  23/17
emphasis [5]  4/1 4/7 5/8 6/10 20/17
employ [1]  34/10
employee [2]  20/11 44/3
employees [1]  43/22
employment [2]  20/24 39/24
en [1]  18/12
encompass [1]  38/1
engage [3]  9/13 51/12 52/7
engaged [3]  9/12 47/23 52/14
entirety [1]  21/23
entitled [2]  46/15 54/22
entitlement [1]  53/5
entity [3]  43/15 43/22 44/18
equally [1]  21/16
equivalent [1]  44/11
escapes [1]  20/3
especially [1]  41/15
Esq [3]  2/2 2/4 2/7
essential [3]  27/18 43/24 45/14
establish [3]  37/6 38/18 42/9
et [2]  1/10 52/2
et cetera [1]  52/2
event [2]  22/11 40/18
everyday [1]  28/25
everyone [2]  9/15 15/16
evidence [1]  37/25
exceeded [1]  46/7
exception [3]  15/13 16/13 17/24
excuse [1]  13/10
executive [2]  43/21 44/3
exhibiting [1]  15/2
exists [2]  19/13 46/6
exited [1]  54/9
expeditiously [1]  50/10
expert [1]  39/7
explain [3]  11/13 14/15 40/5
explained [3]  23/8 29/20 29/24
explains [1]  13/25
explicitly [1]  29/6
express [5]  41/17 45/22 46/3 46/11
 46/19
extent [2]  11/21 22/9
external [3]  28/10 31/3 31/8
externally [1]  31/11
extraneous [1]  27/22
extrinsic [6]  5/10 6/13 6/16 6/20 7/2
 7/4

## F

F-A-L-I-C [1]  38/4
F-A-R-E-S-E [1]  18/16
F-E-L-D-T [1]  29/4
F-O-G-L-I-A [1]  40/14
F. [1]  23/18
F. Appx [1]  23/18
F.3d [9]  16/5 18/11 18/17 19/15 23/20
 24/13 29/4 35/13 35/20
F.3d 686 [1]  35/20
F.Appx. [2]  24/2 26/7
F.Supp. [4]  38/5 38/25 40/10 41/9

F.Supp. 3d [1]  41/9
F.Supp.2d [1]  27/2
face [3]  7/24 36/14 36/14
facially [1]  47/18
fact [20]
factor [5]  6/16 7/4 8/12 8/14 8/16
factors [2]  5/10 6/13
facts [12]
factual [1]  23/3
fail [2]  20/2 23/22
failed [11]
fails [5]  15/24 23/13 25/13 29/20 42/7
failure [2]  14/20 14/24
faith [6]  15/1 15/13 15/22 16/15 17/21
 45/15
Falic [1]  38/4
fall [1]  44/15
falls [2]  15/12 19/1
false [17]
falsehood [1]  38/2
falsely [4]  13/15 13/18 13/21 16/18
falsity [1]  25/23
Farese [4]  18/16 19/4 19/9 19/14
Fargo [2]  26/7 33/8
fatal [1]  8/8
favorable [2]  20/18 47/17
favorite [3]  18/1 27/4 29/14
February [1]  39/5
federal [10]  7/15 7/21 12/7 25/16
 32/21 33/1 36/15 46/12 50/18 50/20
fees [4]  52/25 53/5 53/8 53/14
Feldt [1]  29/4
fellow [1]  28/22
Fern [1]  46/9
fiction [1]  43/12
fifth [2]  2/3 25/12
fight [1]  11/6
figure [1]  52/2
file [2]  52/15 52/22
filing [1]  53/17
final [3]  10/22 30/25 49/21
Finally [2]  30/12 32/10
fine [1]  52/21
firm [1]  20/9
Fla [3]  30/13 33/14 34/23
Fla. [4]  37/15 38/17 43/8 44/1
Fla. 3d DCA [2]  37/15 44/1
Fla. 4th DCA [2]  38/17 43/8
flaw [1]  8/9
Flight [2]  44/22 47/6
FLORIDA [37]
Florida's [1]  14/16
flying [1]  47/8
Foglia [1]  40/14
folder [1]  34/17
folks [2]  3/3 50/17
footnote [3]  18/17 19/8 19/14
footnote 8 [1]  18/17
Ford [1]  34/23
Ford vs. Rowland [1]  34/23
forego [1]  9/22
foregoing [1]  54/20
form [2]  4/16 19/14
formation [1]  18/9
FORT [5]  1/3 1/7 2/6 2/12 12/9

Fortunately [1]  8/11
fourth [7]  13/25 22/24 23/1 26/13 28/1
 29/15 30/1
frame [2]  21/14 22/13
Fran [2]  27/5 54/7
Francine [3]  2/10 54/23 54/24
Frank [1]  24/1
Frank vs. Schulson [1]  24/1
FREDERIC [4]  1/7 3/6 32/2 32/3
Friday [2]  6/17 52/12
front [1]  53/14

