UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FILED BY_____ D.C.
JUN 26 2023
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

CANDYCE ABBATT,

   Counter-Plaintiff,

-v-

FREDERIC BLOCK,

   Counter-Defendant.

Civil Action No: 2161032-CV

**Jury Trial Demanded**

CANDYCE ABBATT
IN PRO SE
32770 Franklin Road Suite 200
Franklin MI 48025
248-847-3803
cabbatt@famfirm.com

## COUNTER-COMPLAINT

Counter-Plaintiff CANDYCE ABBATT, in her Complaint against Counter-Defendant FREDERIC BLOCK, states as follows:

### BACKGROUND

1. Counter-Plaintiff "Plaintiff/Abbatt" has been a licensed attorney in good standing in Michigan since 1983.

2. Abbatt is a Michigan resident.

3. Counter-Defendant "Defendant/Block" is a resident of New York, but owns a condominium located in Tower One of the Palms, Condominium, Fort Lauderdale, Florida.

1

4. Plaintiff Abbatt brings this action not as an attorney, but as an individual *in pro se.*

5. Plaintiff and her husband are co-owners of a condominium in The Palms Condominium Tower One, located in Fort Lauderdale, Florida which they purchased in 2010.

6. The address of the Abbatt condominium is Unit 20B, Tower One, 2100 North Ocean Blvd, Fort Lauderdale, Florida 33305.

7. In summary, this action stems from a concerted and intensive pattern of harassment, defamation, slander, false accusation, and invasion of privacy by Defendant Block against Abbatt commencing in August of 2020 continuing through May of 2023 and beyond.

8. All transactions and occurrences related to the allegations in this Counter-Complaint took place in the State of Florida.

9. Abbatt served as duly elected board member and treasurer of the Palms Tower One Condominium Association Board from January 2018 to March 2020.

10. All payment transactions authorized by Abbatt as treasurer were issued after review and approval of the underlying invoices and documentation by the management company under contract at the time, DSSC and the Tower One board president.

11. At the time Abbatt left the board, the estimated date of completion of the Hurricane Irma repair project was December of 2020.

12. Under the "leadership" of the subsequent Board, of which Block was a member, the repair project remains incomplete and unit owners were charged extraordinary assessments in 2023.

13. In the meantime, the infrastructure of the twenty-year-old condominium building suffers for lack of maintenance and repair.

14. From July 2020 to March 2021, and after November 8, 2022, Counter-Defendant Block acted as an individual and not as a representative nor member of the Palms Tower One Association Board.

15. From March 2021 to November 8, 2023, Counter-Defendant Block acted as a representative member of the Palms Tower One Association Board.

16. Defendant Block was elected to the Palms Tower One Association Board in March 2021.

17. Prior to the end of his term, Defendant Block was recalled as a Tower One Board Member by a Summary Final Order issued by the State of Florida Department of Business and Professional Regulation Division of Florida Condominiums, Timeshares and Mobile Homes, dated November 8, 2022, which states in pertinent part:

**"ORDERED AND ADJUDGED that the recall is certified. Board members Frederick Block and Robert Fink are immediately removed from the board, and they shall return all Association and board property in their possession to the board within five (5) days from the date of this order."** *Exhibit 1, Opinion and Order of Keith E. Hope, Arbitrator.*

18. Defendant Block filed a Complaint for Trial *de novo* in accordance with section 718.1255, Florida Statutes in the Broward County Circuit Court.

19. On June 2, 2023, Defendant Block withdrew his Complaint, and a Dismissal with Prejudice was filed, thereby affirming the Arbitration Order recalling him from the condominium board.

20. The following actions of Defendant Block include, but are not limited to the basis for the counts contained in this Counter-Complaint:

    A. On August 15, 2020, Defendant Block disseminated by email to over ninety Palms unit owners and professionals (including Plaintiff Abbatt) a lengthy letter inappropriately written on his official U.S. District Court stationery and sent from his official court email address being *frederic_block@nyed.uscourts.gov*. *Exhibit 2.* A second letter was sent on his personal stationary from his official Court email address.

    B. On December 11, 2022, Defendant Block issued a third letter from his U.S. Courts email address to over ninety recipients reiterating and expanding on his false and defamatory allegations against board members, including Plaintiff Abbatt. *Exhibit 3.*

    C. In said letters Defendant Block falsely, recklessly, and carelessly accused Abbatt, by direct statements and implication, of mismanagement as treasurer and board member of a pending Hurricane Irma reparation of Tower One.

