UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

------------------------------------------------------------ X
DAVID MATESIC                                  :
                                               :
        Counterclaim-Plaintiff,        :     Civil Action No.: 21-cv-61032 (RKA)
                                               :
    v.                                     :
                                               :
FREDERIC BLOCK,                                :
                                               :
        Counterclaim-Defendant.        :
------------------------------------------------------------ X

**COUNTERCLAIM-DEFENDANT FREDERIC BLOCK'S REPLY TO COUNTERCLAIM-PLAINTIFF DAVID MATESIC'S RESPONSE TO MOTION TO DISMISS DAVID MATESIC'S COUNTERCLAIMS, AND INCORPORATED MEMORANDUM OF LAW**

**WIGDOR LLP**

Alfredo Pelicci

Douglas H. Wigdor
Valdi Licul
John S. Crain
(all admitted *pro hac vice*)

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845

*Counsel for Counterclaim-Defendant*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

EXPRESS MALICE ................................................................................................................1

PARTICULAR STATEMENTS ..............................................................................................1

OPINION ..................................................................................................................................2

DEFAMATION PER QUOD ...................................................................................................5

STATUTE OF LIMITATIONS ................................................................................................6

CONCLUSION .........................................................................................................................9

# TABLE OF AUTHORITIES

Cases                                                                                                                   Page(s)

Brown Jordan Int'l Inc. v. Carmicle,
   No. 014 Civ. 60629 (BR), 2015 WL 6123520 (S.D. Fla. Oct. 19, 2015) ................................... 1

Daniels v. HSN, Inc.,
   No. 818 Civ. 3088-T24 (JSS), 2020 WL 533927 (M.D. Fla. Feb. 3, 2020) .............................. 5

Enigma Software Grp. USA, LLC v. Bleeping Computer LLC,
   194 F. Supp. 3d 263 (S.D.N.Y. 2016) ...................................................................................... 6, 7

Ethredge v. Hail,
   56 F.3d 1324 (11th Cir. 1995) ....................................................................................................... 3

Floyd v. Home Depot U.S.A., Inc.,
   274 F. App'x 763 (11th Cir. 2008) ................................................................................................ 1

In re Davis,
   347 B.R. 607 (W.D. Ky. 2006) ...................................................................................................... 7

Larue v. Brown,
   235 Ariz. 440, 333 P.3d 767 (Az. Ct. App. 2014) ....................................................................... 7

Martinez v. Netflix, Inc.,
   No. 20 Civ. 24328 (WPD), 2023 WL 2630337 (S.D. Fla. Feb. 23, 2023) .............................. 1, 4

Parekh v. CBS Corp.,
   820 F. App'x 827 (11th Cir. 2020) ................................................................................................ 4

Simon v. Shearson Lehman Bros.,
   895 F.2d 1304 (11th Cir. 1990) ..................................................................................................... 5

XTec, Inc. v. Hembree Consulting Servs., Inc.,
   No. 14 Civ. 21029, 2014 WL 12729173 (S.D. Fla. Aug. 1, 2014) ............................................. 1

Counterclaim-Defendant Frederic Block ("Block"), files the following in reply to the Response to Block's Motion to Dismiss (the "Response") filed by Counterclaim-Plaintiff David Matesic ("Matesic") on September 5, 2023.

## I.   EXPRESS MALICE

Block argued in his motion to dismiss that Matesic was required to plead "express malice" under Florida law. Matesic did not respond to this argument. Accordingly, he has waived the argument, and Block's motion may be granted on default, as there is no indication that Matesic has pled express malice. See Floyd v. Home Depot U.S.A., Inc., 274 F. App'x 763, 765 (11th Cir. 2008) (party waived argument by failing to raise it in opposition).

