**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 21-61032-CIV-ALTMAN/Hunt

**FREDERIC BLOCK**,

    *Plaintiff*,

v.

**DAVID MATESIC**, *et al.*,

    *Defendants.*

_____/

**ORDER**

Our Defendant, David Matesic, has filed a counterclaim against the Plaintiff, Frederic Block, asserting causes of action of defamation *per se*, defamation *per quod*, and defamation by implication. *See generally* Counterclaim [ECF No. 153]. Matesic's allegations arise from three allegedly defamatory communications Block sent to members of his condo community between 2020 and 2023, each pertaining—at least in part—to Matesic's role as President of the Palms 2100 Tower One Condominium Association, Inc. (the "Tower One Board"). While Block admits that he criticized Matesic's work on the board, he disputes Matesic's suggestion that his statements were defamatory—and, standing by his defense, he's filed a Motion to Dismiss the Counterclaims (the "MTD") [ECF No. 169].[1] That MTD is now fully briefed and ripe for adjudication. *See* Matesic's Response [ECF No. 172][2]; Block's Reply [ECF No. 173].

---

[1] Many of the arguments (and much of the law) we consider in adjudicating this MTD are not new to us. We, in fact, dealt with similar issues—specifically, questions surrounding the law of defamation *per se* and defamation by implication—when we denied Matesic's Motion to Dismiss [ECF No. 110]. *See* June 5, 2023, Order [ECF No. 128]. We therefore incorporate certain portions of that analysis into this Order.

[2] Matesic *has* asked us—in his Response—for leave to amend his Counterclaim. *See* Response at 14 ("[T]his Court should deny Block's Motion to Dismiss. In the alternative, Matesic respectfully requests this Court to grant Matesic leave to amend his Complaint.").

After careful review, we **GRANT in part** and **DENY in part** the MTD.

## THE LAW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* (citing *Twombly*, 550 U.S. at 556). The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ibid.* (quoting *Twombly*, 550 U.S. at 555). "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309–10 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 545). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. On a motion to dismiss, "the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016).

Under Florida law, "[d]efamation has the following five elements: (1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008). We'll discuss the nuances of the three strains of defamation Matesic has alleged—*per se*, *per quod*, and by implication—later in this Order. First, though, we'll have to identify the three specific statements Matesic is attacking and address the four general challenges Block has raised to the viability of Matesic's Counterclaim.

**ANALYSIS**

I.  **The Allegedly Defamatory Statements**

As a threshold matter, we must first determine which of Block's statements Matesic is actually challenging. While Matesic has attached as exhibits to the Counterclaim seven of Block's communications, he's only identified specific language from three of those that might *possibly* qualify as defamatory: Block's December 11, 2020, email (Exhibit 9) ("the 2020 Email"); Block's January 28, 2021, candidacy letter (Exhibit 10) ("the 2021 Candidacy Letter"); and Block's April 18, 2023, letter (Exhibit 1) ("the 2023 Letter").[3] We'll summarize each of these documents before addressing how they stand up against Block's MTD.

i.  **The 2020 Email**

According to Matesic, Block sent this email from his U.S. Courts email address to over 90 recipients, in which he "reiterat[ed] and expand[ed] on his false and defamatory allegations, project finances, legal opinions and deliberately slanted questions against many individuals with various responsibilities for the Community and its business[.]" Counterclaim ¶ 35. "Block," Matesic continues, went to "great length to present a wholesale project overview, what he perceives as issues needing to be addressed, what he claimed to be relevant and applicable Florida law regarding these issues, his legal opinions regarding these issues, and ultimately conclusions of a project he determines has ignored owners [sic] interests as well as their fiduciary demands as well as any semblance of a general industry standard of care or oversight." *Id.* ¶ 36. Specifically, Matesic says, "Block declare[d] the project [to be] in violation of a basic principle in law known as 'the Cardinal Change Rule,' how courts analyze

---

[3] While Matesic refers to the other four Block-authored exhibits, these references appear to be nothing more than helpful historical background. *See* Counterclaim ¶ 23 (citing Exhibits 2–5 as examples of how Block "began noticing the community in written letters and emails, describing in great detail, concerns over 'spiraling costs associated with certain work being performed on the condominium property'").

