# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 21-61032-CIV-ALTMAN/Hunt

FREDERIC BLOCK,

      Plaintiff,

v.

DAVID MATESIC, CANDYCE ABBATT, and
JOSHUA GERSTIN, in their individual capacities,

      Defendants.

_____/

---

# DEFENDANTS' CONSOLIDATED MOTION FOR SUMMARY JUDGMENT
# ON COUNTS I, II, AND III OF PLAINTIFF'S SECOND AMENDED COMPLAINT
# AND INCORPORATED MEMORANDUM OF LAW

Defendant CANDYCE ABBATT ("Abbatt"), DAVID MATESIC ("Matesic"), and JOSHUA GERSTIN ("Gerstin") (collectively, the "Defendants"), by and through their respective counsel, and pursuant to Federal Rule of Civil Procedure 56, S.D. Local Rule 56.1, and this Court's Orders (ECF Nos. 4 and 214), hereby file this Consolidated Motion for Summary Judgment on Counts I, II, and III of the Second Amended Complaint filed by Plaintiff, FREDERIC BLOCK ("Plaintiff"), and in support thereof, state as follows:

## INTRODUCTION

For nearly three (3) years, the Defendants have been subjected to a series of meritless claims of defamation and conspiracy because Plaintiff felt personally insulted by a Letter published by the Board of Directors of the condominium where Plaintiff, Matesic, and Abbatt reside and/or own property. Gerstin, who was the Association attorney at the time in question, drafted the Letter at the explicit instruction of his client(s) – the Association and the Board. Undeterred by the fact that there is no evidence available that would establish his claims against the Defendants, Plaintiff has spitefully persisted in pursuing these meritless claims based on nothing more than wounded pride and a bruised ego. For three (3) years, and through multiple iterations of his pleading, Plaintiff has continued to prosecute his claims against the Defendants based on a set of allegations that can only be established in his own mind and through the benefit of long-established federal case law that gives the pleader the benefit of the doubt at the pleading stage of a civil action by requiring that all of Plaintiff's allegations be accepted as true. All that ends now.

As shown below and in the Defendants' Statement of Material Facts, as well as the exhibits filed in support of this Motion, including referenced deposition excerpts, the Defendants have amassed a mountain of evidence demonstrating beyond dispute that: (1) Matesic and Abbatt's actions were taken within the scope of their roles as Board members in furtherance of their duties

as Directors; (2) Gerstin's actions were taken exclusively within the course and scope of his professional engagement and he had no personal stake or interest but instead was solely charged with carrying out the Board's instructions; (3) the Defendants' actions were not primarily motivated (or motivated at all) by express malice or actual malice; (4) the Defendants were acting in furtherance of the statutory duties of the Association to disclose a potential data breach; and (5) there is no evidence to be had to substantiate the Plaintiff's fanciful claims to the contrary.

Confronted with all of this evidence, Plaintiff can no longer skate by on a presumption of truth. Instead, like any other civil litigant, Plaintiff must now come forward with relevant evidence in admissible form to establish a genuine issue of material fact. Since Plaintiff lacks personal knowledge of what transpired at the relevant meeting of the Tower One Board of Directors, the evidence will have to come from another source. If not, then this Motion will be due to be granted and Plaintiff's claims against the Defendants should be summarily adjudicated.

This action arises from a dispute over condominium politics at the Palms 2100 Tower One Condominium Association (the "Association") between Plaintiff, Matesic, and Abbatt, all of whom own condominium units at Tower One and all of whom served on the Tower One Board of Directors at one time or another. It is undisputed that, at all times material to the allegations in Plaintiff's Second Amended Complaint ("SAC"), Matesic and Abbatt were officers and directors of Tower One and members of the Association's five-member Board of Directors (the "Board"). In addition, at all times material hereto, Gerstin was corporate counsel for the Association and the Board. Gerstin neither resides, nor owns property, at the Palms community.

On December 11, 2020, Plaintiff circulated an email to approximately ninety (90) individuals, including almost all of them Palms unit owners. Plaintiff's email addressed Plaintiff's concerns regarding an ongoing construction project at the Palms properties and displayed all of

the recipients' email addresses to each of the other recipients. Due to concerns relating to Plaintiff's December 11, 2020 email, the Board scheduled a Meeting to discuss, *inter alia*, Plaintiff's email and a proposed response. The Board Meeting took place on December 17, 2020 as scheduled and it is undisputed that Plaintiff neither attended nor participated in the Meeting.

At the Meeting, the five-member Board voted and authorized Gerstin, along with Board Members Matesic and Abbatt, to prepare a response letter to be circulated to the Tower One unit owners. The Board vote was four (4) in favor and zero (0) in opposition, with one (1) abstention. In accordance with the Board's directive, Gerstin prepared a draft response and circulated the draft letter to the authorized Board Members – Matesic and Abbatt. After some minor edits, both Matesic and Abbatt approved the final draft of the letter, which was then circulated by the property manager to the Tower One unit owners on December 18, 2020 (the "Letter").

It is that Letter that is the subject of the instant action. The Letter states, in pertinent part:

> Recently, Tower One's members were subjected to at least two email blasts from a disgruntled owner disparaging the Association, its directors, the construction project, and its associated professionals with incorrect statements and facts. These unsolicited emails blasts to owners visibly listed each member's email address causing serious privacy and security concerns for everyone. Neither the association nor its management was the source of our owners' email addresses and the method of obtainment by the owner remains unknown. The Association and management staff take your privacy and security seriously. We advise all members to check and consider updating their computer's security and privacy settings.

Plaintiff contends this portion of the Letter is defamatory and purportedly accuses Plaintiff of unlawful conduct, including violations of "state and federal computer criminal hacking offenses." Plaintiff claims each of the Defendants is <u>personally</u> liable for their role(s) in the process of drafting and/or publishing the Letter, on the theory that the entire process was unauthorized by the Board, and that Matesic and Abbatt were not acting in their capacity as Board Members, and Gerstin was not "and could not have been" acting in his capacity as the Association's attorney.

