UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-cv-61032-ALTMAN/Hunt

**FREDERIC BLOCK**,

    *Plaintiff*,

v.

**DAVID MATESIC**, *et al.*,

    *Defendants.*

_____/

## ORDER STRIKING "MOTION" FOR RECONSIDERATION

Block has filed a two-paragraph "Motion" for Reconsideration in which he asks us to reconsider our Amended Omnibus Order [ECF No. 279] disposing of the summary-judgment motions in this case. *See* "Motion" for Reconsideration [ECF No. 280]. Our Local Rule 7.1(a)(1) provides that "[e]very motion when filed and served shall incorporate a memorandum of law citing supporting authorities," with a few enumerated exceptions. A motion for reconsideration isn't one of the exceptions, and the Motion doesn't include a *single* supporting authority—not *one* statute or case. We therefore **STRIKE** it.

We could probably stop there, but the Motion suffers from other defects, too. As we explained, the Motion itself consists of just two paragraphs setting forth the requested relief—with no argument or supporting authority. Attached to the Motion are two "declarations," one from Block's attorney and one from Block himself. *See* Declaration of Valdi Licul (the "Licul Declaration") [ECF No. 280-7]; Declaration of Frederic Block (the "Block Declaration") [ECF No. 280-8]. The declaration from Block's attorney offers us the legal standard for motions for reconsideration, but again, no legal argument. Rather than advance any argument himself, the lawyer directs us to "the

reasons set forth in the [Block] Declaration." Licul Decl. ¶ 5. Only there do we find anything even resembling an argument. More on that shortly.

As a threshold procedural matter, our Local Rules prohibit Block from making his own arguments. "Whenever a party has appeared by attorney"—like Block has here—"the party cannot thereafter appear or act on the party's own behalf in the action or proceeding, or take any step therein, unless an order of substitution shall first have been made by the Court[.]" S.D. FLA. L.R. 11.1(d)(4); *see also, e.g.*, *Smith v. City of Miami*, 2024 WL 5683539, at *1 (S.D. Fla. Apr. 4, 2024) (Damian, J.) ("The record contains no indication showing termination of authority or substitution of Plaintiff's attorney of record. Thus, Plaintiff may not directly file such a motion *pro se* while represented by counsel." (citing the Local Rule)).

Block and his attorney seem to be playing a kind of shell game. Rule 11 prescribes that "by presenting to the court a pleading, written motion, or other paper—whether by signing filing, submitting, or later advocating it, an attorney or unrepresented party certifies that" the paper isn't "presented for any improper purpose," that its "claims . . . and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," and that its "factual contentions have evidentiary support." FED. R. CIV. P. 11(b)(1)–(3). Block has an attorney; he isn't unrepresented. But his attorney isn't the one certifying that the argument in support of the Motion complies with Rule 11. Instead , Block's maneuver—making the "argument" himself without appearing pro se—effectively allows *both* Block *and* his attorney to circumvent the certification requirement.

And our worry about the non-frivolousness certification isn't merely academic. Block's "argument" is that Count I of the Second Amended Complaint (the "SAC") [ECF No. 62], his *per-se* defamation claim, *actually* stated "two distinct claims." Block Decl. [ECF No. 280-8] ¶ 8. One was for the language accusing him of hacking; the other was for the language saying he sent "incorrect

2

statements and facts." *Ibid.* We should reconsider our Order and reinstate Count I, Block says, because the Defendants never moved for summary judgment on the latter of these "two distinct claims." *Ibid.*

This argument strikes us as frivolous. Count I makes clear that it's only about the hacking accusation. When it pleads the ostensible defamatory meaning of the "false statements," it states only that "[a] reasonable reader of Defendants' published false statements concerning Plaintiff would conclude that Plaintiff committed felonies under Florida and federal law," SAC ¶ 52, and that "[a] reasonable reader of Defendants' statements would also come to distrust Plaintiff and hold him in ill repute, as the letter implied that the Plaintiff had obtained private information about the readers by illicit or wrongful means," *id.* ¶ 53. Sending "incorrect statements and facts" is neither a felony nor a means of obtaining private information. Hacking is.

On top of that, if there actually *were* a whole unaddressed claim on which the Defendants had waived argument, we'd expect Block to have said something about it before now. But he hasn't. He conspicuously didn't mention this separate mystery claim in his Response to the Defendants' Motion for Summary Judgment (the "SAC MSJ Response") [ECF No. 232]. Recall that the Defendants sought summary judgment on the *entire* Second Amended Complaint. So, if there really were a claim for "incorrect statements and facts," it would mean that, even if we granted their motion, Block would still be able to reach trial. But the Response *never* mentioned the "incorrect statements and facts," focusing *entirely* on the hacking. In the preliminary statement of the Response, for example, Block explained that the way in which the Defendants "conspired . . . to defame Block" was by "sen[ding] a letter conveying that Block's December 11 Letter had *somehow compromised the computer security of those who had received it.*" SAC MSJ Resp. at 1 (emphasis added). "The letter," he added, "was meant to convey— and did convey—that Block had done something nefarious or criminal to obtain the email addresses[.]" *Ibid.* Nothing about "incorrect statements and facts."