## G

G-A-L-B-R-E-A-T-H [1]  46/4
G-E-D-D-E-S [1]  43/25
Galbreath [1]  46/4
gap [1]  51/22
geared [1]  8/5
Geddes [1]  43/25
general [5]  19/5 22/7 37/12 38/1
 39/16
generalized [1]  38/12
genetic [1]  31/23
genius [1]  36/22
Gerstin [19]
Gerstin's [6]  19/18 19/25 20/21 21/1
 48/15 48/16
ghost [2]  49/5 49/8
God [1]  33/1
gotcha [1]  10/9
government [1]  47/14
grant [1]  8/18
granted [1]  50/3
ground [1]  10/20
grounds [2]  23/23 33/17
group [2]  6/16 24/12
Growers [1]  46/9

## H

H-E-F-F-E-R-M-A-N v. Hunter [1]
 19/15
H-O-C-H [1]  43/7
H-O-R-S-L-E-Y [1]  29/4
H-U-R-C-H-A-L-L-A [1]  45/12
hacked [2]  13/16 36/16
hacking [8]  7/15 7/19 7/21 16/19
 17/20 21/19 34/11 36/22
hand [1]  52/23
handful [1]  12/19
harm [6]  17/17 38/13 39/23 40/3
 40/19 45/25
harming [1]  47/15
harms [1]  38/2
harsh [1]  26/15
Harwood [4]  27/25 29/14 29/18 29/22
Harwood v [1]  27/25
Harwood vs. Bush [1]  29/14
hatred [5]  8/3 8/13 26/4 33/6 33/19
headphones [1]  4/24
Healthcare [1]  40/10
hear [4]  4/20 4/21 5/5 26/18
hearing [3]  1/16 43/13 50/4
Hefferman [1]  19/15
helped [1]  20/20
Herald [1]  27/9

**H**

here's [2]  41/12 48/19
hereby [2]  25/1 54/19
highly [1]  41/13
hijacked [1]  53/8
hint [1]  15/16
Hoch [7]  43/7 43/7 43/17 43/19 43/24
44/8 44/10
Hoch v. Loren [1]  43/7
Hold [4]  4/24 5/12 5/12 10/3
holding [1]  35/1
Holdings, [1]  35/20
Holdings, Inc [1]  35/20
home [1]  53/12
homeowners [2]  47/12 47/18
Honor [26]
Honorable [1]  1/17
hooker [1]  35/1
hope [1]  54/3
hopefully [1]  8/20
Horsley [1]  29/4
hour [2]  51/23 52/14
HSN, [1]  39/4
Hull [2]  37/14 37/18
human [1]  15/3
Hunter [1]  19/15
Hurchalla [1]  45/12

**I**

I'd [1]  31/1
I'll [21]
I'm [14]
I've [8]  3/19 28/17 29/24 29/25 33/3
38/6 41/13 49/25
icing [1]  52/3
idea [3]  6/19 28/16 47/1
Ideal [2]  45/19 45/23
ideas [1]  26/18
identified [1]  19/22 21/18 38/8
identify [5]  21/13 22/4 29/20 30/3
32/19
identity [1]  29/10
illegal [2]  17/7 35/25
imagine [2]  32/1 49/5
immaterial [1]  23/11
immune [4]  14/13 15/19 19/2 19/5
immunity [3]  14/11 14/16 19/12
immunize [1]  15/6
impairment [1]  38/3
implausible [3]  22/12 36/15 41/15
implicate [1]  18/21
implication [9]  14/8 42/7 42/8 42/12
42/16 42/17 42/21 47/24 48/10
implied [7]  7/14 42/13 48/6
imply [3]  42/10 42/14 47/23
improper [2]  17/3 36/4
improperly [1]  23/4
In Re [2]  16/4 33/23
Inc [7]  25/7 35/20 39/4 41/9 45/19
45/20 47/10
Inc. [1]  46/9
included [2]  3/22 3/25
includes [1]  41/6
including [5]  8/1 21/19 35/24 52/1

52/24
incompatible [1]  32/25
incorporation [1]  11/22
incorrect [4]  6/4 6/5 6/6 13/19
Indeed [1]  36/14
indication [1]  17/18
individual [1]  21/4
individually [1]  22/10
individuals [1]  19/13
infamous [5]  8/2 26/3 32/25 33/5
33/17
inference [4]  9/11 9/16 34/9 35/17
inferences [2]  7/22 10/17
inflicted [1]  38/2
informal [2]  51/12 51/13
information [7]  9/12 9/13 13/23 28/11
30/18 30/23 31/10
initial [5]  16/6 19/20 19/25 31/19 45/5
injure [6]  8/4 25/16 26/5 33/7 46/25
47/9
injured [1]  30/6
injuries [1]  13/17
injurious [1]  37/11
injury [8]  25/23 32/22 38/8 39/15
39/18 39/20 41/14 41/19
innuendo [7]  4/16 25/15 26/2 26/23
27/11 27/12 33/4
instance [2]  32/1 49/5
instant [1]  47/12
instead [1]  32/10
intend [1]  36/21
intended [1]  23/25
intention [1]  47/8
intentional [1]  36/13
intentionally [2]  13/14 47/13
interest [8]  11/1 17/13 45/4 45/11
45/15 45/17 46/2 46/16
interests [1]  47/15
International [1]  25/24
interpretation [3]  5/17 34/14 34/15
interpretations [1]  34/21
interpreting [1]  31/1
intonation [1]  20/17
intracorporate [8]  11/14 18/2 18/4
18/6 18/13 18/21 18/24 49/25
intuitively [1]  49/4
investigation [1]  31/15
invitations [1]  13/22
irrelevant [1]  41/5
issue [4]  11/20 30/25 40/17 46/25
issued [1]  48/14
issues [1]  9/24
item [1]  39/17