    D. In doing so, Defendant Block accused Abbatt of criminal activity.

    E. The intentional and repeated use of Federal Court stationery and email by Block created the implication to recipients that the opinions contained therein were true, legally correct and endorsed by Block in his official judicial capacity.

F. Block later falsely claimed in his candidacy letter of January 28, 2021 "Only a few of you received these letters (from a handful of email addresses personally known to me) since I did not have access to all of your email addresses." *Exhibit 4.*

G. Block's 2020 letters were emailed to Abbatt at her personal email address cabbatt@aol.com.

H. Block did not 'blind cc" the recipients of the emails and letters, thereby failing to protect the dissemination of private contact information and invading the privacy of Abbatt and others.

I. At the time the 2020 letter was emailed by Block to Abbatt she had never corresponded with Block, nor met him, nor knew of his existence. There was absolutely no reason Abbatt's email would have been in Block's "personal' address book.

J. Abbatt's AOL email address was not publicly known at the time.

K. Abbatt's email for purposes of Palms correspondence on file with the management company in 2020 would have been at the AOL address above.

L. Further said emails were sent from Block's official federal email address, not his personal email address.

M. Abbatt uses a different email for business matters related to her law firm.

N. Abbatt's AOL email was the email of record for official Palms business.

O. At a December 2020 "Town Hall" meeting held by Zoom, Abbatt confirmed with fellow board members and management staff that the private emails of

5

owners had not been given out to non-board members by any of those attending.

P. This was the first time Block appeared at a Town Hall or Board meeting.

Q. Specifically, board member Melvyn Kramer, a close friend of Blocks vehemently denied providing the private email addresses to any unauthorized third parties.

R. On Thursday, December 17, 2020, a duly noticed board meeting was held via zoom and attended by the following board members: David Matesic, Guilio Monaco, Candyce Abbatt, Patricia Heessels, and Melvyn Kramer.

S. The agenda included addressing Defendant Block's letters disseminated to unit members and associated professionals.

T. Joshua Gerstin, the attorney for the board, attended the meeting.

U. Mr. Gerstein, as retained counsel for the board, made specific recommendations regarding the necessity and contexts of a letter to unit owners regarding Block's letters. Pursuant to Mr. Gerstein's recommendation, at the meeting it was agreed and voted upon that Mr. Gerstin would draft a letter addressing Block's allegations and the same would be issued to unit owners via the management company in the usual course of business.

V. Board members Matesic, Monaco, Abbatt and Heessels voted to authorize Mr. Gerstin, as agent of the association, to draft a letter consistent with his recommendation. Kramer abstained from the vote.

6

W. The letter was issued on December 18, 2020, via email to unit owners.

X. Discovery has well established that Abbatt did not author, review nor amend Gerstin's letter before it was sent out. No testimony has been produced to the contrary.

Y. Defendant Block has disseminated the false statement that Abbatt wrote the letter. He has done so outside the context of this litigation, making statements to parties not involved in the litigation, and not for the purpose of discovery or investigation.

Z. The sworn testimony of board attorney Gerstin indicates that he alone drafted the letter in question as authorized by the board by majority vote.

AA. In addition to the actionable and false statements pointing at Abbatt in Block's August and September 2020 letters, Defendant Block issued a board candidacy letter on January 28, 2021, accusing Abbatt and other members of the board of "electioneering" and "illegally" nullifying board election ballots. *See Exhibit 5.*

BB. At Block's behest the letter was included in a mass mailing to all unit owners as part of a pending board election to be held in March 2021.

CC. Defendant Block then filed a Complaint in this action without basis and based upon false and unfounded allegations that Abbatt "went rogue" and acted outside the scope of her authority as a board member, that Abbatt acted in conspiracy to defame Block and other spurious and inflammatory claims.

DD. Defendant Block deliberately excluded board members Monaco, Heessels and Kramer from his litigation based upon his personal relationship with each of them or their families.

EE. Defendant Block then embarked on a time consuming "fishing expedition" in the hopes of substantiating his reckless and unconfirmed claims.