## II.   PARTICULAR STATEMENTS

Florida requires that a defamation pleading set forth the defamatory statement with specificity. See Martinez v. Netflix, Inc., No. 20 Civ. 24328 (WPD), 2023 WL 2630337, at *2 (S.D. Fla. Feb. 23, 2023) (collecting cases). There are two reasons for this requirement. First, related to the pleading requirements of the federal rules, setting forth a specific statement "put[s] [Defendant] on notice" of the claim and affords him a chance to mount a defense. XTec, Inc. v. Hembree Consulting Servs., Inc., No. 14 Civ. 21029, 2014 WL 12729173, at *4 (S.D. Fla. Aug. 1, 2014). Second, it ensures the Court will have sufficient information to determine "whether the statements were true statements of fact or merely . . . opinion." Brown Jordan Int'l Inc. v. Carmicle, No. 014 Civ. 60629 (BR), 2015 WL 6123520, at *10 (S.D. Fla. Oct. 19, 2015), aff'd, 846 F.3d 1167 (11th Cir. 2017). And, of course, these reasons intertwine: It is impossible to mount a defense of "pure opinion" (or any defense) if Block cannot actually identify the statements alleged to be defamatory.

1

Matesic's counterclaim left it far from certain what were supposed to be the false statements at issue. His Response adds to the confusion by enumerating paragraphs of the Counterclaim Complaint ("CC") that do not reference specific statements, or that beg the question by pointing to paragraphs purporting to describe reputational damages without specifying which statements are supposed to have caused the damage.

For instance, to support his argument that Block's statements did per se harm to Matesic's reputation as a condominium Board officer, Matesic references CC paragraphs 36-37, 51-52 and 60. Response at 5. Paragraph 36 references Block's "8-page email," which contains numerous assertions about the construction project mixed with, by Matesic's own admission, Block's "legal opinions." This is exactly the kind of allegation against which it is impossible to mount a defense—a vague reference to a long missive mixing facts and opinions. Likewise, neither paragraph 51 nor 52 reference exact statements, but only discuss in generalized terms the alleged impact of Block's statements. Matesic goes on to argue that Block's statements injured him "in his occupation" and that his statements were "injurious on their face," Response at 6-8, but these arguments reference only paragraph 87, and 87 conveys no more than a conclusory boilerplate about reputational damages. Since it is impossible to mount either an opinion or truth defense against allegations this vague, they should be dismissed.

### III.   **OPINION**

Only paragraphs 37 and 60 reference specific statements against which it is possible to mount a defense of "pure opinion." Sure enough, these are the only paragraphs Matesic references when he attempts to argue that Block's statements are not "opinions."[1] Response at 10. It would appear, then, and putting aside Matesic's attempts at window dressing, that these

---

[1] Both of these statements are also outside the limitations period.

statements are the real targets of his defamation claim. The problem for Matesic is that these statements are, beyond any shadow of a doubt, statements of Block's opinion about Matesic's leadership of the Palms 2100 Tower One condominium community ("Tower One"). Paragraph 37 references Block's opinion that Matesic violated principles of good condominium governance, by failing to follow the "Cardinal Change Rule." To come to that conclusion, as Matesic is forced to admit, Block offered an 8-page analysis setting forth numerous supporting examples. Paragraph 60 references Block's opinion that Matesic illegally canceled a Board election.[2] That assertion is based on the simple fact that Matesic did, indeed, cancel a Board election. Matesic's manner of argumentation itself demonstrates that these are opinions. Nowhere does Matesic argue that Block misstated a single fact about the construction project. Nowhere does Matesic argue that he did not in fact cancel a Board election. He simply dislikes Block's conclusions and opinions about these matters. If that is so, he must limit himself to the political process in which he and Block are actually engaged and refute Block's opinion in the forum of Tower One opinion.

Indeed, in a broader sense, this cannot be the stuff of a defamation claim. Matesic is a local-political leader and cannot take umbrage and clog the courts when someone dislikes how he leads. Perhaps a member of the military can be punished for insulting the President, in the way the subject of a monarch can be held liable for *lèse majesté* when they criticize the King. See Ethredge v. Hail, 56 F.3d 1324, 1328 (11th Cir. 1995) (upholding regulation on a military base that banned displays that "'embarrass[ed] or disparage[d]' the Commander in Chief."). Luckily, Floridians cannot be held liable for expressing negative opinions about one another.

---

[2] No jury could find the claim of "electioneering" defamatory. To the extent anyone knows what the phrase means, they will understand that it is no more than participating in a political process.