3

projects and contracts to ascertain if indeed a cardinal change has occurred by stating in the letters that 'The Palms project fits these criteria to a tee.'" *Id.* ¶ 37. Matesic then reverts to describing the 2020 Email in generalities, writing that Block "present[ed] facts and figures that were either ignorantly derived from a nonexistent comprehension of Construction Contracts, Financial Statements, or Civil Construction and Engineering best practices, or the result of a purposeful intent to mislead and misrepresent facts surrounding Association business," *id.* ¶ 38, and that the 2020 Email "was designed to maliciously impugn Matesic's work as Board Director and President using details Block knew or should have known were inaccurate and/or completely out of context or both," *id.* ¶ 39.

    ii. **The 2021 Candidacy Letter**

On the 2021 Candidacy Letter, Matesic alleges only that Block "accus[ed] Matesic and other members of the board of 'electioneering' and 'illegally' nullifying board election ballots." *Id.* ¶ 60. And that seems right. In the letter itself, Block alleged that Matesic "continues to act as President of the Board of Directors because of the *unlawful* cancellation of the election." 2021 Candidacy Letter at 1 (emphasis added).

    iii. **The 2023 Letter**

And that brings us to the 2023 Letter—which, according to Matesic, was distributed "via U.S. Mail to the overwhelming majority of The Palms 2100 Tower One owners for the purpose of discouraging owners from voting for Matesic in the upcoming election[.]" Counterclaim ¶ 12. According to Matesic, the Letter included "several baseless claims" about "his work as President," including: (1) that "Matesic was 'in charge of the shop while [a contractor] destroyed our property'"; (2) that "Matesic accused Block of 'hacking the unit owners' computers'"; (3) that "Matesic et al. 'emailed a vicious and defamatory letter (concerning Block) to all 90 owners'"; (4) that "Matesic sent an email to owners 'defaming me (Block) in my profession by accusing me of making false statements and incredibly, of hacking into your private emails'"; and (5) that "Block falsely, recklessly, and

4

carelessly accused Matesic, by direct statements and implication, of ignoring fiduciary responsibilities to the community as an officer of the Association, and mismanagement of events surrounding a large maintenance and repair project the community was undertaking." *Id.* ¶ 13. Matesic also alleges that "Block includes a misleading quote from this Court's [October 26, 2021, Order] by extracting language that Block perceives to be favorable, yet he intentionally omits subsequent language that is not favorable to him in order to mislead unit owners regarding the strength and veracity of his claim against Matesic." *Ibid.*

## II. Block's General Arguments

We can now begin to assess Block's four general arguments—*i.e.*, the arguments that apply to the Counterclaim as a whole—for dismissal. These are: (1) that the statute of limitations expired for any defamation claims based on either the 2020 Email or the 2021 Candidacy Letter; (2) that Matesic has failed to identify specific defamatory statements; (3) that Block's comments were mere opinions; and (4) that Block's statements were privileged. We address each in turn.

*First*, Block contends that Matesic's claims arising from the 2020 Email and the 2021 Candidacy Letter are barred by Florida's two-year statute of limitations. *See* MTD at 16 (citing FLA. STAT. § 95.11(4)(h) (establishing a two-year statute of limitations for an "action for libel or slander")). We agree.

"A defamation claim based on a single publication, exhibition, or utterance accrues on the date of publication." *Watkins v. Dejesus*, 786 F. App'x 217, 219 (11th Cir. 2019) (citing FLA. STAT. § 770.7). But, under the multiple-publication rule, "each communication of the same defamatory matter by the same defamer . . . is a separate and distinct publication, for which a separate cause of action arises." *Five for Entm't S.A. v. El Cartel Records, Inc.*, 725 F. App'x 793, 797 (11th Cir. 2018) (quoting *Ashraf v. Adventist Health Sys./Sunbelt, Inc.*, 200 So. 3d 173, 174 (Fla. 5th DCA 2016)). It's undisputed that Block published *both* the 2020 Email *and* the 2021 Candidacy Letter more than two years before Matesic filed

his Counterclaim.[4] The question, then, is whether any "separate and distinct publications" of either of these communications occurred within the applicable two-year window. *Ibid.*

Matesic argues that Block re-published his 2020 Email in his 2023 Letter by quoting portions of it and "making comments about the veracity of [it.]" Response at 12. While these factual allegations are correct, Matesic's legal conclusion doesn't follow. True, Block did quote the 2020 Email in his 2023 Letter. But (as he points out) the portion he cited in 2023 was completely "innocuous" and didn't "actually republish[ ] the [2020 Email's] allegedly defamatory words, or publish[ ] newly defamatory words."[5] Reply at 10. And Matesic is right to note that Florida follows the multiple-publication rule, under which "every repetition of a defamatory statement is considered a publication." *Doe v. Am. Online, Inc.*, 783 So. 2d 1010, 1017 (Fla. 2001) (citing W. PAGE KEETON, ET AL., *Prosser and Keeton on the Law of Torts* § 113 at 810 (5th ed. 1984)).