Plaintiff's claims against the Defendants fail as a matter of law. First, the Defendants are protected by a qualified privilege which negates any claim for defamation. Second, Plaintiff has not, and cannot, show the requisite express or actual malice to overcome the qualified privilege. Third, all the relevant portions of the Letter are true and/or substantially true and are simply not defamatory. Furthermore, Plaintiff has not and cannot establish damages. Defendants Matesic and Abbatt are also protected by the business judgment rule. Lastly, as corporate counsel for the Association and the Board, Gerstin cannot be liable for conspiracy under the intracorporate conspiracy doctrine. For all of these reasons, and as further provided herein, the Court should grant Defendants' Consolidated Motion for Summary Judgment on Counts I, II, and III of Plaintiff's SAC.

## STATEMENT OF MATERIAL FACTS

Defendants fully incorporate and rely on their consolidated Statement of Material Facts[1] as though fully set forth herein.

## MEMORANDUM OF LAW

### A. STANDARD OF REVIEW

A motion for summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2013 WL 5774287, *2 (S.D. Fla. Oct. 24, 2013). "By its very terms,

---

[1] Pursuant to S.D. Local Rule 56.1(a), Defendants' Statement of Material Facts in Support of their Consolidated Motion for Summary Judgment ("SOMF") and Notice of Filing Exhibits in Support of their Consolidated Motion for Summary Judgment ("NOF") are being filed and served separately and contemporaneously with this Motion.

this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." *Sailboat Bend Sober Living, LLC v. City of Fort Lauderdale*, 479 F. Supp. 1298, 1312 (S.D. Fla. 2020) (J. Altman) (emphasis in original). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* "An issue of fact is 'material' if it might affect the outcome of the case under the governing law." *Id.*

"At summary judgment, the moving party bears the initial burden of showing the absence of a genuine issue as to any material fact." *Id.* "Once the moving party satisfies its initial burden, the burden then shifts to the non-moving party to come forward with specific facts showing there is a genuine issue for trial." *Id.* at 1313. "[T]he nonmoving party is required to 'go beyond the pleadings' and present competent evidence designating 'specific facts showing that there is a genuine issue for trial.'" *Kadylak v. Royal Caribbean Cruise, Ltd.*, 167 F. Supp. 3d 1301, 1306 (S.D. Fla. 2016). The "nonmoving party may not rest upon the mere allegations or denials of his pleadings, but instead must set forth specific facts showing that there is a genuine issue for trial." *Id.* "Likewise, a nonmovant cannot defeat summary judgment by relying upon conclusory assertions." *Id.* "Mere metaphysical doubt as to the material facts will not suffice." *Id.* The Court "must grant summary judgment if a party has failed to make a sufficient showing on an essential element of [his or] her case." *Sailboat Bend*, 479 F. Supp. at 1313.

**B.**      <u>ARGUMENT</u>

     **1.**      **Florida defamation law.**

In Florida, defamation is generally defined as "the unprivileged publication of false statements which naturally and proximately result in injury to another." *Wolfson v. Kirk*, 273 So.

2d 774, 776 (Fla. 4th DCA 1973). True statements, statements that are not readily capable of being proven false, and statements of pure opinion are protected from defamation actions by the First Amendment. *Turner v. Wells*, 879 F. 3d 1254, 1262 (11th Cir. 2018) (*citing Keller v. Miami Herald Publ'g Co.*, 778 F. 2d 711, 714–15, 717 (11th Cir. 1985) (applying Florida law)); *Blake v. Giustibelli*, 182 So. 3d 881, 884 n.1 (Fla. Dist. Ct. App. 2016) ("Statements of pure opinion are not actionable."). A claim for defamation – libel or slander – consists of five elements: (1) publication; (2) falsity; (3) concerning the plaintiff; (4) actual damages; and (5) the statement must be defamatory. *Turner*, 879 F. 3d at 1262 (*citing Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008)). Defamation may be *per se* or *per quod* (by implication). Here, Plaintiff alleges defamation *per se* and defamation by implication. Both claims fail because the Plaintiff cannot establish proof to support these claims.

> **2.    Defendants have qualified immunity and are entitled to judgment as a matter of law on Counts I and II for defamation.**

In Florida, "the law recognizes that certain types of statements – even if false – fall outside the protection of defamation law" where a qualified privilege exists. *Bush v. Raytheon Co.,* No. 8:07-cv-02087-T-24-MAP, 2009 WL 10669904, * 8 (M.D. Fla. Sept. 8, 2009). Under Florida law, a qualified privilege negates a claim for defamation "where the speaker acts in good faith, with an interest to be upheld, through a statement limited in scope to a specific purpose and published on a proper occasion and manner." *Regions Bank v. Kaplan*, No. 8:12-CV-1837-T-17MAP, 2013 WL 1193831, * 19 (M.D. Fla. Mar. 22, 2013) (*citing Gunder's Auto Center v. State Farm Mut. Auto. Ins. Co.*, 422 Fed. App'x 819, 821-22 (11th Cir. 2011)); *see also Am. Ideal Mgmt., Inc. v. Dale Vill., Inc.*, 567 So. 2d 497, 499 (Fla. 4th DCA 1990). In other words, communications "made in good faith on any subject matter by one having an interest therein, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it

contains matter which would otherwise be actionable." *Kaplan*, 2013 WL 1193831 at * 19 (*citing Nodar v. Galbreath*, 462 So. 2d 803, 809 (Fla. 1984)). "The law permits these statements so that parties can honestly express opinions under reasonable circumstances to other people who need to hear those opinions." *Bush*, 2009 WL 10669904 at *8. This privilege has been recognized in statements made by the members of the board of directors. *See Randolph v. Beer*, 695 So. 2d 401 (Fla. 5th DCA 1997) (a defamatory statement by credit union's chairman of the board to the board of directors, concerning rumor that insurance agent was involved in insurance kickback scheme with credit union's president, was conditionally privileged).