3

Nor did Block say anything about this unaddressed claim in his Response to the Defendants' Motion to Dismiss the Second Amended Complaint (the "SAC MTD Response") [ECF No. 112]. Again, the Defendants sought to dismiss the *entire* Second Amended Complaint—and, again, Block's Response *never* mentioned the "incorrect statements and facts" as a standalone claim:

> This letter, authored by the three Defendants, accused Plaintiff of having unlawfully and/or wrongfully obtained unit owners' email addresses because, according to the Defendants, "[n]either the Association nor its management was the source[] of [the] owners' email addresses and the method of obtainment . . . remains unknown. . . ." Defendants then warned all the unit owners to "consider updating their computer[s'] privacy and security settings," falsely suggesting that Plaintiff had unlawfully or wrongfully accessed—and would continue to unlawfully or wrongfully access—all the unit owners' electronic devices. *Id.* at ¶ 38. Upon reading this letter, various Tower One unit-owners, seeing through the letter's flimsy attempts at indirection, believed it accused Plaintiff of wrongfully obtaining their email addresses or hacking the Association. *Id.* at ¶¶ 36, 39-40.
>
> That was exactly Defendants' purpose. . . . Defendants wrote without any basis for supposing that Plaintiff had obtained these email addresses improperly.

SAC MTD Resp. at 3–4. Indeed, in both the SAC and the MTD Response, Block made clear that the "incorrect statements and facts" language was meant only to illustrate the Defendants' supposedly defamatory intent:

> 44. Further, Defendants' December 18 Letter contained several other false or distorted statements *speaking to the defamatory intent of Defendants*. The letter falsely stated that Plaintiff used "incorrect statements and facts" to disparage individuals and entities involved in the construction project. Moreover, to portray Plaintiff as, in the Defendants' words, a "disgruntled owner," the Defendants falsely stated that Plaintiff "never reviewed" information sent to him by the Association and "rebuffed" invitations to meet.
>
> [ . . . ]
>
> 47. Indeed, because of Plaintiff's letter's thoroughness and accuracy, Defendants had *a clear interest in discrediting the author* who had thoroughly criticized and embarrassed their leadership, and resorted to defamation to do so.

4

SAC ¶¶ 44, 47 (emphasis added); *see also* SAC MTD Resp. at 4 ("*Demonstrating their intent to defame and discredit Plaintiff*, Defendants' letter referred to him as a 'disgruntled owner,' and framed his letter as false, poorly researched and written in bad faith when it was plainly correct. This was a transparent attempt to attack a critic who had embarrassed their leadership." (emphasis added & cleaned up)).

Besides, even if we were persuaded that the *per-se* defamation claim were still live—currently, we're not—we doubt the proper course would be to let Block proceed to trial. If a jury finds for Block, after all, the Defendants will no doubt move for judgment as a matter of law on the issue of actual malice. But Block has already once failed to show clear and convincing evidence of actual malice; if he fails again, we'll have subjected the Defendants to the burden and expense of a trial that, under *Sullivan*, should never have happened. As little as we like *Sullivan*, we're not free to disregard it— certainly not to facilitate what we think would be a trial by ambush. So, if Block ultimately persuades us that he in fact stated a *per-se* defamation claim for the "incorrect statements and facts," we would allow the Defendants to move for summary judgment on that claim before proceeding to trial.

One last thing: The impetus for Block's Motion is apparently that "[our] decision is being viewed as a ruling that [Block] did indeed make statements that were 'incorrect.'" Block Decl. ¶ 10. We don't know why that'd be, because we emphatically *didn't* rule that Block made statements that were incorrect. "[T]he factual accuracy of the December 11 Email *isn't* material to the SAC MSJ," we explained. Amended Omnibus Order at 19 n.7 (emphasis added). And, for what it's worth, we also observed that "there's not an iota of evidence" that Block is a hacker. *Id.* at 30. Our decision is simply a mechanical consequence of applying the *Sullivan* standard to Block's pleading and briefing.

Block beseeches us "to be sensitive to the attack against [his] reputation," Block Decl. ¶ 11; we, in turn, ask him to be sensitive to the reality of his case. The Motion is Block's attempt to dredge from the mire of the Second Amended Complaint a hitherto undiscovered claim conveniently never briefed by *either* side. That doesn't strike us as a winning argument.

\*       \*       \*

We, in sum, **ORDER and ADJUDGE** as follows:

1. Block's "Motion" for Reconsideration [ECF No. 280] is **STRICKEN**.

2. This case shall remain **CLOSED.**

**DONE AND ORDERED** in the Southern District of Florida on July 23, 2025.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record