**J**

James [2]  2/7 27/3
January [2]  50/24 51/1
Jesus [1]  42/18
Jesus vs. Rapp [1]  42/18
Jet [2]  44/22 47/6
Jews [1]  42/17
Jim [1]  3/12
John [1]  7/1
joint [1]  52/15
judge [26]

Judge King [1]  27/5
Judge Ryskamp [1]  38/6
Judge Ryskamp's [1]  38/13
judgment [3]  5/22 16/10 49/20
Judicial [1]  41/9
July [1]  25/8
Juris [1]  39/13
jurisdiction [1]  40/24
juror [1]  48/5
jury [2]  34/21 47/9
juxtaposes [1]  42/14
juxtaposing [1]  47/25

**K**

K vs. Chapman [1]  24/13
K-L-A-Y-M-A-N, vs. Judicial [1]  41/9
Kaplan [11]
Kaplan's [1]  18/1
Kaufman [1]  2/5
Keys [1]  10/6
kicker [1]  52/3
King [2]  27/4 27/5
Kirk [2]  26/12 29/25
Klayman [2]  41/8 41/8
knowing [6]  6/20 20/14 27/22 31/5
49/1 52/8
knowledge [4]  31/3 31/21 35/18 37/12
Kyle [1]  24/13

**L**

L-E-A-V-I-T-T [1]  38/25
L-E-G-G [1]  38/4
L-O-N-D-O-N-O [1]  47/10
L-O-R-E-N [1]  43/7
lack [1]  43/23
Lake [1]  41/12
language [4]  11/22 26/14 27/7 28/12
LAUDERDALE [5]  1/3 1/7 2/6 2/12
12/9
law [14]
Lawrence [1]  27/3
Lawton [1]  35/13
lawyer [10]  9/4 11/5 11/10 12/24 18/4
19/24 20/5 21/2 21/6 53/5
lawyers [6]  11/11 22/25 45/1 51/17
51/20 52/25
leadership [3]  13/4 17/14 17/23
leave [5]  19/17 25/11 38/7 49/18
51/17
Leavitt [1]  38/25
legal [3]  11/2 23/3 43/12
legally [1]  27/8
Legg [2]  38/4 38/14
letter [70]
letterhead [1]  48/15
liability [3]  14/14 15/19 20/3
liable [5]  14/19 19/24 34/24 39/13
49/8
liar [1]  6/23
Licul [8]  2/2 3/5 41/22 50/5 50/22
51/10 52/21 53/15
light [2]  20/18 47/16
limit [1]  10/15
limited [2]  43/3 43/19
link [2]  21/11 22/3

**L**

linked [1]  21/21
Linking [1]  21/10
liquidated [2]  38/19 39/9
listener [1]  45/17
litigate [1]  53/13
LLP [4]  2/2 2/5 2/8 3/6
local [1]  47/14
Lockheed [1]  18/10
Londono [1]  47/10
Loren [1]  43/7
loss [10]  38/19 38/20 39/3 39/10
 39/16 39/23 39/24 39/24 39/24 39/25 40/12
losses [3]  37/24 38/12 40/20
love [1]  18/19
lumps [2]  23/2 24/4

**M**

M-I-C-H-E-L [1]  35/19
Madison [1]  50/17
magic [1]  31/18
magistrate [2]  51/14 53/14
maintain [1]  44/5
maintains [1]  13/12
malice [11]
malicious [6]  15/1 15/14 15/22 16/15
 17/18 46/22
maliciously [2]  17/22 47/13
man [3]  6/17 30/11 30/11
management [4]  14/21 15/8 34/2
 45/23
Management, [1]  45/19
Management, Inc [1]  45/19
manager [3]  12/11 12/15 12/18
managerial [2]  43/21 44/3
managers [1]  45/1
manner [3]  15/2 45/18 46/7
Marbury [1]  50/17
Marbury vs [1]  50/17
March [1]  38/22
March 24th [1]  38/22
mark [1]  40/8
marker [1]  31/23
Martin [2]  18/10 41/7
Mason [2]  38/4 38/14
MATESIC [8]  1/10 2/5 3/10 12/21
 14/13 15/19 21/21 22/15
matter [13]
matters [1]  45/11
McAndrew [1]  18/10
McAndrew vs. Lockheed [1]  18/10
McClosky [1]  38/16
mean [4]  31/2 51/24 51/25 52/6
meaning [6]  4/15 31/11 33/11 34/22
 35/5 37/5
meanings [1]  35/3
means [5]  26/23 34/11 35/15 48/7
 52/15
meant [2]  27/25 29/23
mechanical [1]  1/24
mediation [1]  50/24
mediator [1]  51/14
meet [4]  13/22 15/24 33/16 33/21
member [3]  12/8 12/22 12/23