FF. Widespread discovery has taken place in the above matter. All parties, management principals, and potential witnesses have been deposed at length.

GG. Through the course of discovery, Block has been unable to obtain any nexus between Abbatt and authorship of the letter to prove his claims of defamation, nor has he been able to prove conspiracy nor any of his other claims.

HH. Block has told unit owners that Abbatt filed a judicial misconduct complaint against him in retaliation.

II. Abbatt did not file a judicial misconduct complaint against Block.

JJ. David Matesic filed a judicial misconduct complaint against Block which resulted in a finding that Block acted inappropriately in using his position as a U.S. District Court judge to issue communications on official court stationery and email address for matters outside his docket and by offering his services in a pending legal matter between the Association and its insurance companies. No formal disciplinary action was taken against Block, based upon his agreement to discontinue use of official court

        communication methods for personal business and the promise he would not run for reelection to the Palms board in 2023.

KK.  In violation of the Second Circuit's rules regarding confidentiality, Block has openly discussed the judicial misconduct opinion at board meetings and in conversations with unit owners, including but not limited to an open board meeting held on June 14, 2022.

LL.  Once Block was elected to the board in 2020, his harassment of Abbatt escalated.

MM.  Block openly discussed Abbatt at Board meetings and made false and defamatory statements about her tenure as treasurer of the board.

NN.  After issuance of an order for recall of Block as board member, on November 8, 2022, Block filed a Complaint for trial *de novo* against Lee Ann Samia, a unit owner representative in the Broward County Circuit Court. File #160857878, in order to stay in power and maintain his intentional malicious efforts to spread lies about Abbatt.

OO.  In his first Amended Complaint Block continues to make false and defamatory statements about Abbatt without factual basis including that Abbatt had intentionally lied to unit owners to induce them to sign a recall ballot.

PP.  However, Abbatt had nothing to do with the recall other than voting to remove Block. She never lobbied to remove Block and actually did not lie to induce people to vote a certain way.

9

QQ. Counter-Defendant Block told members of the Palms community that Abbatt was "removed" as a board member. This is untrue. Only Block and his friend Fink were removed. Abbatt served her full term without recall or resignation.

RR. On April 18, 2023, Defendant Block mailed, by U.S. Mail, the attached letter addressed to several "Fellow Tower 1 Unit Owner" *Exhibit 6.*

SS. In said letter Block continues to make false allegations and statements about Abbatt which impugn her credibility and reputation.

TT. Block wrote said letter after he was recalled from the board, but while continuing to "squat' in his board position while his lawsuit against Ms. Samia was pending in Broward County Circuit Court. That lawsuit was dismissed on June 2, 2023. *See Exhibit 7.* Block's suit for trial de novo, and refusal to step down from the board were intentional to lend credibility to his vicious attacks against Abbatt.

UU. In said letter Block further includes a misleading quote from this Court's Opinion and Order dated October 26, 2021, extracting language he perceives to be favorable, yet intentionally omitting subsequent language which is not favorable to him in order to mislead unit owners regarding the strength and veracity of his claim against Abbatt.

VV. Finally, to intimidate and offend the parties (and their counsel,) Block appeared on screen half naked for an extended period of time during the Zoom deposition of a third-party witness in this action. *Exhibit 8.*

WW. Block later claimed he did not know his camera was on, but he had appeared numerous times by Zoom in the course of his employment as judge and while acting a board member.

## JURISDICTION AND VENUE

21. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there is a diversity of citizenship among parties and this action involves an amount in controversy in excess pf $75,000, excluding interests and costs.

22. Counter-Plaintiff Abbatt is a citizen of Michigan.

23. Counter-Defendant Block is a citizen of New York.

24. Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in the District.

## PARTIES

25. Counter-Plaintiff, Candyce Abbatt, is a citizen of Michigan.

26. Counter-Defendant, Frederic Block, is a citizen of New York.

## FACTUAL ALLEGATIONS/
## COUNTER-DEFENDANT'S DEFAMATORY STATEMENTS

27. Counter-Plaintiff reincorporates and realizes the allegations set forth in detail above as though fully set forth herein.

28. Such allegations, if true (which they were not), accused Abbatt of committing criminal acts related to the management of funds as treasurer.

29. Counter-Defendant knew his statements were false or at a minimum recklessly disregarded the statements' falsity.

30. In addition, the statements were *per se* defamatory because they accused Abbatt of criminal conduct and impugned Abbatt in her trade and profession.