That these are essentially political opinions, offered in a local-public forum, as part of a running debate within a community of dues-payers, provides the key and crucial context for viewing these statements. For instance, when Courts encounter a statement in a film, they will view the whole film for context, e.g., Martinez v. Netflix, Inc., No. 20 Civ. 24328 (WPD), 2023 WL 2630337, at *4 (S.D. Fla. Feb. 23, 2023), and when they encounter a statement in a news report, they will listen to the entire news report, e.g., Parekh v. CBS Corp., 820 F. App'x 827, 833 (11th Cir. 2020). Likewise, here, it is proper to heed the political context of Block's statements and give credence to Block's cautionary statements. Matesic tries to prune away this context when he discusses theses opinions. Response at 8-10. He claims that Block did no more than utter the shibboleth "in my opinion," and that this does not suffice to establish an opinion defense. But saying "in my opinion" is a responsible and appropriate caution when an individual is engaging in a public debate, when all readers recognize the utterances as part of that debate, and when that individual discloses the facts upon which the opinion is based, as Block did here. Indeed, it is hard to see what else Block could have done to signal to his reader that he was offering a viewpoint with which the reader could disagree. In any case, there is much more for the court to consider than the phrase "in my opinion." It must consider, too, the political dialogue in which these statements were made. Finally, Matesic attempts to hold Block's credibility against him, arguing that, since Block is a federal judge, readers would have been more likely to credit his legal opinions. Response at 9. But an opinion defense does not lose strength as the speaker gains credibility, any more than it gains strength as the speaker loses credibility. That interpretation would simply punish authoritative speakers.

Matesic's arguments in support of his claim of defamation by implication suffer identical flaws. Here, he pivots to claiming that paragraph 50 of his CC is really the source of his

4

defamation claim. Response at 11. This paragraph purports to reference numerous letters and, indeed, Block's entire public stance *viz* the Board. CC at ¶ 48 ("The agenda included addressing Block's letters disseminated to unit members and associated professionals.") Again, it is impossible to mount a defense against an allegation of falsehood when Matesic waves a hand at years' worth of controversy. In any case, the fault with Block's viewpoint here, allegedly, is that his "statements imply a defamatory connection by implying that Matesic is incompetent and unfit to serve on Tower One's board of directors." Response at 11. Of course, in different terms, that *is* what Block meant to convey—that Matesic was doing a poor job as a leader. But Block was entitled to say so. Styling this opinion "defamation by implication" does not change that it was Block's opinion and correctly packaged by Block as such. If this is defamation, there is no election that has ever taken place since the beginning of time that would not give rise to a defamation claim.

## IV. DEFAMATION PER QUOD

Matesic misconstrues the requirement to plead "special damages" in support of his claims of defamation *per quod*. To establish this element of his claim, he points only to his complaint's boilerplate statement of economic damages. Response at 10. But this is a mere legal conclusion. At trial, he will have to demonstrate that some specific statement caused economic damages. See Simon v. Shearson Lehman Bros., 895 F.2d 1304, 1318 (11th Cir. 1990) ("Like the district court, we find it significant that there is no testimony from Reynolds that connects the slanderous statement to Simon's termination.") Likewise, at summary judgment, he will need evidence from which a juror could conclude that a specific statement caused economic damages. See Daniels v. HSN, Inc., No. 818 Civ. 3088-T24 (JSS), 2020 WL 533927, at *7 (M.D. Fla. Feb. 3, 2020) ("Plaintiff has not proffered any evidence to show that HSN's statement was the reason he

5

did not get the jobs that he sought.") Accordingly, at this stage, Matesic's burden is to state facts making damages-causation plausible. At a minimum, he needs to identify a discrete statement that caused identifiable damage. For instance, did a statement by Block cause Matesic's construction company to lose a contract? Did a longtime customer of Matesic leave him after learning that he violated the cardinal change rule, or after learning that he illegally canceled a Board election? The CC does not say so, and Block cannot defend himself against a charge this vague.

This is not necessarily a high burden, and at this stage Matesic does not have to establish that causation is definite. For instance, he might allege circumstantial evidence that a negative business result followed immediately upon the publication of a statement. But he has not done so here.