But the multiple-publication rule requires the republication of *defamatory* statements. It doesn't—as Matesic suggests—encompass the republication of the *non-defamatory* portions of a prior statement. And that's precisely what all of Matesic's cases say. *See Enigma Software Grp. USA, LLC v. Bleeping Computer, LLC*, 194 F. Supp. 3d 263, 278 (S.D.N.Y. 2016) ("[M]ere reference to an article, '*as long as it does not restate the defamatory material*, does not republish the material[.]'" (quoting *In re Philadelphia Newspapers, LLC*, 690 F.3d 161, 175 (3d Cir. 2012) (emphasis in original))); *In re Davis*, 347 B.R. 607, 612 (W.D. Ky. 2006) ("[T]he doctrine of republication . . . provides the plaintiff with a remedy where

---

[4] Block published the 2020 Email and the 2021 Candidacy Letter on December 11, 2020, and February 4, 2021, respectively. Matesic filed his Counterclaim more than two years later—on July 20, 2023.
[5] Here's everything Block says about his 2020 Email in his 2023 Letter: "I composed [the 2020 Email] containing a series of questions that I believed all of you would want answered, like 'Since it may well be that the enormous amount of time it has taken [the contractor] to do this project bears upon its qualifications to do the work, has [the contractor] ever handled a construction project anywhere close to this nature and magnitude?' And I also inquired why this major reconstruction project was not put out for competitive bidding." 2023 Letter at 2 (quoting the 2020 Email).

the defendant edits and retransmits the *defamatory material* for a second time with the goal of reaching a new audience." (emphasis added)).

Resisting this conclusion, Matesic points out that Block also included, in his 2023 Letter, Dr. Zucker's favorable assessment of the 2020 Email: "In my opinion," Block quoted Dr. Zucker as saying, "[Block] did not make any unsubstantiated accusations, nor did he maliciously disseminate mistruths. Rather, he stated facts[.]" 2023 Letter at 2 (quoting Dr. Zucker's assessment of Block's 2020 Email).[6] But that's not a republication of *anything*—much less something defamatory. In this sentence, Block simply republished *someone else's* opinion about what he (Block) had said. Dr. Zucker's *opinion* (it goes without saying) cannot be defamatory. *See Turner v. Wells*, 198 F. Supp. 3d 1355, 1366 (S.D. Fla. 2016) (Gayles, J.), *aff'd*, 879 F.3d 1254 (11th Cir. 2018) ("It is well settled in Florida that '[c]*ommentary or opinion* based on facts that are set forth in the [communication] . . . are not the stuff of libel.'" (quoting *Rasmussen v. Collier Cnty. Publ'g Co.*, 946 So. 2d 567, 571 (Fla. 2d DCA 2006) (emphasis added))). Indeed, since Dr. Zucker's opinion about Block's prior statement is the only thing Block reprinted, we have no idea—from the 2023 Letter—which "facts" Dr. Zucker might have been referring to. To suggest now that Dr. Zucker was commenting on the veracity of the allegedly *defamatory* statements—as opposed to something else—would be pure conjecture.

Trying to persuade us that Block's quotation of Dr. Zucker's opinion should count as republication, Matesic cites only one case: *Larue v. Brown*, 333 P.3d 767 (Ariz. Ct. App. 2014). But that

---

[6] Here's how Block quoted Dr. Zucker in the 2023 Letter: "I read the [2020 Email] twice, paying particular attention to its content and form. In my opinion, [Block's] approach was fair, and his logic was meticulous. He did not make any unsubstantiated accusations, nor did he maliciously disseminate mistruths. Rather, he stated facts, referenced statutes, and asked good questions; questions that many of the other residents are asking as well." 2023 Letter at 2 (quoting Dr. Zucker's assessment of Block's 2020 Email).

case, which wasn't decided under Florida law,[7] is very different from ours. The defendants in *Larue* posted online "'updates and rebuttals' immediately below the text of the original [defamatory] articles, and these replies referred to and re-alleged the substance of the original articles. That the comments were displayed directly beneath the original articles implied they were supplements to the original articles." 333 P.3d at 773 (cleaned up). That's just not our case. Here, as we've explained, Block republished, not the "substance of the original articles," *ibid.*, but Dr. Zucker's "opinion" that some unidentified portion of Block's prior correspondence was true. And, far from including that republication directly beneath the original (defamatory) articles—in a way that, as in *Larue*, "implied they were supplements to the original articles," *ibid.* (cleaned up)—Block quoted Dr. Zucker's "opinion" *without* any specific reference to his 2020 Email, and he did it in a letter he sent *three years after* the original email. Because Matesic has failed to establish that Block ever republished the (allegedly) defamatory parts of the 2020 Email, we **DISMISS** as untimely any defamation claims arising from the 2020 Email.