Here there are no disputed material facts as to the circumstances of the publication of the Letter. The Board took action directing that a letter be prepared on its behalf by Gerstin, Abbatt, and Matesic. *See Defendants' Statement of Material Facts* ("SOMF") at ¶¶ 33-41. Matesic and Abbatt participated in the drafting of the letter and/or approved it for distribution to the Tower One unit owners on behalf of the Board. SOMF at ¶¶ 43-48. Plaintiff admittedly had no involvement or participation in the Board Meeting discussing the Letter, the Board vote, or the subsequent discussions leading to the approval of the Letter. SOMF at ¶ 37. Rather, Plaintiff challenges the truthfulness of the contents of the Letter. SAC at ¶¶ 3,6. As such, where "there is no dispute as to the circumstances surrounding the publication, [the] Court, rather than a jury, should resolve as a matter of law whether the privilege exists." *Bush*, 2009 WL 10669904 at *9; *see also Kaplan*, 2013 WL 1193831 at *19 ("The question of whether qualified immunity attaches is a question of law.").

Here, it is clear from the undisputed material facts that Defendants have established all of the essential elements to obtain the benefit of a qualified privilege – *to wit*: "(1) good faith; (2) an interest in the subject by the speaker or a subject in which the speaker has a duty to speak; (3) a corresponding interest or duty in the listener or reader; (4) a proper occasion; and (5) publication

in a proper manner." *Thomas v. Tampa Bay Downs, Inc.*, 761 So. 2d 401, 404 (Fla. 2d DCA 2000). The Association indisputably has an ongoing interest in the affairs of the Palms community, including, a duty to ensure that the residents received accurate information regarding community affairs and that the residents' private information in the possession of the Association be safeguarded. This is especially true with respect to the residents' private information, as this issue is expressly regulated by Florida law. *See* Fla. Stat. § 718.111(12)(c). Moreover, it was proper practice to notify the unit owners of the disclosure of their email addresses when Florida law recognizes the privacy of email addresses of condominium unit owners (Fla. Stat. § 718.111(12)(a)(7)) and many unit owners were residents of other U.S. and foreign jurisdictions with varying laws regarding personal information[2]. Likewise, the Tower One unit owners also have a clear interest in the publication and/or distribution of their private information, as well as the ongoing affairs of the condominium.

After the dissemination of Plaintiffs' December 11, 2020 email and the concerns raised by the Board regarding the residents' private information and the inaccuracies in the email, the Board properly noticed and held a Board of Directors Meeting to address Plaintiff's email, which was specifically listed as an agenda item (SOMF at ¶¶ 33-34); the Board held a vote and voted to have two (2) designated members of the Board, along with the association attorney (Gerstin), prepare the response to go out to the Tower One residents (SOMF at ¶¶ 39-41); and Gerstin drafted the Letter in accordance with the Board's directive and circulated the draft Letter to the designated

---

[2] For instance, the European Union's comprehensive data regulation statute, the GDPR, defines "personal data" in a broad sense that has been interpreted by the European Parliament to include email addresses. *See* Article 4, Regulation (EU) 2016/679 of the European Parliament and of the Council of 27 April 2016 on the protection of natural persons with regard to the processing of personal data and on the free movement of such data, and repealing Directive 95/46/EC (General Data Protection Regulation), L 119/1 O.J. (2016); https://www.europarl.europa.eu/doceo/document/E-8-2017-007174-ASW_EN.html?redirect.

Board members – Matesic and Abbatt – for review, comment, and approval (SOMF at ¶¶ 42-43). The designated Board members then revised and/or approved the Letter and instructed the property manager to publish the Letter to the Tower One residents. SOMF at ¶¶ 44-48.

It cannot be disputed that the Letter was properly published in good faith and in accordance with the Board's customary procedures (i.e., notice, discussion, and majority vote). Moreover, the Letter addressed limited subjects in which both the Association and the recipients had a genuine interest – the residents' private contact information (and dissemination of same), the insurance claim, and the ongoing construction project at the property. *See e.g., Kaplan*, 2013 WL 1193831 at * 20 (finding that bank and its employees had a duty to act to avoid fraud losses and their notice to the Secret Service was "within the collective interest of [the bank] and the Secret Service in preventing losses from fraudulent banking activity); *see also Thomas*, 761 So. 2d at 404 (a security director at a member racetrack has a duty to communicate to other members of the Bureau conduct by persons involved in racetracks and racing that is detrimental to the interests of the Bureau members); *Nodar*, 462 So. 2d at 809 (remarks made to a school board at a school board meeting concerning the curriculum and instruction at a public high school by a student's parent come within the scope of qualified privilege). The Association and the Board (and its members) are entitled to qualified immunity. Clearly, Gerstin, as counsel for the Association and the Board, is also entitled to qualified immunity. Indeed, "[c]onduct is within the scope of one's employment so as to be immune from an action for defamation if it is the type of conduct that the employee is hired to perform, the conduct occurs substantially within the time and space limits authorized or required by the job, and the conduct is activated at least in part by the employee's purpose to serve his or her employer." *Thomas*, 761 So. 2d at 404.

Under the circumstances, the Board (including Abbatt and Matesic) and its counsel (Gerstin) were clearly acting in good faith on a limited subject in which the Association had duty to act and in which its members had an interest in, and hence, there can be no genuine dispute that Gerstin was acting within the scope of his representation of the Association and the Board and for the benefit and interests of his client(s). The undisputed material facts establish that the Defendants' role(s) in drafting and preparing the Letter were expressly authorized by a vote of the Board. In addition, Gerstin billed, and was subsequently paid, for his services to the Board, including the drafting of the Letter, without any dispute of the charges. SOMF at ¶ 51. As such, at no time were the Defendants acting on their own or to benefit their own personal interests – which is the crux of Plaintiff's claims against the Defendants. *See* ECF No. 62 at ¶¶ 31-32.