members [3]  12/6 34/6 45/3
mere [1]  49/13
merge [1]  43/15
merits [1]  33/24
method [1]  34/4
methods [2]  17/8 36/1
Miami [2]  2/9 27/9
Michel [1]  35/19
microphone [1]  4/19
Middle [6]  25/7 38/22 39/1 39/5 40/11
 41/7
Middlebrooks [1]  40/16
mild [1]  26/15
Miller [1]  4/13
minimal [1]  17/11
minute [1]  52/6
minutes [3]  51/25 52/4 52/9
misconduct [1]  47/23
mismanaging [1]  13/1
miss [1]  40/7
missives [1]  31/13
mixed [1]  46/7
moment [2]  11/9 11/15
monetary [1]  14/19
money [3]  53/9 53/10 53/11
motion [32]
motivated [1]  45/25
motive [2]  46/24 47/7
move [2]  7/12 16/13
moved [1]  14/9
Mr [2]  4/18 21/3
Mr. [24]
Mr. Block [3]  12/7 12/10 29/1
Mr. Dial [6]  3/23 31/3 32/22 50/12
 51/5 53/24
Mr. Kaplan [7]  3/17 9/23 9/25 11/16
 50/14 51/7 54/1
Mr. Kaplan's [1]  18/1
Mr. Licul [6]  41/22 50/5 50/22 51/10
 52/21 53/15
Mr. Smith [1]  7/2
Mrs. [1]  30/21
Mrs. O'Neal [1]  30/21
multiple [5]  23/9 23/14 23/14 24/24
 34/20
multiplicity [1]  18/9
mutual [2]  45/11 46/16

**N**

N, [2]  26/6 41/9
name [16]
named [7]  6/17 22/10 27/19 29/18
 30/4 31/22 32/1
namely [1]  27/16
names [2]  30/20 43/11
natural [1]  4/15
nature [2]  26/12 47/5
necessary [2]  18/9 43/16
needlessly [1]  22/12
needn't [1]  40/7
nefarious [1]  34/11
negating [1]  18/8
neighbors' [1]  36/16
neither [5]  8/21 26/15 34/2 42/11
 44/25

New York [3]  35/21 49/12 49/12
news [2]  26/19 30/19
nice [2]  10/5 54/3
nine [2]  6/24 14/10
ninth [2]  49/21 50/1
Nodar [1]  46/4
none [4]  20/1 21/3 28/15 36/18
normally [1]  46/8
note [2]  19/4 31/17
Note 8 [1]  19/4
noted [2]  4/10 29/8
notice [2]  23/22 52/16
November [4]  40/23 52/13 52/13
 53/18
number [12]
Number 24-1 [1]  12/14
Number 24-2 [2]  13/11 28/5
numerous [1]  47/13
nursery [5]  30/15 30/19 30/21 31/6
 31/7
NY [1]  2/3
NYP [1]  35/20

**O**

O'Neal [2]  30/12 30/21
objection [2]  50/11 50/13
obligations [1]  42/4
obtain [3]  13/17 17/8 36/1
obtained [7]  7/16 7/17 9/1 17/9 34/10
 48/2 48/6
obtainment [1]  34/4
occasion [2]  45/18 45/24
occurrence [1]  26/11
October [2]  1/8 3/1
OCTOBER 26 [1]  3/1
odd [2]  49/7 49/16
offenses [1]  7/15
Office [1]  23/20
officer [7]  14/18 14/21 14/22 14/23
 15/21 16/12 41/24
officer's [1]  14/24
officers [2]  16/1 45/1
official [3]  2/11 15/10 54/24
officials [1]  47/14
offline [1]  52/1
Oh [2]  10/9 10/11
omission [1]  15/1
omitting [1]  42/16
one's [5]  10/22 12/5 16/11 22/24
 33/17
one-hour [1]  52/14
one-sentence [1]  20/22
opinion [2]  5/16 38/14
opportunity [1]  39/24
options [1]  52/24
order [4]  7/1 27/17 50/10 52/17
organizational [2]  14/21 15/8
Orlando [1]  40/9
Ortega [1]  27/1
others' [1]  52/7
outstanding [1]  53/4
owner [14]
owner's [3]  17/2 17/4 30/16
owners [14]
owners' [9]  13/16 17/8 34/3 34/12