31. Finally, Counter-Defendant's defamatory statements and subsequent statements were motivated by malice. Counter-Defendant published an *ad hominem* attack up on Abbatt as set forth above.

32. Furthermore, Counter-Defendant maliciously intended to damage Abbatt's reputation, and he either knew or did not care that his accusations against Abbatt were false.

33. Counter-Defendant Block continued (and continues to this day) to spread false rumors about Abbatt and otherwise sought to harm Abbatt's reputation, all of which is further indication of his malicious conduct.

34. Counter-Defendant obviously knows and simply does not care (and never did) that his statements concerning Abbatt were false. He is only concerned with protecting his fragile ego and promoting "money grab" litigation from Abbatt and the Palms Association.

## COUNT 1
### *(Defamation Per Se)*
### **Against Counter-Defendant Block**

35. Counter-Plaintiff hereby repeats and realleges each and every allegation in the proceeding paragraphs as set for the fully herein.

36. Counter-Defendant Block's defamatory statements and slander are intended and understood to implicate Abbatt's moral character and professional code of ethics.

37. A reasonable reader of Counter-Defendant Block's published false statements concerning Abbatt would conclude that Abbatt committed felonies under Florida and Federal Law.

38. Counter-Defendant Block's false statement concerning Abbatt injured her in her office, occupation, business, and/or employment.

39. Counter-Defendant Block's false statements concerning Abbatt imputed to her conduct and characteristics incompatible with Abbatt's lawful exercise of her occupation.

40. Counter-Defendant Block's statements concerning Abbatt caused serious injury to her professional and personal reputations.

41. Counter-Defendant Block's defamatory statements were so obviously defamatory and damaging to Abbatt's reputation that they gave rise to an absolute presumption of both malice and damages.

42. As a direct and proximate result of Counter-Defendant Block's defamatory statements, Counter-Plaintiff Abbatt has suffered and continues to suffer

13

reputational harm for which she is entitled to an award of damages to the greatest extent permitted under law, including but not limited to punitive damages.

## COUNT 2
### (Defamation *Per Quod*)
### *Against Counter-Defendant Block*

43. Counter-Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

44. Counter-Defendant Block knew his published statements concerning Abbatt were false.

45. Alternatively, Counter-Defendant recklessly disregarded the falsity of his published statements concerning Abbatt.

46. In making these statements concerning Abbatt, Counter-Defendant Block acted with actual malice.

47. As a direct and proximate result of Counter-Defendant Block's defamatory statements, Abbatt has suffered and continues to suffer harm for which she is entitled to an award of damages to the greatest extent permitted under law, including but not limited to punitive damages.

## COUNT 3
### (Defamation by Implication)
### *Against Counter-Defendant Block*

48. Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

49. Counter-Defendant Block's published statements concerning Abbatt created false suggestions, impressions, and/or implications about her.

50. Counter-Defendant Block's published statements concerning Abbatt juxtaposed a series of facts that implied a defamatory connection between them.

51. Counter-Defendant Block further created a defamatory implication by omitting certain facts.

52. As a direct and proximate result of Counter-Defendant Block's defamatory conduct, Abbatt has suffered and continues to suffer for harm for which she is entitled to an award of damages to the greatest extent permitted under law, included but not limited to, punitive damages.

**PRAYER FOR RELIEF**

RELIEF SOUGHT:

A. A declaratory judgment that the actions, conduct, and practices of Counter-Defendant Block complained herein violate the laws of the State of Florida;

B. Award compensatory damages to Abbatt for harm and reputation, emotional distress, and financial losses;

C. Award punitive damages against the Counter-Defendant Block to deter similar conduct in the future;

D. An injunction and order permanently restraining Counter-Defendant and any and all persons acting in concert with him from engaging in any such further unlawful conduct;

E. An award of monetary damages for reputational harm;

F. Prejudgment interest on all amounts due;

G. An award of Counter-Plaintiff's reasonable attorneys' fees and costs;

H. Award attorney fees and costs incurred by the Plaintiff in prosecuting this action; and

I. Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Counter-Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: June 22, 2023

Respectfully submitted:

*/s/ Candyce Abbatt*

CANDYCE ABBATT
In Pro Se