## V.   STATUTE OF LIMITATIONS

The only reason Matesic gives to revive his untimely claims—which are the only claims alleged with any level of specificity—is that they were "re-urged" within the limitations period. Response at 13. He cites three cases for the proposition that "re-urging" or "re-adopting" a statement within the limitations period revives an untimely claim.

But these cases do not establish a "re-urging" doctrine. Instead, these cases all stand for the well-established (and indeed, simple) concept that repeating a statement counts as a republication, for instance when the defamer reprints and redistributes a previous letter or adds so many new statements to a defamatory writing on a website that there is a constructive republication of the original writing. These cases are clearly distinguishable. See Enigma Software Grp. USA, LLC v. Bleeping Computer LLC, 194 F. Supp. 3d 263, 278 (S.D.N.Y. 2016) (timely statements counted as republication of untimely statements, because the timely

statements "restate[d], almost verbatim" the timely statements, and hyperlinked to them); Larue v. Brown, 235 Ariz. 440, 445, 333 P.3d 767, 773 (Az. Ct. App. 2014) (timely statements counted as republication of untimely statements, where the timely statements "referred to and re-alleged the substance of the original articles," which were then heavily altered and updated with new information); In re Davis, 347 B.R. 607, 610 (W.D. Ky. 2006) (additions to website that listed "additional nefarious activities" of the plaintiff, counted as fresh defamation). In all of these cases, the Defendant either actually republished the allegedly defamatory words, or published newly defamatory words.

Here, had Block issued a new letter that said, "In addition, you can see my previous criticisms of Matesic and the Tower One Board in my previous letters, which I attach hereto as Exhibits A and B," this would be a republication, as in the cited cases. An analysis of Block's April 18, 2023 letter, in Exhibit 1 of the CC's, shows that he did no such thing. Nor did he constructively republish by amending and altering a continually posted writing on a website. He does quote his letter of December 11, 2020, but the quote is innocuous. The quote says only "[s]ince it may well be that the enormous amount of time it has taken C&S to do this project bears upon its qualifications to do the work, has C&S ever handled a construction project anywhere close to this nature and magnitude?" CC, Ex. 1 at 2. The other quote says that he "inquired why this major reconstruction project was not put out for competitive bidding." Id. But these statements are non-defamatory, and Matesic does not even try to argue that they are defamatory. They are mere references to a prior publication, but no cases says that mere reference to a prior publication causes a republication. To cause a republication, there would need to be actual restatement of defamatory words, or a substantial amendment to a continually-available website, as in Enigma, Larue, or Davis. Nor, tellingly, does Matesic challenge the *facts*

7

conveyed by these quotes, that C&S has "taken an enormous amount of time" to do its work, and that the "project was not put out for competitive bidding." Instead, he wants the Court to find that these quotes revive the entirety of the previous letter, and then to find something within that previous letter defamatory. But this begs the question, as he has not explained how the December 11, 2020 letter is defamatory in the first place.[3]

      The two phrases Matesic cites in his brief as "reaffirmations" of previous defamation are not even statements by Block. They are statements by a fellow board member, Dr. Zucker. Again, Matesic does not argue that these statements are themselves defamatory; plainly, they are not. They say only that Block did not "maliciously disseminate mistruths" and that he "stated facts" in his previous letter. Response at 13. In any case, these are mere references to a prior publication, not republications. None of the cases cited support the position that a mere reference gives rise to a republication.

---

[3] Moreover, if the Court were to accept this argument, it would mean that these elements of the April 23, 2023 letter would be defamatory *per quod*, as the reader would understand the reference as defamatory only if they already understood and recalled the defamatory content of the prior letter.

## VI. CONCLUSION

For the foregoing reasons, Block's Motion to Dismiss should be granted in its entirety.

Dated: September 12, 2023
New York, New York

Respectfully Submitted,

**WIGDOR**

By: /s/ Alfredo Pelicci
Alfredo Pelicci

Douglas H. Wigdor (admitted *pro hac vice*)
Valdi Licul (admitted *pro hac vice*)
John S. Crain (admitted *pro hac vice*)

85 Fifth Avenue
New York, New York 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845

apelicci@wigdorlaw.com
dwigdor@wigdorlaw.com
vlicul@wigdorlaw.com
jcrain@wigdorlaw.com