We also agree with Block that Matesic missed the two-year statute of limitations on his claims about the 2021 Candidacy Letter. Matesic, for his part, never even suggests that Block republished this statement. *See generally* Response 12–13. He's thus forfeited any such argument. *See, e.g.*, *Sappupo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of

---

[7] We haven't found any Florida cases on this issue. But Matesic's position—that a defamer republishes a prior statement anytime he defends that prior statement as true—doesn't make any sense. Such a rule would extend the statute of limitations (and restart any long-dead causes of action) whenever an alleged defamer defends himself by insisting that what he had previously said was true. That cannot be the law.

an issue waives it."); *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented . . . are deemed waived."). We therefore also **DISMISS** any claim arising from the 2021 Candidacy Letter.[8]

*Second*, Block attacks the Counterclaim on the ground that, "[u]nder Florida . . . law, a plaintiff cannot sustain a claim of defamation without identifying specific allegedly false and defamatory statements." MTD at 13 (quoting *Hendershott v. Ostuw*, 2020 WL 13111216, at *4 (S.D. Fla. Oct. 14, 2020), *aff'd*, 2022 WL 2904080 (11th Cir. July 22, 2022)). But Matesic *does* cite "specific allegedly false and defamatory statements." *Ibid.* He, for instance, points to Block's comment that he (Matesic) "was in charge of the shop while [the contractor] destroyed our property." *Id.* ¶ 13 (citing 2023 Letter at 1).[9] While we offer no opinion on how persuasive this claim will be at trial, we cannot agree that Matesic has simply "wave[d] a hand at a long article or publication and call[ed] it defamatory." MTD at 13.[10]

*Third*, Block contends that "Matesic completely fails to state a claim for defamation" because—as we've noted, *see supra* at 7—"Florida law wisely bars defamation actions based on differences of opinion." MTD at 5; *see also Ozyesilpinar v. Reach PLC*, 365 So. 3d 453, 460 (Fla. 3d DCA 2023) ("[C]ommentary or *opinion* based on facts that are set forth in the subject publication or which are otherwise known or available to the reader or listener do not constitute libel.'" (quoting *Scott v. Busch*, 907 So. 2d 662, 667–68 (Fla. 5th DCA 2005) (emphasis added))). In determining whether a

---

[8] From here on out, then, we'll consider *only* Matesic's claims about the 2023 Letter.
[9] Matesic cites other examples, too. He notes, for instance, that (in the 2023 Letter) Block wrote that Matesic "emailed a vicious and defamatory letter [about Block] to all 90 owners," and that Matesic "defam[ed] me [Block] in my profession by accusing me of making false statements and incredibly, of hacking into your private emails." Counterclaim ¶ 13 (quoting the 2023 Letter at 2–3). When we accept these facts as true—and draw all reasonable inferences in Matesic's favor—that's plainly sufficient to satisfy Matesic's pleading obligations.
[10] As we'll soon see, however, Matesic *does* commit variations of this sin in his claim for defamation by implication. *See infra* at 16–18.

9

statement is "pure opinion,"[11] we "must consider the context in which the statement was published and accord weight to cautionary terms used by the person publishing the statement." *Turner*, 198 F. Supp. 3d at 1367 (quoting *Hay v. Ind. Newspapers, Inc.*, 450 So. 2d 293, 295 (Fla. 2d DCA 1984)). Block now claims that, in the 2023 Letter, he merely *opined* that Matesic "ha[d] been in charge of the shop while [the contractor] destroy[ed] our property[.]" MTD at 10 (quoting the 2023 Letter at 1). But that's not really true. Nowhere in the 2023 Letter does the phrase "in my opinion"—or anything like it—modify Block's depictions of Matesic. And, while it's true that Block "offered cautionary terms, telling his readers that he has a 'deep-seated interest—as I am sure you do as well—to ensure the best qualified persons will be the new directors,'" *id.* at 14 (quoting 2023 Letter at 1), nothing in the letter suggests that his claims about Matesic aren't "readily capable of being proven false," *Williamson v. Digital Risk Mortg. Servs., LLC*, 2018 WL 3870064, at *4 (M.D. Fla. Aug. 15, 2018) (Presnell, J.). So, while Matesic may not prevail at trial, we think he's done enough to survive the MTD.