Since a qualified privilege exists, Plaintiff "must show by a preponderance of evidence" that the Defendants "acted with express malice." *Bush*, 2009 WL 10669904 at *9; *Kaplan*, 2013 WL 1193831 at *19 ("To overcome qualified immunity, the pleading must allege facts showing 'express malice.'"). "Express malice is ill will, hostility, and an evil intention to defame and injure." *Kaplan*, 2013 WL 1193831 at *20; *see also Gunder's Auto*, 422 Fed. App'x at 821 ("where a person speaks upon a privileged occasion, but the speaker is motivated more by a desire to harm the person defamed than by a purpose to protect the personal or social interest giving rise to the privilege, then it can be said that there was express malice and the privilege is destroyed"). Under Florida law, "express malice sufficient to overcome the presumption exists where the <u>primary</u> motive for the statement is shown to be an intention to injure the Plaintiff." *Bush*, 2009 WL 10669904 at *9 (emphasis added). "As long as the communication is motivated by a desire to protect the interest giving rise to the privilege, the privilege is not forfeited merely because hostility or ill will also are felt by the speaker." *Gunder's Auto*, 422 Fed. App'x at 821. "Express malice

cannot be inferred from the fact that some statements are untrue." *Kaplan*, 2013 WL 1193831 at *20. Likewise, a "conclusory allegation unsupported by factual allegations that statements were made maliciously is not an allegation of express malice." *Id.*

Here, there was clearly no malice, let alone "express" malice being the primary objective of the Defendants' drafting and/or preparation of the Letter. Plaintiff has offered no evidence whatsoever that a jury could rely upon to conclude that the Defendants acted out of express malice. Indeed, Plaintiff has not offered any admissible evidence demonstrating an intent to injure or ill will from Defendants in the drafting of the Letter. Rather, the undisputed material facts show that the Board was acting in good faith on a limited subject that the Association had a duty to inform its members about and that its members had an interest in, and that Gerstin was, at all times, acting within the scope of his representation of the Association and the Board. Since Plaintiff has failed to proffer any evidence of any express malice on the part of the Defendants and cannot show that the Defendants' drafting and/or preparation of the Letter was primarily motivated by an intention to injure the Plaintiff, the Defendants are entitled to summary judgment on Counts I and II for defamation. *See Bush*, 2009 WL 10669904 at *10; *see also Nodar*, 462 So. 2d at 810 ("If the statements were made without express malice . . . then there can be no recovery.").

### 3. Defendants are entitled to judgment as a matter of law on Counts I and II for defamation because Plaintiff is a public figure and there is no evidence that the Defendants acted with actual malice.

Plaintiff is and was, at all times material to the allegations in the SAC, an active U.S. District Court Judge in the Eastern District of New York. SOMF at ¶ 6. In addition to his prolific judicial career, Plaintiff is a published author (fiction and nonfiction), musician, and maintains a website accessible to the general public. *See* https://fredericblock.com (last visited Feb. 21, 2024). According to his website, Plaintiff has authored and published three (3) books – Crimes and

Punishment (2019), Race to Judgment (2017), and the "best-selling book" Disrobed: An Inside Look at the Life and Work of a Federal Trial Judge (2012) – as well as coauthoring the music and lyrics for an off-Broadway musical. *Id.* The website also highlights Plaintiff's numerous news and media appearances, including interviews with various news publications, radio stations, prominent law schools, and the like. *Id.*

Based on the foregoing, it cannot be fairly disputed that Plaintiff is a general public figure. *See Lampkin-Asam v. Miami Daily News, Inc.*, 408 So. 2d 666, 667-68 (Fla. 3d DCA 1981) (a cancer scientist who authored a book was a public figure); *see also Mile Marker, Inc. v. Petersen Publ'g, L.L.C.,* 811 So. 2d 841, 845 (Fla. 4th DCA 2002) ("general public figures" are "of requisite fame or notoriety in a community who are always considered public figures"); *Manzari v. Associated Newspapers Ltd.*, 830 F. 3d 881, 888 (9th Cir. 2016) ("[P]ublic figures for defamation purposes include, artists, athletes, business people, dilettantes, anyone who is famous or infamous because of who he is or what he has done."). "[T]he 'public figure status' of a defamation claimant is a question of law to be determined by the court." *Mile Marker,* 811 So. 2d at 845.

In addition, for purposes of this action, Plaintiff is also a "limited" public figure. Specifically, limited public figures are those "who have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." *Mile Marker,* 811 So. 2d at 845. Courts employ "a two-step process in determining whether a particular claimant is a limited public figure or simply a private plaintiff" – the Court must determine (1) "whether there is a 'public controversy'" and (2) "whether the plaintiff played a sufficiently central role in the instant controversy to be considered a public figure for purposes of that controversy." *Id.* at 845-46. Here, based on the undisputed material facts, both elements are satisfied.

First, the ongoing construction project and the Association's concern regarding the misinformation and wide-spread dissemination of the residents' names and private email addresses at the Palms community, which were the impetus for the Association's Letter, qualify as a "public controversy." *Id.* at 845. "In determining whether a matter is a 'public controversy,' the court should ask whether a reasonable person would have expected persons beyond the immediate participants in the dispute to feel the impact of its resolution." *Id.* Here, the Association's Letter clearly impacted a segment of the population beyond the immediate participants – *to wit:* the Tower One residents at the Palms community. *See id.* at 845-46 (finding that a controversy over hydraulic versus electrical winches "may not be the topic on the daily evening news," but clearly impacts a segment of the population (*i.e.,* off-road enthusiasts) and distinguishing the case from a divorce, which is "an essentially private dispute").

Second, Plaintiff sufficiently played a central role in the instant controversy to be considered a public figure for purposes of that controversy. *Id.* at 846. The record shows that Plaintiff voluntarily thrust himself in the Palms limelight and Plaintiff concedes that he did so at the behest of his fellow Palms unit owners (SOMF at ¶ 18) or perhaps to further his political ambitions and bolster his run for a seat on the Tower One Board of Directors in the early 2021 election. The record further shows that Plaintiff took it upon himself to widely publish an email, including to individuals not affiliated with the Palms, expressing his criticism of the ongoing construction project and its management. SOMF at ¶¶ 22-24. Therefore, it cannot be disputed that Plaintiff was, at minimum, a limited public figure in this Palms controversy.