**O**

owners'... [5]  36/1 36/3 36/20 48/2
 48/3

**P**

P-E-A-R-S-O-N [1]  40/9
P-E-D-E-R-S-E-N [1]  37/19
P-H-A-R-M-A-S-P-R-I-T-Z [1]  40/13
P.A [1]  2/2
p.m [3]  1/9 3/1 54/10
PA [1]  38/17
page [16]
pages [7]  9/20 21/15 33/2 35/8 45/5
 47/11 48/17
Palm [1]  23/19
papers [2]  3/22 3/25
paragraph [18]
Paragraph 32 [1]  20/16
paragraph 33 [1]  16/23
paragraph 34 [2]  16/25 36/5
paragraph 43 [2]  17/6 35/24
paragraph 47 [2]  17/12 36/6
paragraph 49 [2]  17/16 36/8
paragraph 59 [1]  25/4
paragraphs [13]
parents [2]  30/20 31/7
part [4]  20/9 28/23 50/3 50/4
particularity [1]  39/16
parties [6]  39/21 47/14 49/2 52/14
 52/15 53/12
parties' [1]  42/23
party [8]  25/22 37/6 37/22 42/10
 42/22 43/13 44/12 45/7
party's [1]  16/6
passwords [2]  9/10 9/15
patrons [1]  30/19
Pause [2]  4/5 4/25
pay [1]  53/9
Pearson [1]  40/9
pecuniary [4]  38/19 39/20 40/2 40/7
Pedersen [1]  37/18
people [4]  6/17 6/23 22/4 28/24
per se [18]
perform [2]  14/23 14/24
perhaps [1]  16/9
peril [1]  42/2
perked [1]  22/25
Perry [1]  33/13
person [25]
person's [1]  31/23
personal [7]  14/13 14/16 19/8 20/7
 38/9 39/18 46/1
personally [1]  14/18
persons [5]  21/13 27/22 29/23 30/7
 43/5
persuasive [2]  42/11 44/21
pertain [1]  27/12
PharmaSpritz [1]  40/13
phase [3]  19/19 21/6 45/12
Phillips [1]  25/6
Phillips vs [1]  25/6
phone [1]  51/20
plainly [3]  15/17 16/14 21/17
plaintiff [47]

plaintiff's [11]
plaintiffs [1]  53/22
plausible [3]  29/3 40/20 41/2
plausibly [3]  33/25 36/9 41/20
played [1]  24/8
plead [4]  25/17 26/10 35/8 40/12
pleaded [3]  37/12 39/17 40/25
pleader's [2]  27/4 27/6
pleading [6]  10/18 23/1 23/2 23/9 25/5
 25/10
pleadings [1]  23/21
pocket [2]  37/24 38/12
point [10]  6/10 6/12 7/9 7/25 10/22
 10/23 32/22 34/19 41/12 45/12
pointed [2]  21/18 27/22 34/14 48/24
pointing [1]  32/11
points [3]  4/7 4/16 5/8
policy [2]  14/21 15/8
poor [1]  10/15
population [1]  22/7
position [2]  10/13 49/4
possession [1]  12/20
possibilities [1]  52/20
potential [1]  43/14
potion [1]  31/19
practicing [1]  10/24
precedent [1]  25/6
preceding [5]  23/5 23/10 24/25 25/2
 25/9
precise [4]  22/13 22/19 31/25 32/8
prejudice [4]  25/11 37/9 41/23 42/3
preliminary [1]  33/15
premise [2]  4/11 4/12
prepare [1]  10/15
prepared [1]  3/20
presence [3]  34/16 34/16 50/18
present [1]  4/1
presented [1]  16/6
presume [1]  32/16
presumed [1]  26/11
primary [2]  46/24 47/7
principles [1]  19/18
prison [1]  11/12
privacy [3]  32/14 34/7 48/3
privilege [9]  45/6 45/10 45/14 45/21
 46/2 46/3 46/6 46/15 47/19
privileged [2]  45/3 45/24
proceed [2]  50/19 52/22
proceedings [3]  1/24 54/10 54/21
process [1]  20/15
procurement [1]  9/13
produced [1]  1/25
profession [7]  8/5 25/17 26/6 32/22
 32/25 33/7 33/18
professionals [1]  6/4
progress [1]  5/16
project [7]  5/16 12/12 13/1 13/20 28/5
 28/7 36/17
prong [7]  15/23 16/13 16/14 17/24
 33/18 33/21 52/19
proper [2]  45/18 45/18
properly [1]  46/6
property [4]  12/11 12/15 12/18 15/3
proposition [7]  22/11 23/7 27/16 33/23
 39/11 40/6 49/20

protect [2]  46/1 46/24
prove [4]  5/10 6/13 26/10 39/6
proved [3]  37/12 37/17 37/23
proven [2]  37/25 38/23
provide [3]  21/14 22/11 22/13
provided [1]  13/23
public [2]  45/11 46/16
publication [19]
publications [3]  29/6 29/9 48/11
publish [2]  48/13 49/15
published [12]
publishing [2]  27/9 48/21
purported [1]  43/13
purposeful [1]  36/12
purposes [4]  8/15 11/2 48/8 49/2
pursuant [1]  54/19
Putnam [1]  46/10
puts [1]  49/13

**Q**

qualified [4]  45/10 45/14 45/21 46/15
qualifies [1]  16/11
quality [1]  27/8
question [10]  8/20 9/3 9/4 46/6 46/7
 47/9 52/25 53/4 53/8 53/14
quickly [1]  50/7
quod [9]  14/7 37/2 37/3 37/9 37/16
 37/21 38/24 39/2 41/21
quote [1]  14/17
quoting [3]  19/15 35/21 43/25