*Fourth*, Block argues that the allegedly defamatory statements were privileged. *See* MTD at 13. "Under Florida law," he says, "[a] communication made in good faith on any subject matter by one having an interest therein, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which would otherwise be actionable." *Ibid.* (quoting *Monarch Air Grp., LLC v. JPMorgan Chase Bank*, 2023 WL 4363816, at *3 (S.D. Fla. May 12, 2023) (Dimitrouleas, J)). Although Matesic doesn't address this argument in his Response, we nevertheless find it unconvincing, as Block sent his 2023 Letter to the "overwhelming majority of The Palms 2100 Tower One owners." *Id.* ¶ 12. For Block to prevail on this portion of his

---

[11] Pure opinion—which cannot be defamatory—is different from mixed opinion, which can be. *See Ozyesilpinar*, 365 So. 3d at 459 ("[A] statement is mixed opinion 'when an opinion or comment is made which is based upon facts regarding the plaintiff or his conduct that have not been stated in the article or assumed to exist by the parties to the communication.'" (quoting *Stembridge v. Mintz*, 652 So. 2d 444, 446 (Fla. 3d DCA 1995))).

MTD, then, he would have to establish that every one of these recipients had an "interest" in the subject matter of the 2023 Letter. And he hasn't done that. Even if he had, however, Matesic could still plead a viable defamation claim by asserting that Block's statements were "made with express malice." *Monarch Air Grp.*, 2023 WL 4363816, at *3. And Matesic *has* alleged that "Block's statements and slander were intended and intentional to implicate Matesic's moral character and impugn [his] accountability to his neighbors over fiscal and management decisions he accepted the burden of responsibility over." Counterclaim ¶ 85. Taking this allegation in conjunction with Matesic's contentious relationship with Block—which Matesic chronicles in depth in the "History" section of his Counterclaim—we believe Matesic has sufficiently pled that Block acted with the "primary motive . . . to injure" his reputation. *Lozada v. Hobby Lobby Stores, Inc.*, 702 F. App'x 904, 911 (11th Cir. 2017) (quoting *Fridovich v. Fridovich*, 598 So. 2d 65, 69 (Fla. 1992)).

\* \* \* \* \*

To summarize our analysis of Block's general arguments, then, we **GRANT in part and DENY in part** this first portion of the MTD. Specifically, we **DISMISS** those portions of Matesic's defamation claims that arise from the 2020 Email and the 2021 Candidacy Letter. We also **DENY** Matesic's request for leave to amend his counterclaim on timeliness grounds because any amendment would be futile. *See Dysart v. BankTrust*, 516 F. App'x 861, 865 (11th Cir. 2013) ("[D]enial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal." (quoting *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999))). But we reject the rest of Block's other general arguments.

### III. Defamation *Per Se*

"[A] publication is libellous [sic] per se, or actionable per se, if, when considered alone without innuendo: (1) it charges that a person has committed an infamous crime; (2) it charges a person with having an infectious disease; (3) it tends to subject one to hatred, distrust, ridicule, contempt, or

11

disgrace; or (4) it tends to injure one in his trade or profession." *Richard v. Gray*, 62 So. 2d 597, 598 (Fla. 1953). "When determining whether a published statement constitutes libel per se, an arbiter of fact may consider only the four corners of the publication." *Ortega Trujillo v. Banco Cent. Del Ecuador*, 17 F. Supp. 2d 1334, 1339 (S.D. Fla. 1998) (King, J.) (citing *Barry College v. Hull*, 353 So. 2d 575, 578 (Fla. 3d DCA 1977) (cleaned up)). "[T]he language of the document should not be interpreted in the extreme, but construed as the 'common mind' would naturally understand it." *Ibid.* (citing *McCormick v. Miami Herald Publ'g Co.*, 139 So. 2d 197, 200 (Fla. 2d DCA 1962)). In cases of defamation *per se,* "liability itself creates a conclusive legal presumption of loss or damage and is alone sufficient for the jury to consider punitive damages." *Lawnwood Med. Ctr. v. Sadow*, 43 So. 3d 710, 727 (Fla. 4th DCA 2010).