As a public figure, whether a general or limited public figure, Plaintiff "must establish 'actual malice' on behalf of [the Defendants] in order to maintain a defamation action." *Mile Marker,* 811 So. 2d at 845 ("where public figures are concerned, the state's interest in protecting

the defamed subject's reputation is lessened, and as such, public plaintiffs must allege a higher level of *mens rea* on behalf of defendant publishers"). "Under the actual malice test, a public figure plaintiff must establish that the disseminator of the information either knew the alleged defamatory statements were false, or published them with reckless disregard despite awareness of their probable falsity . . . the claimant must prove the existence of actual malice by clear and convincing evidence." *Id.* (citing *Dockery v. Fla. Democratic Party*, 799 So. 2d 291 (Fla. 2d DCA 2001) (noting when a motion for summary judgment is brought by a defendant against a public-figure plaintiff, and thus the actual malice standard applies, summary judgments are to be more liberally granted)). Indeed,

> Reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for the truth or falsity and demonstrates actual malice.

*Readon v. WPLG, LLC,* 317 So. 3d 1229, 1235 (Fla. 3d DCA 2021) (citing *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)). "This standard requires 'more than mere negligence.'" *Id.* Here, Plaintiff has failed to adduce any evidence of the Defendants' actual malice (the requisite state of mind) – because there is no such evidence to be had.

Instead, the record shows that the Board had a genuine concern about the potential exposure of the residents' private email addresses and the misinformation in Plaintiff's December 11, 2020 email. SOMF at ¶¶ 25-31. Further, the Association had a duty to inform the members of the potential compromise. As such, the Board properly noticed and held a Board of Directors Meeting to address the December 11, 2020 email (SOMF at ¶¶ 33-36) and voted and authorized to have two (2) designated members of the Board, along with the association attorney (Gerstin), prepare the response to go out to the Tower One residents (SOMF at ¶¶ 39-41). Matesic and Abbatt acted

in full accordance with the Board's vote. Likewise, Gerstin acted in full compliance with his clients' instructions and was subsequently paid for his legal services. SOMF at ¶¶ 42-43, 51. Nothing on the record so much as suggests that the Defendants acted with actual malice, with knowledge that the statements in the Letter were false, or entertained serious doubts as to the truth of the statements in the Letter. Accordingly, as Plaintiff cannot establish actual malice, Defendants are entitled to judgment as a matter of law on Plaintiff's defamation claims (Count I and II).

      **4.**      **Defendants are entitled to judgment as a matter of law on Count I for defamation *per se*, as the statements in the Letter were true and/or substantially true.**

The allegedly defamatory statements challenged by Plaintiff are true and/or substantially true, thereby defeating a claim for defamation *per se*, which requires publication of a "false statement." *See Alan v. Wells Fargo Bank, N.A.*, 604 Fed. App'x 863, 865 (11th Cir. 2015). Florida recognizes the "substantial truth doctrine in defamation cases," pursuant to which, "a statement does not have to be perfectly accurate if the 'gist' or the 'sting' of the statement is true." *Readon*, 317 So. 3d at 1234. "As long as a report is substantially correct, it is not necessary that it be exact in every immaterial detail or that it conform to the precision demanded in technical or scientific reporting." *Id.* at 1234-35. "Further, Florida law recognizes a difference between statements presented as fact and statements presented as an opinion or rhetorical hyperbole." *Id.* at 1235.

In his sworn Responses and Objections to Matesic's First Set of Interrogatories, Plaintiff was asked to "[i]dentify with specificity, and by quoting exactly, each and every statement (or portion of the Letter) by each Defendant that [he] allege[s] to be false or defamatory, and for each, please state with specificity each and every fact that tends to prove or evidence that the statement is false and/or defamatory." Plaintiff recited the following passage of the Letter:

*Important Privacy and Construction Alert*

December 18, 2020

Dear Members:

We hope this letter finds you and your loved ones safe, healthy, and enjoying the holiday season. Following is an important privacy and construction alert. Recently, Tower One's members were subjected to at least two email blasts from a disgruntled owner disparaging the Association, its directors, the construction project, and its associated professionals with incorrect statements and facts. These unsolicited emails blasts to owners visibly listed each member's email address causing serious privacy and security concerns for everyone. <u>Neither the association nor its management was the source of our owners' email addresses and the method of obtainment by the owner remains unknown. The Association and management staff take your privacy and security seriously. We advise all members to check and consider updating their computer's security and privacy settings. Please contact the property manager if you would like to change your email address for obtaining</u> **official** <u>Association notices in the future.</u>

NOF at Ex. B, No. 4 (emphasis added).

Plaintiff then specifically identified the statement: "[n]either the association nor its management was the source of the owners' email addresses and the method of obtainment by the owner remains unknown" as defamatory. SOMF at ¶ 3; *see also* NOF at Ex. B, No. 4. Plaintiff contends that this statement and "the statements immediately following, as well as the title of the Letter" were false because "Plaintiff already had the emails in his possession." SOMF at ¶ 3; *see also* NOF at Ex. B, No. 4.

However, a review of the record establishes that each of the statements identified by Plaintiff were in fact true and/or substantially true at the time the Letter was published on December 18, 2020, and Plaintiff has failed to produce any evidence regarding the alleged falsity of same. Specifically, it is undisputed that "[n]either the [A]ssociation nor its management was the source of the owners' email addresses" (*see* SOMF at ¶¶ 25-30) and, as Plaintiff concedes, he "already had the emails in his possession" (*see* NOF at Ex. B, No. 4). As such, it is true that neither

the Association nor the property manager provided Plaintiff with the residents' email addresses.

Likewise, it is also true that at the time the December 18, 2020 Letter was published, the

Association did not know how Plaintiff had obtained the approximately ninety (90) names and

email addresses listed in his December 11, 2020 email ("the method of obtainment by the owner

remains unknown") as this was an expressed concern. SOMF at ¶¶ 25-30. Indeed, after consulting

with both the property manager and legal liaison (Matesic), Gerstin was unable to determine how

Plaintiff obtained the email addresses. SOMF at ¶¶ 29-30.

Moreover, there is nothing in the record affirmatively proving how Plaintiff obtained the

emails other than Plaintiff's own self-serving statements. Plaintiff has failed to produce evidence

regarding his allegations in the SAC that the Defendants knew that Plaintiff maintained close

acquaintance with many owners, had communicated with many owners via email, and had "no

need to resort to illegal or wrongful methods to obtain the unit owners' email addresses." ECF No.

62 at ¶ 43. In reality, the Defendants to this day, still do not know how Plaintiff obtained the

residents' email addresses.