**R**

R-A-P-P [1]  42/18
R-O-W-L-A-N-D [1]  34/23
R-U-D-E-N [1]  38/16
raise [2]  16/1 42/2
raised [3]  16/3 16/6 32/22
raising [2]  12/11 14/10
Rapp [1]  42/18
Rat [1]  29/19
Rat,' [1]  29/21
re [3]  16/4 25/1 33/23
re-alleges [1]  25/1
reach [1]  33/24
reaching [1]  37/20
read [6]  3/18 3/19 4/11 13/9 24/16
 39/12
reader [2]  35/5 45/17
readers [1]  31/20
readily [2]  29/10 29/11
reading [3]  29/8 29/23 30/18
ready [1]  50/25
realized [2]  38/19 39/9
reasons [5]  17/25 25/13 36/24 38/10
 42/25
rebuffed [1]  13/22
received [4]  22/5 22/6 30/18 30/22
receiving [4]  28/10 30/7 30/9 30/23
recently [3]  28/4 28/7 32/11
recipient [1]  31/9
recipients [3]  28/9 38/20 41/16
recipients' [1]  46/17
reckless [4]  16/24 17/20 35/18 36/11
recklessly [1]  15/22
recklessness [3]  14/25 15/13 16/15

**R**

recognized [1]  43/4
recognizing [2]  30/4 39/8
record [2]  6/7 54/21
recorded [1]  1/24
refer [1]  29/23
reference [2]  27/20 28/3
references [1]  30/6
referencing [2]  5/10 6/14
referred [5]  27/21 27/23 30/11 30/24
 34/25
referring [4]  28/13 29/1 31/21 32/4
Regional [1]  40/10
reject [5]  6/10 7/5 32/18 48/18 50/1
rejected [4]  27/15 29/16 30/2 50/1
rejecting [2]  39/6 44/24
relief [1]  24/1
relies [2]  25/15 43/12
rely [2]  26/23 31/20
remains [1]  34/4
remark [1]  21/12
remarks [5]  10/14 21/10 21/19 21/21
 34/9
remember [2]  34/4 53/7
render [1]  24/15
rendered [1]  40/19
repair [1]  39/8
replete [1]  23/11
reply [3]  16/2 16/4 16/7
reporter [4]  2/10 2/11 43/10 54/24
reporting [1]  47/8
representation [3]  19/2 19/12 20/5
represented [1]  11/4
representing [1]  11/5
reputation [8]  16/18 17/17 38/3 38/9
 39/8 39/16 39/16 40/19
reputational [4]  38/13 40/3 41/14
 41/19
required [2]  31/5 40/2
requirement [3]  7/4 22/12 41/1
requisite [1]  44/8
reraise [2]  16/8 49/18
resembling [1]  44/20
resolve [1]  50/21
resolving [1]  50/16
resort [2]  17/7 35/25
resorted [3]  13/1 17/14 36/5
response [3]  13/6 38/9 39/21
rest [1]  3/18
rests [1]  23/24
result [3]  8/15 34/5 37/22
revealed [1]  9/8
reversing [1]  34/24
review [1]  50/9
reviewed [1]  13/22
revulsion [1]  41/17
ridicule [5]  8/3 8/13 26/4 33/6 33/19
rights [1]  15/3
rise [2]  35/16 46/2
rises [1]  26/1
RKA [1]  1/4
RMR [2]  2/10 54/24
RMR-CRR [1]  54/24
robbery [1]  24/19

role [2]  24/6 24/8
Rolled [1]  25/9
Room [1]  2/12
Rosenberg [1]  44/24
Rosenberg's [1]  47/5
routinely [1]  47/4
Rowland [1]  34/23
Roy [1]  1/17
Ruden [1]  38/16
rule [3]  3/20 38/18 42/4
Rule 11 [1]  42/4
ruling [1]  50/9
Russell [1]  38/17
Ryskamp [2]  38/6 38/14
Ryskamp's [1]  38/13

**S**

S, [1]  35/13
S-A-L-I-T, vs. Ruden [1]  38/16
S-A-N-T-A-R-S-I-E-R-O [1]  41/6
S-C-H-E-R-E-R [1]  18/16
S-C-H-U-L-S-O-N [1]  24/1
safety [1]  15/3
sales [1]  38/20
Salit [1]  38/15
Salopek [3]  2/10 54/23 54/24
Santarsiero [1]  41/6
satisfy [1]  17/24
saver [1]  10/8
savers [1]  10/10
scheduled [1]  50/24
Scherer [1]  18/16
school [2]  30/16 30/17
Schulson [1]  24/1
Schuster [1]  38/16
scope [4]  19/2 19/12 20/5 20/24
screen [4]  4/2 10/1 10/8 10/10
se [21]
second [24]
Section [4]  14/17 39/14 39/19 54/19
Secundum [1]  39/13
security [8]  9/9 32/14 34/7 34/15
 46/17 46/25 48/5 48/7
selects [1]  49/13
send [3]  27/5 29/12 49/14
sending [2]  22/18 24/9
sends [1]  49/11
sense [7]  26/16 31/17 33/13 49/5
 51/17 51/18 53/15
sentence [1]  20/22
series [2]  8/24 42/14
serious [1]  9/9
serves [1]  46/12
services [3]  11/2 44/22 47/6
settings [3]  32/14 34/7 48/5
settle [5]  8/20 51/21 52/20 52/21
 52/23
settled [4]  52/18 52/24 53/6 53/13
settlement [6]  51/12 51/13 51/23
 52/14 52/17 53/2
seven [1]  47/6
seventh [1]  42/6
Shabbat [2]  6/17 6/18
share [2]  4/2 10/1
Sheriff's [1]  23/19