Matesic has adequately pled a claim of defamation *per se* because he effectively alleges that Block's 2023 Letter "tends to subject [him] to hatred, distrust, ridicule, contempt, or disgrace." *Rubinson v. Rubinson*, 474 F. Supp. 1270, 1274 (S.D. Fla. 2020) (Marra, J.).[12] According to Matesic, "Block's statements and slander were intended and intentional to implicate Matesic's moral character and impugn Matesic's accountability to his neighbors over fiscal and managerial decisions he accepted the burden of responsibility over." Counterclaim ¶ 85. When combined with some of Matesic's other claims about the 2023 Letter—claims Matesic has "repeat[ed] and reallege[d]" in Count I, *id.* ¶ 84—this allegation *tends* to elicit distrust, *see Grlpwr, LLC v. Rodriguez*, 2023 WL 5666203, at *4 (N.D. Fla. Aug. 25, 2023) (Wetherell II, J.) (finding that a plaintiff had "state[d] a plausible claim for defamation *per se* because being held in 'ill repute' [after having been accused of operating a pyramid scheme] is

---

[12] This is the second prong under the modern standard, which usually omits the "infectious disease" prong. *See, e.g., Aflalo v. Weiner*, 2018 WL 3235529, at *2 (S.D. Fla. July 2, 2018) (Moreno, J.) ("A written publication . . . rises to the level of libel *per se* if, when considered alone and without innuendo, it (1) charges that a person has committed an infamous crime; (2) tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (3) tends to injure one in his trade or profession." (cleaned up)).

12

akin to being subjected to distrust, contempt, or disgrace"); *see also Watkins v. Session*, 2022 WL 16745386, at *8 (S.D. Fla. Nov. 7, 2022) (Altman, J.), *aff'd*, No. 22-14070 (11th Cir. Dec. 7, 2023) (per curiam) ("When 'tend' is used as an intransitive verb—as it is here—it means to 'have an inclination to a particular quality, aspect, or state.' Consider, for instance, the following sentence: Children tend to enjoy happy music. Of course, this doesn't mean that *all* children will *always* enjoy happy music— only that, when presented with happy music, children have an inclination toward happiness, enjoyment, etc." (cleaned up)). A reasonable Tower One condominium owner would, we think, *tend* to distrust a Board President who "had been in charge of the shop while [a contractor] destroyed our property[.]" 2023 Letter at 1.

We therefore **DENY** Block's MTD as to Count I.

IV. **Defamation *Per Quod***

"Under Florida law, a claim for defamation may be categorized in one of two ways: defamation *per quod* or defamation *per se*." *Flynn v. Cable News Network, Inc.*, 2023 WL 5985193, at *4 (M.D. Fla. Feb. 22, 2023) (Scriven, J.) (quoting *Centennial Bank v. ServisFirst Bank Inc.*, 2019 WL 13037034, at *6 (M.D. Fla. Apr. 17, 2019)). "In per quod actions, the words used, given their natural and common meaning, are not inherently injurious, but rather are injurious only as a consequence of extrinsic facts, such as innuendo." *Ibid.* (quoting *Daniels v. HSN, Inc.*, 2020 WL 533927, at *4 (M.D. Fla. Feb. 3, 2020)). In other words, if a statement "requires explanation of context" for it to be defamatory, it may qualify as defamation *per quod* but not as defamation *per se. Ibid.* (quoting *Daniels*, 2020 WL 533927, at *4).

Because "defamation *per se* is actionable on its face[,] general damages are presumed." *Dibble v. Avrich*, 2014 WL 6632629, at *3 (S.D. Fla. Nov. 21, 2014) (Bloom, J.). On the other hand, because "defamation *per quod* 'requires additional explanation of the words used to show that they have a defamatory meaning, . . . the plaintiff must allege and prove special damages.'" *Ibid.* (quoting *Hoch v. Rissman, Weisberg, Barrett*, 742 So. 2d 451, 457 (Fla. 5th DCA 1999)); *see also Frey v. Minter*, 829 F. App'x

13

432, 434 (11th Cir. 2020) (noting that Florida law "require[s] proof of special damages for a plaintiff to sustain a claim of defamation *per quod*"). Even if a statement doesn't qualify as defamation *per se*, in other words, it may still constitute defamation *per quod* if the plaintiff alleges "items of *special* as well as general damages." *Flynn*, 2023 WL 5985193, at *5 (quoting *Hood v. Connors*, 419 So. 2d 742, 743 (Fla. 5th DCA 1982) (emphasis in original)). Special damages are "actual, out of pocket losses which must be proven by specific evidence as to the time, cause and amount," and their "chief characteristic . . . is a realized or liquidated loss." *Falic v. Legg Mason Wood Walker, Inc.*, 347 F. Supp. 2d 1260, 1268 (S.D. Fla. 2004) (Ryskamp, J.).