Further, there can be no dispute that the title of the Letter "Important Privacy and

Construction Alert" is likewise true – the Letter was in fact an important privacy and construction

alert. *See* NOF at Ex. A. There is also nothing on the record to evidence that "statements

immediately following" were not true: (A) "The Association and management staff take your

privacy and security seriously;" (B) "We advise all members to check and consider updating their

computer security and privacy settings;" and (C) "Please contact the property manager if you

would like to change your email address for obtaining official Association notices in the future."

Although Plaintiff specifically identifies these statements as false, Plaintiff has not produced any

evidence to establish that these statements were false at the time the Letter was published.

Accordingly, these true and/or substantially true statements bar a claim for defamation *per se* and the Defendants are entitled to judgment as a matter of law on Count I of Plaintiff's SAC.

> **5.      Defendants are entitled to judgment as a matter of law on Count I for defamation *per se*, as the Letter is simply not defamatory.**

The crux of Plaintiff's defamation claims is premised on Plaintiff's contention that the Letter accuses Plaintiff of procuring the residents' private email addresses by some criminal means – specifically computer hacking offenses, including Fla. Stat. Ann. § 815.06 *et seq.* and the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq*. *See* ECF No. 62 at ¶ 39; *see also* NOF at Ex. B, No. 4; Ex. C at 18:18-20. In a *per se* action, the statements must be "so obviously defamatory and damaging to reputation that the injurious nature of the statement is apparent from the words in the statement itself." *Mac Isaac v. Twitter, Inc.*, 557 F. Supp. 3d 1251, 1258 (S.D. Fla. 2021). Therefore, "in determining whether a publication is defamatory *per se*, consideration is only given to the four corners of the publication and the language used should be interpreted as the common mind would normally understand it." *Id.*; *see also Hallmark Builders, Inc. v. Gaylord Broadcasting Co.*, 733 F. 2d 1461, 1464 (11th Cir. 1984) ("A trial court, however, is not precluded from finding, as a matter of law, that a publication is not defamatory."); *Aflalo v. Weiner*, No. 17-61923-CIV-Moreno, 2018 WL 3235529, *2 (S.D. Fla. July 2, 2018) ("The statement should not be interpreted in the extreme, but as the 'common mind' would normally understand it."). Here, based on the four corners of the Letter, no reasonable jury could find that the Letter accused Plaintiff of computer hacking and "committing state and federal computer criminal hacking offenses, including under Fla. Stat. Ann. § 815.06 *et seq.* and the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*"

In *Aflalo*, this Court was faced with a similar issue, where the alleged defamatory statement read: "Yurim and Isaac [the plaintiff] took advantage of a old 94plus sick man elder abuse [sic]."

2018 WL 3235529 at *2. The plaintiff contended that the statement accused him of committing elder abuse under Chapter 825 of the Florida Statutes, and more specifically, sections 825.103, 825.102(1), and 825.102(3)(a)(2). *Id.* at *2-3. These sections included, *inter alia*, the knowing obtainment or use of an elderly person's funds or assets with an intent to deprive; intentional infliction of physical or psychological injury upon an elderly person; and a caregiver's failure to make reasonable efforts to protect an elderly person from abuse, neglect, or exploitation by another. *Id.* at *3. In reading the alleged defamatory statement as the common mind would naturally understand it, the Court determined that the statement alone, without innuendo, did not impute the crime of elder abuse as defined under Chapter 825 of the Florida Statutes. *Id.* Simply put, the Court rejected the plaintiff's claims where the writer <u>intended</u> to accuse the plaintiff of a crime, but failed to do so by means of the writer's own ineloquence.

Here, under Fla. Stat. § 815.06, a person must, *inter alia*, "willfully, knowingly, and without authorization or exceeding authorization," access, disrupt, destroy, introduce a contaminant, or engage in audio or video surveillance vis-à-vis a computer, computer system, computer network, or electronic device. Likewise, 18 U.S.C. § 1030 prohibits, *inter alia*, the unauthorized access of computers determined by the U.S. Government to require protection against disclosure of national defense or foreign relations; the unauthorized access of information from a consumer reporting agency, any department or agency of the U.S., or from "protected computers" (defined as computers used exclusively by a financial institution or the U.S. Government, affecting interstate or foreign commerce, or as part of a voting system); and damage to such "protected computers." Reading the relevant portions of the Letter as the common mind would naturally understand it and without resorting to extremes, the Letter, alone and without innuendo, simply does not charge Plaintiff with violating Fla. Stat. § 815.06 or 18 U.S.C. § 1030.

Indeed, the Letter contains no suggestion or even mention of a crime or computer crime, just that the source of the email addresses and the method of obtainment remains unknown. *See* NOF at Ex. A. Nor has Plaintiff introduced any evidence to show that any recipient of the Letter believed Plaintiff to have committed such computer crimes. Rather, in early 2021, after the publication of the Letter on December 18, 2020, Plaintiff was elected by the Tower One residents (the same recipients of the Letter) to the Tower One Board of Directors. SOMF at ¶ 52. Indeed, as part of his separate campaign to be elected to the Master Board of Directors (which was successful), Plaintiff acknowledged that he was "resoundingly elected as a Director for Tower [One]." SOMF at ¶ 53. As nothing in the Letter is so "obviously defamatory and damaging to [Plaintiff's] reputation [to] give rise to an absolute presumption of both malice and damage," the Defendants are entitled to summary judgment as to Count I. *See Aflalo*, 2018 WL 3235529 at *1.

Separately, Plaintiff's disappointment of being described as "disgruntled" is insufficient to support a cause of action for defamation, as the First Amendment's protection extends to "unflattering" opinions of an individual's personality or general disposition. *See Bongino v. Daily Beast Co., LLC*, 477 F. Supp. 3d 1310, 1320 (S.D. Fla. 2020) (holding that Defendant's reference to Plaintiff's "quick temper," and "brash style" however unflattering, are pure opinion and thus protected by the First Amendment."); *see also Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1378 (S.D. Fla. 2006) (Pure opinion, also characterized as "rhetorical hyperbole," extends to an "unflattering" opinion of another's personality or general disposition, so long as the opinion is based on observation of true facts.).