shotgun [8]  10/18 11/21 22/25 23/2
 23/9 23/21 25/5 25/10
shown [1]  37/13
side [2]  5/21 5/21
signed [2]  13/25 48/15
significance [1]  26/8
sincerely [1]  14/1
single [3]  31/5 43/15 44/18
singled [1]  28/23
situation [4]  9/15 28/25 44/9 44/20
sixth [1]  37/2
sixty [3]  51/25 52/3 52/9
slander [3]  39/2 39/13 39/22
slide [1]  4/6
slides [2]  3/25 9/22
slowly [1]  43/11
smart [1]  40/16
Smith [4]  7/1 7/2 38/16 38/21
So. [3]  27/9 43/7 45/13
So. 2d [1]  27/9
So. 3d [1]  45/13
So.2d [17]
social [2]  36/21 46/1
society [1]  31/24
sole [2]  19/7 20/6
Someone's [1]  14/3
sooner [1]  51/1
sought [1]  17/17
sounds [1]  5/2
source [1]  34/3
South [1]  2/8
SOUTHERN [7]  1/2 27/2 38/5 40/15
 40/22 41/10 44/23
speaker [5]  4/24 35/12 45/15 45/16
 45/25
speakers [1]  22/3
special [23]
specific [5]  7/20 7/21 9/24 32/8 37/25
 38/20 50/23
specify [1]  23/24
specifying [1]  23/15
spell [1]  43/10
spent [1]  52/1
stacking [1]  7/22
stage [5]  25/19 28/17 35/15 36/23
 48/23
standard [2]  22/21 46/12
standing [1]  38/3
stands [1]  10/17
stare [1]  51/24
starters [1]  40/4
starts [1]  22/14
state [6]  7/14 25/13 25/20 38/23 42/8
 48/8
stated [2]  41/2 42/13
statement [22]
statements [21]
states [5]  1/1 1/18 2/11 13/21 54/20
statute [4]  14/16 15/3 15/5 15/20
statutes [2]  7/21 14/17
Stein [1]  39/18
stenography [1]  1/24
stipulation [1]  53/1
stock [1]  10/9
stop [2]  17/3 29/7

**S**

stories [1]  30/19
straightforwardly [1]  25/5
strategizing [1]  52/2
stretch [3]  7/18 7/19 7/20
strictly [1]  18/13
strictures [1]  42/4
subject [11]
subject-matter [1]  40/24
subjected [1]  33/19
submitted [1]  3/19
subsequent [2]  16/9 49/19
subset [1]  22/6
successive [1]  23/5
suffer [1]  41/19
suffered [1]  41/14
sufficient [7]  27/24 30/6 30/8 35/16
 41/20 47/18 48/8
sufficiently [2]  29/22 30/3
suggesting [1]  41/18
suggests [2]  13/15 28/24
suit [1]  15/6
Suite [2]  2/6 2/9
Sullivan [1]  35/21
summary [4]  4/16 5/22 16/10 49/19
support [7]  22/11 23/25 27/5 38/15
 39/11 48/13 49/20
supported [1]  27/7
Supreme [6]  26/20 27/10 37/19 42/19
 46/5 47/11
susceptible [3]  29/8 33/10 35/3
sustain [1]  37/13
sustained [1]  39/20
switch [1]  4/23
Systems [1]  40/10

**T**

T, [1]  38/16
take [7]  5/23 8/18 14/20 21/7 36/22
 53/12 54/4
taken [2]  10/2 39/21
takes [1]  10/17
tale [1]  29/18
talk [1]  8/9
talked [1]  31/3
talking [3]  6/25 32/6 44/18
talks [1]  24/10
tallest [3]  6/22 6/25 7/3
tell [4]  15/16 41/22 43/18 53/1
telling [5]  6/7 9/6 9/11 9/16 52/16
tends [7]  8/3 8/4 8/13 26/4 26/5 33/5
 33/7
testimony [1]  39/7
text [1]  10/15
Thank [7]  4/4 8/23 10/11 10/21 33/1
 54/5 54/6
Thankfully [1]  28/16
Thanks [1]  10/4
theory [1]  38/24
thereby [2]  18/8 29/10
therefor [1]  28/9
they'd [1]  6/19
think [16]
thinking [1]  51/2