Matesic appears to assert his defamation *per quod* claim as a kind of alternative to his defamation *per se* claim. He, in fact, begins Count II by "repeat[ing] and realleg[ing] each and every allegation in . . . paragraphs 1–83"—*i.e.*, all the facts he'd incorporated into his defamation *per se* claim. Counterclaim ¶ 91. But the claim quickly loses steam. In it, after all, Matesic alleges only—in the most conclusory language—that "Block knew his defamatory statements concerning Matesic were false. Alternatively, Block reckless[ly] disregarded the falsity of his published statements concerning Matesic. In making these statements . . . , Block acted with actual malice." *Id.* ¶¶ 92–94. Other than a brief recitation of his damages—which we'll discuss shortly—that's it for Count II.

According to Block, a defamation *per quod* claim is the only defamation claim available to Matesic because "a reader could only find Block's statements defamatory if they understood a significant volume of extraneous facts about the merits of Matesic's performance as Board member and the performance of the contractors he hired during his tenure on the [B]oard." MTD at 20. And (Block continues) "even a cursory glance at the highly technical letters Block composed, claimed now to be defamatory, shows that Matesic has fallen far short of alleging the extraneous facts that would render any of Block's statements defamatory." *Id.* at 21.

14

While Block's argument here may have merit, we needn't delve into it because Matesic's defamation *per quod* claim fails for an even simpler reason. As Block points out, Matesic has failed to state a claim for defamation *per quod* because he hasn't alleged *any* special damages. *See id.* at 21–22 (mentioning that Matesic hasn't alleged a "pecuniary loss" stemming from any of the three allegedly defamatory writings); *see also Flynn*, 2023 WL 5985196, at *5 ("To survive a motion to dismiss, a Plaintiff must 'specifically state' the item of special damage claimed." (quoting FED. R. CIV. P. 9(g) (cleaned up)). Matesic hasn't identified any "realized or liquidated loss" or any "out of pocket losses . . . proven by specific evidence as to the time, cause and amount" resulting from Block's allegedly defamatory statements. *Ibid.* (quoting *Falic*, 347 F. Supp. 2d at 1268). Instead, Matesic says only that he "has suffered, and continues to suffer, harm for which he is entitled to an award of damages to the greatest extent permitted under law, including but not limited to punitive damages, for which a subsequent Motion will be brought to request an Amendment to the Counterclaim to allege the same." Counterclaim ¶ 95. That's plainly insufficient.[13] *Flynn*, 2023 WL 5985193, at *5 ("[A]bsent any factual enhancements to support the conclusory allegations of special damages, 'the complaint is insufficient to support an inference that the [plaintiffs] suffered actual economic harm.'" (quoting *Flynn v. Cable News Network, Inc.*, 2021 WL 5964129, at *5 (S.D.N.Y. Dec. 16, 2021) (Woods, J.))). And Matesic never followed through with his promised motion to amend. *See generally* Docket.

---

[13] In his Response to the MTD, Matesic says that he "alleged in his Counterclaim that Block's statements caused disrepute among vendors and professionals with whom he conducted business, directly and proximately resulting in economic losses." Response at 10 (citing Counterclaim ¶¶ 87, 95). But paragraph 87 of the Counterclaim asserts only that Block's allegedly defamatory statements "injured Matesic in his office as a Board Member and President, and as trusted neighbor within his community and among Association vendors, professionals and other [entities] with whom Matesic was charged to conduct business." Counterclaim ¶ 87. And paragraph 95 we've already quoted above. *See supra* at 15. Again, these allegations are far too vague and conclusory to survive Block's MTD. *See Anderson v. Smith*, 2020 WL 10058207, at *3 (M.D. Fla. Mar. 24, 2020) (Schlesinger, J.) ("It is not enough to claim damages in a conclusory manner; rather 'words actionable *per quod* are those whose injurious effect must be established by due allegation and proof.'" (quoting *Campbell v. Jacksonville Kennel Club*, 66 So. 2d 495, 497 (Fla. 1953) (cleaned up))).

15

Because Matesic hasn't alleged *any* special damages, we **DISMISS** Count II *with leave to amend* on the issue of special damages. *See* FED. R. CIV. P. 15(a)(2) ("In all cases [beyond amending as a matter of course], a party may amend its pleading only with the opposing party's written consent or *the court's leave*. The court *should freely give leave* when justice so requires." (emphases added)).