### 6.    Defendants Matesic and Abbatt have immunity under the business judgment rule.

Plaintiff, having alleged claims against Defendants Matesic and Abbatt (collectively, the "Directors") in their personal capacity for the contents of the Letter sent in the name of the

Association, is confronted with a multi-layered burden of proof. To begin, Plaintiff must first establish he is permitted to assert his defamation claims against the Directors in their personal capacity as an exception to the immunity from liability held by directors when acting in furtherance of their professional duties. *See Sonny Boy, LLC v. Asnani,* 879 So. 2d 25, 27 (Fla. 5th DCA 2004). Only if and when Plaintiff meets this burden, may the analysis proceed to the merits of his defamation allegations. *See Kloha v. Duda*, 246 F. Supp. 2d 1237, 1243-44 (M.D. Fla. 2003).

As an initial matter, directors of condominium associations are not personally liable for the decisions they make in their capacity as directors of condominium associations absent fraud, self-dealing, dishonesty, or incompetency. *See Sonny Boy,* 879 So. 2d at 27; *Perlow v. Goldberg,* 700 So. 2d 148, 149-50 (Fla. 3d DCA 1997); *Kloha,* 246 F. Supp. 2d at 1243–44; *Raphael v. Silverman*, 22 So. 3d 837, 838 (Fla. 4th DCA 2009); *Share v. Broken Sound Club, Inc.*, 312 So. 3d 962, 971 (Fla. 4th DCA 2021). Similarly, Fla. Stat. § 617.0834(1)[3] and Fla. Stat. § 607.0831(1)[4] provide insulation for condominium association directors from liability in their individual capacities absent fraud, criminal activity, self-dealing, unjust enrichment, recklessness, or an act or omission was that was committed in bad faith and/or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. Finally, and importantly, a plaintiff's bare assertion that a board member is not entitled to immunity is insufficient to warrant an adjudication in the plaintiff's favor as a matter of law. *See Raphael v. Silverman*, 22 So. 3d 837,

---

[3] "An officer or director of a nonprofit organization . . . is not personally liable for monetary damages **to any person** for any **statement**, vote, **decision**, or failure to take an action, regarding organizational management or policy by an officer or director…" Fla. Stat. § 617.0834(1) (emphasis added).

[4] "A director is not personally liable for monetary damages to the corporation or **any other person** for any **statement**, vote, **decision** to take or not to take action, or any failure to take any action, as a director…" Fla. Stat. § 607.0831(1) (emphasis added).

839 (Fla. 4th DCA 2009) (affirming dismissal of the plaintiff's complaint where the bare assertions that the individual directors derived a "personal benefit," unsupported by any proper allegation of ultimate fact that establishes self-dealing, was insufficient as a matter of law).

Here, the record does not support a finding that the Directors engaged in criminal activity, fraud, unjust enrichment, bad faith, recklessness, or maliciousness. Plaintiff does not even allege in the SAC that any of this activity occurred and there is no evidence to support that the Directors acted in any manner that would trigger an exception when they sought to advise unit owners of a concern they reasonably thought was of interest to the unit owners and that they had a duty to report. Instead, the record shows that the Letter was sent by the Association's property manager on behalf of the Association's Board. The Board members voted 4 to 0 (with 1 abstention) to send the Letter and subsequently approved the language of the Letter drafted by the Association's counsel (Gerstin). *See* SOMF at ¶¶ 39-48. Thereafter, the Association's property manager sent the Letter to the Association's members.

Here, the Letter was drafted by the Association's attorney pursuant to and in accordance with a proper vote of the Board, and emailed by the Association's property manager. This was not the act of individuals. The Directors did not send the Letter in their individual capacity and the allegations and evidence fail to meet the requirements to set aside the Directors' immunity under Fla. Stat. § 617.0834(1) and § 607.0831(1) and the business judgment rule. Based on the foregoing, Plaintiff's claims fail, as no reasonable fact finder could conclude that the Directors engaged in unlawful conduct invalidating their immunity to personal liability.

**7.   The Defendants are entitled to judgment as a matter of law on Count III for conspiracy to defame.**

Defendants are also entitled to judgment as a matter of law on the claim for conspiracy (Count III), because a claim for conspiracy to defame must fail where the plaintiff has failed to

establish a tort of defamation. *Ovadia v. Bloom*, 756 So. 2d 137, 140 (Fla. 3d DCA 2000) ("The conspiracy to defame claim cannot stand where, as here, the defamation action fails. There being no defamation, the gist of the defamation conspiracy, there can be no conspiracy claim."). Likewise, the single publication/single action rule prohibits "multiple actions when they arise from the same publication upon which a failed defamation claim is based." *Callaway Land & Cattle Co., Inc. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208 (Fla. 4th DCA 2002).

> **8.** **The Defendants are entitled to judgment as a matter of law on Count III for conspiracy to defame under the intracorporate conspiracy doctrine.**

Notwithstanding the foregoing, the Defendants are also independently entitled to judgment as a matter of law on Count III for conspiracy to defame under the intracorporate conspiracy doctrine based on the undisputed material facts. It is well established "that a corporation cannot agree, combine, or conspire with its officers, employees, or agent." *Am. Credit Card Tel. Co. v. Nat'l Pay Tel. Corp.*, 504 So. 2d 486, 488 (Fla. 1st DCA 1987). This principle has been extended to apply to both in-house and outside counsel employed by a corporation. *Id.* Therefore, "as long as an attorney's conduct falls within the scope of the representation of his client, such conduct is immune" from allegations of conspiratorial conduct. *See Farese v. Scherer*, 342 F. 3d 1223, 1232 (11th Cir. 2003); *see also Richard Bertram, Inc. v. Sterling Bank & Trust*, 820 So. 2d 963, 966 (Fla. 4th DCA 2002) (an attorney cannot conspire with his client unless he has a "personal stake in the activities separate from the principal's interest"); *O'Boyle v. Sweetapple*, No. 9:14-CV-81250-KAM, 2015 WL 13574304, * 8 (S.D. Fla. 2015) (so long as an attorney's actions "were motivated not by personal concerns but by concerns for their clients, attorneys do not form conspiracies with their clients"); *Am. Credit Card Tel. Co.*, 504 So. 2d at 489 (an attorney for a

corporation "could conspire only if he acted solely to injure the plaintiff rather than as an attorney seeking to advance the interest of the corporate defendant").