thinks [1]  9/14
third-party [1]  25/22
thoroughly [2]  13/3 17/13
thoughts [1]  30/25
thus [4]  20/18 32/9 43/23 46/24
tie [1]  6/20
till [1]  52/12
time [14]
times [4]  24/19 35/21 49/12 49/12
Times vs. Sullivan [1]  35/21
Title [1]  54/20
today's [1]  50/4
top [1]  33/9
tort [1]  35/12
total [1]  52/3
totally [2]  34/19 41/5
towards [1]  8/6
Tower [6]  12/8 12/11 12/16 13/7
 20/15 22/5
trade [4]  8/5 26/6 33/7 33/17
transcript [6]  1/16 1/24 27/6 50/8
 50/10 54/21
treat [1]  52/7
Treatise [1]  39/19
treatises [2]  39/12 39/13
trial [2]  5/20 5/22
Tribune [1]  30/12
trier [3]  33/11 35/4 46/8
true [22]
Trujillo [1]  27/1
Trujillo v. Banco [1]  27/1
truth [1]  6/8
truthful [1]  8/25
TUESDAY [2]  2/15 52/11
Turkey [3]  47/10 47/15 47/17
Turning [1]  42/23

**U**

ultimately [1]  36/18
unauthorized [2]  20/16 21/1
unavailing [1]  25/18
unclear [1]  34/25
underlying [1]  49/23
understand [5]  7/1 7/9 27/1 27/21
 27/23
understanding [1]  28/25
understood [7]  26/16 28/20 29/24
 33/12 35/5 42/4 42/5
unfortunately [1]  11/11
unifying [1]  23/21
unique [1]  31/23
unit [22]
UNITED [4]  1/1 1/18 2/11 54/20
unknown [1]  34/4
unlawful [2]  17/2 36/4
unlawfully [2]  13/16 17/4
unless [6]  3/21 5/24 14/22 15/20 27/4
 27/6
unpersuasive [2]  19/19 21/16
unprotected [1]  35/11
unsurprisingly [1]  44/19
untrue [1]  6/18
updating [1]  34/6
urging [1]  48/4
us [5]  19/17 22/20 35/6 37/1 38/7

**V**

v. [6]  19/15 27/1 27/9 37/14 43/7 47/6
vague [1]  23/11
Valdi [2]  2/2 3/5
Valencia [1]  25/24
Valencia vs. Citibank [1]  25/24
vanishes [1]  45/21
via [1]  35/23
victim [1]  26/10
view [5]  10/5 10/16 10/22 11/14 38/14
viewed [1]  20/18
Village, [1]  45/20
Village, Inc [1]  45/20
violated [1]  7/14
violation [1]  7/20
visible [1]  34/16
Voluck [1]  2/5
vote [1]  14/20
vs. [34]
vs. Avrich [1]  40/21
vs. Cole [1]  38/25
vs. Galbreath [1]  46/4
vs. Lake [1]  45/12
vs. Martin [1]  41/7
vs. NYP [1]  35/20
vs. Orlando [1]  40/9
vs. Scherer [1]  18/16
vs. Tribune [1]  30/12
vs. Turkey [1]  47/10
vs. Windham [1]  23/17

**W**

W-E-I-L-A-N-D [1]  23/19
waived [5]  8/15 16/4 16/7 16/12 33/20
waiver [1]  33/23
walk [1]  52/6
Walker [1]  38/4
Walter [3]  44/22 46/7 47/9
Walter v. Jet [1]  47/6
Walter vs. Jet [1]  44/22
Walter's [1]  47/8
wanton [1]  15/2
warning [1]  48/3
Watch, [1]  41/9
Watch, Inc [1]  41/9
water [1]  47/21
website [2]  29/10 31/6
week [3]  51/3 51/11 52/10
weeks [3]  50/9 51/10 53/18
Weiland [1]  23/19
Wells [2]  26/6 33/8
Westlaw [1]  40/14
whereas [2]  32/6 38/1
who's [2]  3/3 3/8
whoa [1]  41/8
widely [1]  27/15
Wigdor [2]  2/2 3/6
willful [1]  15/2
willing [3]  50/25 53/9 53/12
Windham [1]  23/17
winner [2]  22/24 24/22
wins [1]  15/17
witnesses [2]  30/18 31/12
WL [6]  25/7 38/21 39/4 40/22 41/7

**W**

WL... [1] 44/22
Wolfson [2] 26/12 29/25
Wolfson v [1] 26/12
Wolfson vs. Kirk [1] 29/25
Wood [1] 38/4
word [1] 31/1
words [5] 4/14 17/19 26/15 30/5 45/24
work [3] 21/1 51/3 53/19
working [2] 10/3 20/20
works [1] 51/6
Worldwide [1] 23/17
writer [2] 49/6 49/8
writes [1] 49/6
written [1] 38/6
wrong [1] 24/11
wrongful [3] 17/7 36/1 48/7
wrongfully [2] 13/16 17/4
wrote [1] 22/1

**Y**

yell [1] 51/15
York [5] 2/3 12/8 35/21 49/12 49/12
you'd [1] 3/22

**Z**

Zeena [1] 2/8
Zoom [1] 1/16