### V.     Defamation By Implication

"[D]efamation by implication is a well-recognized species of defamation that is subsumed within the tort of defamation." *Jews For Jesus*, 997 So. 2d at 1108. Defamation by implication "applies in circumstances where literally true statements are conveyed in such a way as to create a false impression." *Ibid.* Defamation by implication, in other words, "arises not from what is stated, but from what is implied when a defendant (1) juxtaposes a series of facts so as to imply a defamatory connection between them, or (2) creates a defamatory implication by omitting facts." *Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1123–24 (S.D. Fla. 2021) (Ruiz, J.). Defamation by implication is thus "premised not on direct statements but on false suggestions, impressions and implications arising from otherwise *truthful* statements." *Id.* at 1124 (emphasis added). "Simply put, if the defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts, he may be held responsible for the defamatory implication, unless it qualifies as an opinion, even though the particular facts are correct." *Jews For Jesus*, 997 So. 2d at 1108 (cleaned up). "All of the protections of defamation law that are afforded to the media and private defendants are extended to the tort of defamation by implication." *Ibid.* "[S]pecial damages are not required to be pled in an action for defamation by implication." *Anderson v. Smith*, 2020 WL 10058207, at *5 (M.D. Fla. Mar. 24, 2020) (Schlesinger, J.).

Matesic hasn't adequately pled a claim for defamation by implication because he hasn't sufficiently identified the "literally true facts." *Jews for Jesus*, 997 So. 2d at 1108. In other words, he hasn't specifically identified the facts Block has either "juxtaposed" in order "to imply a defamatory

16

connection between them" or "omitted" in a way that "creates a defamatory implication." *Corsi*, 519 F. Supp. 3d at 1123–24. While Matesic has provided ample contextual material from which a defamation-by-implication claim could (theoretically) proceed, *see* Counterclaim Exhibits 1–5, 9–10, he hasn't connected the dots. Indeed, once we strip from the Counterclaim those assertions that (1) pertain to Block's (allegedly) false statements and which (2) are insufficiently vague, we're left with nothing.

The bulk of the Counterclaim focuses on Block's allegedly false statements, which makes sense because defamation generally involves untruths. *See supra* at 2 (discussing the elements of defamation generally). But defamation by implication is, by definition, the manipulation of *true facts* to create a defamatory effect. *See, e.g.*, *Flynn*, 2023 WL 5985196, at *6 ("Florida does recognize the tort of defamation by implication as a concept by which *literally true statements* can be defamatory where they create a false impression." (emphasis added & cleaned up)); *Jews For Jesus*, 997 So. 2d at 1106 ("Defamation by implication arises, not from what is stated, but from what is implied when a defendant '(1) juxtaposes a series of facts so as to imply a defamatory connection between them, or (2) creates a defamatory implication by omitting facts, [such that] he may be held responsible for the defamatory implication[.]'" (quoting KEETON § 116, at 117)). With this background in mind, we can ignore in our analysis of Count III Matesic's many allegations about Block's *false* statements. *See, e.g.*, Counterclaim ¶ 35 (noting that Block "reiterat[ed] and expand[ed] on his *false* and defamatory allegations, project finances, legal opinions and deliberately slanted questions"); *id.* ¶ 54 (referring to Block's "*false* and misleading innuendo and accusations" in his 2020 Email); *id.* ¶ 77 (stating in one of his eight "Factual Allegations as to All Counter-Defendant's Defamatory Statements" that "Block knew his statements were false and recklessly disregarded the statements [sic] falsity").

And, where Matesic *does* suggest that Block has manipulated *true* facts, his allegations are insufficiently vague. *See e.g., id.* ¶ 28 (Block "continued his practice of presenting comments and

17

questions designed to malign all associated with the construction project and association business."); *id.* ¶ 97 (alleging in Claim III that "Block's published statements . . . intentionally created false suggestions, impressions, and/or implications about him"). These allegations fail to put Block on notice of the specific facts he's (supposedly) manipulated in his effort to weave a tapestry of defamation. *Cf. Carroll v. TheStreet.com, Inc.*, 2012 WL 13134547, at *5 (S.D. Fla. May 25, 2012) (Ryskamp, J.) (granting in part a motion to dismiss a defamation-by-implication claim because "the complaint ma[de] only general, conclusory allegations as to the defamatory nature" of a lengthy exhibit).

Because Matesic hasn't specifically identified the *true* facts Block has manipulated in an effort to defame him *by implication*, we **DISMISS** Count III *with leave to amend*.

\*\*\*

Accordingly, we hereby **ORDER and ADJUDGE** that Block's Motion to Dismiss [ECF No. 110] is **GRANTED in part** and **DENIED in part** as follows:

1. Any claims pertaining to the 2020 Email and 2021 Candidacy Letter are **DISMISSED with prejudice**.

2. Count II of the Counterclaim is **DISMISSED with leave to amend**.

3. Count III of the Counterclaim is **DISMISSED with leave to amend**.

4. Matesic may file an amended counterclaim by **December 22, 2023**.

**DONE AND ORDERED** in the Southern District of Florida on December 8, 2023.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record