Here, it is undisputed that the Directors were acting in their capacity as directors and/or officers, that Gerstin was working as an attorney for the Association and the Board, and that their actions were all performed within the scope of their official capacity as Directors and within the scope of Gerstin's representation of the Association and the Board (of which Matesic and Abbatt were members). Specifically, Gerstin attended the duly noticed December 17, 2020 Board of Directors Meeting as "legal representative" and was tasked as the "association attorney" to help put together the Letter with Matesic and Abbatt as voted on by the majority of the Board. SOMF at ¶¶ 39-41; NOF at Ex. D. Indeed, the proposed response Gerstin originally prepared that was addressed only to Plaintiff was rejected by the Board, which voted for a broader response addressed to the Tower One residents. SOMF at ¶¶ 35-41. Between December 17 and 18, 2020, Gerstin prepared and revised the draft of the letter in accordance with the Board's instructions at the Board Meeting (working with the designated Board members – Matesic and Abbatt – who ultimately approved the Letter) and was subsequently paid for his legal services by the Association (without dispute). SOMF at ¶¶ 42-51. Specifically, the Association paid Gerstin for his services rendered on December 17 and 18, 2020 for attending the Board meeting, drafting the "initial draft in accordance with the directive at the Board meeting," for subsequent revisions and edits, and for reviewing the client's changes. SOMF at ¶ 51; NOF at Ex. T. The Association did not dispute any of the charges or work performed by Gerstin. SOMF at ¶ 51.

Furthermore, Plaintiff alleges no personal stake by any of the Defendants in the SAC or elsewhere. Nor has Plaintiff introduced any evidence that Gerstin had any kind of personal interest. Gerstin did not own any property, or otherwise reside, at the Palms community, and had no

personal stake or concern regarding the activities of the Palms community outside his role as counsel for the Association and the Board. Likewise, Plaintiff has not, and cannot establish, that any of the Defendants were at any time acting with the sole intent to injure Plaintiff, rather than as Board members and as an attorney seeking to advance the interests of his client(s) – the Association and the Board. Therefore, under the intracorporate conspiracy doctrine, the Defendants are entitled to judgment as a matter of law as to Count III.

9.      **Plaintiff has not and cannot establish damages.**

Plaintiff has not established any <u>actual</u> damages as required for defamation. *See Turner*, 879 F. 3d at 1262. Indeed, in his Responses to Matesic's First Request for Admissions, Plaintiff was asked to "[a]dmit that you did not suffer monetary or pecuniary loss as a result of the allegations set forth in the Amended Complaint," to which Plaintiff responded, "[a]dmitted, only to the extent that Plaintiff is not currently aware of any such loss." *See* NOF at Ex. Y, No. 1. Plaintiff was "not aware of any such loss," simply because no such loss exists. Further to this point, Plaintiff has failed to introduce any evidence to evidence any actual damages suffered.

<u>CONCLUSION</u>

For all of the foregoing reasons, the Defendants respectfully requests that this Court grant their Consolidated Motion for Summary Judgment on Counts I, II, and III of Plaintiff's Second Amended Complaint, and grant such further relief as the Court deems just and proper.

<u>REQUEST FOR HEARING</u>

Pursuant to Local Rule 7.1(b)(2), the Defendants respectfully requests that this Court grant a hearing/oral argument on the instant Motion. Defendants believe that oral argument will aid the Court in sorting through issues and related questions pertaining to the availability and scope of a qualified privilege and questions relating to express and actual malice under Florida and federal

CASE NO. 0:21-cv-61032-RKA

law, together with issues pertaining to the protections of the business judgment rule and an

attorney's liability for defamation for actions taken solely within the course and scope of a

professional engagement. Defendants estimate that the total time needed for the hearing would not

exceed one (1) hour (thirty (30) minutes per side).

Dated this 23<u>rd</u> day of February 2024.

Respectfully Submitted,

| | |
|---|---|
| **KAUFMAN DOLOWICH & VOLUCK, LLP** | **KAPLAN ZEENA LLP** |
| *Attorneys for Defendants David Matesic* | *Attorneys for Joshua Gerstin* |
| *and Candyce Abbatt* | 2 South Biscayne Boulevard, Suite 3050 |
| 100 SE 3rd Avenue, Suite 1500 | Miami, Florida 33131 |
| Fort Lauderdale, Florida 33394 | Telephone: (305) 530-0800 |
| Telephone: (954) 302-2360 | Facsimile: (305) 530-0801 |
| Facsimile: (888) 464-7982 | |

KAUFMAN DOLOWICH & VOLUCK, LLP
*Attorneys for Defendants David Matesic
and Candyce Abbatt*
100 SE 3rd Avenue, Suite 1500
Fort Lauderdale, Florida 33394
Telephone: (954) 302-2360
Facsimile: (888) 464-7982

KAPLAN ZEENA LLP
*Attorneys for Joshua Gerstin*
2 South Biscayne Boulevard, Suite 3050
Miami, Florida 33131
Telephone: (305) 530-0800
Facsimile: (305) 530-0801

<u>/s/ Avery Dial</u>
Avery A. Dial
Florida Bar No.: 732036
adial@kaufmandolowich.com
Cristina Hernandez Villar, Esq.
Florida Bar No. 102305
cvillar@kaufmandolowich.com

By:    <u>/s/ *James M. Kaplan*</u>
JAMES M. KAPLAN
Florida Bar No.: 921040
james.kaplan@kaplanzeena.com
elizabeth.salom@kaplanzeena.com
service@kaplanzeena.com
MARIA KIMIJIMA
Florida Bar No.: 115504
maria.kimijima@kaplanzeena.com
maria.escobales@kaplanzeena.com

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on this 23<u>rd</u> day of February 2024, a true and correct copy of

the foregoing was served via transmission of Notices of Electronic Filing generated by CM/ECF

on all counsel of record.

By:    <u>/s/  *James M. Kaplan*</u>
JAMES M. KAPLAN